**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**Northern Division**

CONSUMER FINANCIAL PROTECTION BUREAU,

       Plaintiff,                                 Case No. 3:16-cv-356-WHB-JCG

v.

ALL AMERICAN CHECK CASHING, INC.;
MID-STATE FINANCE, INC.; and
MICHAEL E. GRAY, individually;

       Defendants.

**DEFENDANTS' REPLY TO PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR AN IN-PERSON CASE MANAGEMENT CONFERENCE**

COME NOW, the Defendants, All American Check Cashing, Inc., Mid-State Finance, Inc., and Michael E. Gray (collectively referred to as All American), by and through counsel of record, and submit this Supplemental Memorandum of Law in support of their Motion for an In-person Case Management Conference. All American would respectfully show the Court:

## I. INTRODUCTION

On June 23, 2016, All American filed its Motion and Memorandum of Law, requesting that this Court require the parties to attend the Case Management Conference, scheduled for July 8, 2016, in-person. (Doc. 16, 17). All American argued that the Consumer Finance Protection Bureau's (the Government) Complaint was too vague and lacking in detail for All American to have sufficient notice of specific allegations that it faces. (Doc. 17 at 1-3). All American also argued that the Government's intransigence in agreeing to an appropriate discovery plan leaves

1

All American guessing about what it may face in this Court, and at a significant disadvantage. *Id*. at 3. All American suggested that this Court could more effectively supervise what promises to be a difficult discovery process if the Court required the parties to appear in person to establish a discovery plan. The Government opposes All American's Motion.

On June 29, 2016, the Government served upon All American its Initial Disclosures Pursuant to Fed. R. Civ. P. 26(a)(1). A true and correct copy of the Government's Disclosures, appropriately redacted, is attached hereto as **Exhibit 1**. Within a few hours of service of the Disclosures, the Government filed its Response in Opposition to All American's Motion for an In-Person Conference. (Doc. 18, 19). The Government's Disclosures, however, reinforce All American's concerns that, despite the Government's opposition, an in-person conference is appropriate and needed. The Government is not willing to provide All American the information to which is entitled. Its vision for discovery, as indicated on its Proposed Case Management Order, falls far short of All American's most basic needs. Its Disclosures demonstrate the acute need for proactive involvement by this Court, at the earliest stage possible. The Court should order the parties to appear for the Case Management Conference in person.

## II. ARGUMENT

All American, like any other Defendant, is entitled to fully explore the case against it. Unfortunately, to this point, the Government has either been unable or unwilling to provide All American the factual bases for its case, or to provide the necessary courtesies All American requires to assemble its case. An examination of the Government's Initial Disclosures demonstrates the difficult position in which the Government places All American.

All American's prediction that this case will be a complicated one is confirmed by the Government's Initial Disclosures. *See* Doc. 17 at 4. The documents upon which the Government's

case will rely number in the hundreds of thousands, or beyond.  The breadth of evidence to which

the Government refers is staggering.  According to the Initial Disclosures, the Government will

produce evidence gleaned from:

> Documents, ESI, and tangible things produced by Defendants in response to civil
> investigative demands and voluntary requests, including but not limited to emails
> and attachments, transactional data, policies, procedures, training materials,
> presentations, consumer complaints, accounting records, and financials.

(Exhibit 1 at 9).  This, alone, includes roughly two million documents.  All American's reasonable

requests that the Government limit the sea of information the Government deems important is

more than just the "fishing expedition." (Doc. 14 at 7).  It is simple fairness.  The Government also

references "Documents and ESI" produced by All American's software package, eCash.  (Exhibit

1 at 9-10).  According to the Government, that might include "transactional data, consumer

information, data dictionaries, and data schemas."  Again, All American can only guess what has

been generated.

In addition to the hundreds of thousands of documents that were provided to the

Government by All American -- at a cost of almost a quarter million dollars -- the Government

also states that copious documentary evidence from outside sources will be part of its case.  That

will include:

> Documents and ESI relating to Defendants produced by the following financial
> institutions in response to civil investigative demands, including but not limited to
> documents and information relating to accounts, such as bank statements and copies
> of checks: BankPlus, Citizens National Bank of Meridian, Coast Community Bank,
> Copiah Bank, Guaranty Bank and Trust, Hancock Bank, Holmes County Bank and
> Trust Company, Renasant Bank, and Trustmark National Bank.

Exhibit 1 at 10.  The difficulty facing All American in analyzing the unidentified documents

referenced here from multiple banks across Mississippi is self-evident.  The Government also

indicates it will rely upon information gathered by the Mississippi Department of Banking and

Consumer Finance during the Department's unfettered investigation of All American, documents taken from "publicly-available sources," and "[c]onsumer complaints filed directly with the [Government], or other entities[.]" *Id.* The breadth of this information is unknown. Unfortunately, the Government wishes to handicap All American's ability to narrow its search for the evidence upon which the Government will make its case. The Government's version of the proposed Case Management Order only allows All American 25 interrogatories, and just 50 requests for production. This is far from sufficient.

The Government's intransigence in agreeing to a suitable discovery plan is, perhaps, even clearer with its refusal to accede to more than 10 depositions. The Government's Initial Disclosures <u>specifically</u> name 53 individuals or institutions. The Government fails to indicate who it contacted at the identified institutions; All American will need discovery to determine that basic fact for <u>each</u> institution. The Government also includes two exhibits to the Disclosures that name 391 individuals. By the Government's own admissions, additional witnesses may be named. Indeed, the Government even attempts to shift the burden to All American to sift through virtually limitless information by stating, in several categories of witnesses named, that "names of entities and individuals, as well as their contact information, are within the custody and control of Defendants and/or their service providers." (Exhibit 1 at 5).

There can be no reasonable argument that the level of discovery envisioned by the Government is even remotely sufficient. Discovery, under the Federal Rules, is designed to narrow and clarify issues and to give parties mutual knowledge of relevant facts. *Shelak v. White Motor Co.*, 581 F.2d 1155, 1159 (5th Cir. 1978). The Government's Initial Disclosures do nothing to achieve those goals. Instead, the Disclosures merely notify All American that materials the Government may use are limitless. While the Government portrays the parties' June 15, 2016

telephonic conference as "methodical[,]" (Doc. 19 at 4), the Government's Initial Disclosures demonstrate that the discovery process will be far from it. The Government, and the Mississippi Department of Banking and Consumer Finance, have had two years and no limitations on their investigation and documentary demands. Still, the Government indicates it "requires additional discovery to prepare its case." (Exhibit 1 at 4). The disparity between the Government's ability to prepare its case, and the latitude it wishes to extend to All American to prepare its case is obvious.

All American believes that a telephonic Case Management Conference would be simply insufficient to establish an appropriate mechanism for discovery in a case this complicated. The Government's Initial Disclosures plainly indicate that an expansive discovery process is needed, if All American is to be allowed to properly prepare a defense. More importantly, the Government's lack of cooperation in telephonic conferences to this point implies that face-to-face interaction with the Court is necessary and appropriate.[1] Without early and proactive supervision by this Court, disagreements are sure to occur early and often. This Court should order the parties to appear at the Case Management Conference in-person, so that a comprehensive and appropriate discovery process can be planned.

### III. CONCLUSION

The Case Management Conference in this matter is critical. It will set the stage for a complex case, and a difficult discovery process. The Court can best establish a plan and oversee its implementation by meeting the parties in person, and guiding the parties to an appropriate and

---

[1] In its Response in Opposition, the Government implies that the 2000 Amendments to Rule 26(f) signal that face-to-face meeting in a case management conference is unnecessary. (Doc. 19 at 3). The Government misreads the Rule, and it comments. According to the Advisory Committee, "There are important benefits to face-to-face discussion of the topics to be covered in the conference, and those benefits may be lost if other means of conferring were routinely used when face-to-face meetings would not impose burdens." The case at bar is one in which those important benefits far outweigh the costs and the potential complications that might result from an insufficient case management conference and discovery plan.

equitable process. The Court should enter an order requiring the parties to attend the Conference

in-person, at a location and time deemed appropriate by the Court.

**DATED: June 30, 2016**

Respectfully Submitted,

/s/ Peter D. Baskind

Peter D. Baskind, *pro hac vice* (TN 019962)
Robin H. Rasmussen   (MSB 104729)
DINKELSPIEL RASMUSSEN & MINK, PLLC
1669 Kirby Parkway, Suite 106
Memphis, TN 38120
Telephone:   (901) 754-7770
Facsimile:    (901) 756-7772
pbaskind@drmlawmemphis.com
rrasmussen@drmlawmemphis.com

Dale Danks, Jr. (MS 5789)
DANKS, MILLER & CORY
213 S. Lamar Street
P.O. Box 1759
Jackson, MS  39215-1759
Telephone:  (601) 957-3101
Facsimile:   (601) 957-3160
E-mail: ddanks@dmc-law.net

Bentley E. Conner (MS 6465)
164 E. Center Street
P.O. Box 563
Canton, MS 39046
Telephone:      (601) 859-6306
Facsimile:      (601) 589-6307
E-mail:  bentleyeconner@gmail.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was served via the Court's ECF system on the following counsel of record on June 30, 2016:

Gregory K. Davis
United States Attorney
Southern District of Mississippi
501 E. Court Street, Suite 4.430
Jackson, MS 39201
gregory.davis3@usdoj.gov

Mitzi Dease Paige
Assistant United States Attorney
Chief, Civil Division
Southern District of Mississippi
501 E. Court Street, Suite 4.430
Jackson, MS 39201
mitzi.paige@usdoj.gov

Emily Mintz
Michael Favretto
Consumer Financial Protection Bureau
1700 G St. NW
Washington, D.C. 20522
emily.mintz@cfpb.gov
michael.favretto@cfpb.gov

/s/   Peter D. Baskind

K:\All American Check Cashing\Consumer Financial Protection Bureau\Pleadings\MOTION FOR IN PERSON RULE 26(f) Conf\Reply Memo.docx