**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**Northern Division**

---

CONSUMER FINANCIAL PROTECTION BUREAU,


     Plaintiff,                                  Case No. 3:16-cv-356-WHB-JCG

v.                                            JURY DEMANDED

ALL AMERICAN CHECK CASHING, INC.;
MID-STATE FINANCE, INC.; and
MICHAEL E. GRAY, individually;

     Defendants.

---

**ANSWER OF DEFENDANTS**

---

COME NOW, the Defendants, All American Check Cashing, Inc. (All American), Mid-State Finance, Inc. (Mid-State), and Michael E. Gray (Mr. Gray), by and through counsel of record, and, answer the Complaint filed by the Plaintiff, the Consumer Financial Protection Bureau (the Government).  The Defendants would show the Court:

**INTRODUCTION**

For eighteen years, All American Check Cashing, Inc. offered its services to consumers in Mississippi, Alabama, and Louisiana.  During that time, All American's business has grown, and All American has provided employment for hundreds of Mississippi families.  On May 11, 2016, the Government filed suit against the Defendants, not for violating the state laws under which the Defendants have operated for nearly two decades, but for alleged violation of new federal statutes that purport to operate above and beyond the state statutes.  Unfortunately, the Complaint that the Defendants now answer fails to inform the Defendants of any circumstances giving rise to the

Government's claims.  Nowhere in the Complaint does the Government state a single, specific example of any alleged violation of state or federal law.  Instead, the Government offers unsubstantiated innuendo, unattributed quotes from alleged former employees, apparent references to documents that the Government neither identifies nor includes in its Complaint, and vague and contradictory accusations of improper business practices.

The Defendants submit this Answer in good faith.  The Defendants have found, however, that it is exceedingly difficult or impossible to offer meaningful responses to illusory allegations.  For that reason, the Defendants have made their best efforts to adequately respond, as required by Fed. R. Civ. P. 8(b).

## I.  First Defense

The Complaint fails to state a claim upon which relief can be granted.  The Defendants have been in business for over eighteen years.  During that time, the Defendants have been subject to over one hundred unannounced inspections and examinations by the State of Mississippi.  In none of those inspections have the Defendants been accused of any deceptive or abusive practices.  The Defendants pride themselves on strict compliance to state regulations and fairness.  See **Exhibit A**.

## II.  Second Defense

The Consumer Financial Protection Bureau (CFPB) is unconstitutional in its formation, operation, and/or make-up.  Any actions of the Consumer Financial Protection Bureau are void.  Nonetheless, the Defendants place information in each new customer package discussing compliance, *inter alia*, with regulations generated by the CFPB.  The information is also posted on the All American Check Cashing website.  See **Exhibit B**.

## IV.  Fourth Defense

The Complaint fails to state a single, specific instance of any illegal action by the Defendants.

## V.  Fifth Defense

The Complaint is replete with inadmissible hearsay and unsubstantiated innuendo.  Those statements or allegations should be stricken from the pleading.

## VI.  Sixth Defense

Some, or all, of the allegations in the Complaint are barred by applicable statutes of limitations.

## VII.  Seventh Defense

Many, or all, of the acts or omissions alleged in the Complaint comport with applicable state law.

## VIII.  Eighth Defense

To the extent that the Complaint alleges "false" or "deceptive" statements, or "misrepresentations" by the Defendants, or their employees, the Complaint runs afoul of Fed. R. Civ. P. 9(b).  The Complaint fails to plead with particularity the alleged statements, specifically omitting information about the identity of the alleged speaker, the location and time of the alleged statements, the contents of the alleged statements, and reasons why such statements were misleading.

## IX.  Ninth Defense

The Government's authority to bring enforcement actions for "abusive" or "deceptive" practices is vague on its face, or is unfairly vague as applied in this case.

## X.  Tenth Defense

The Defendants answer the numbered paragraphs of the Complaint as follows:

1.  The Defendants admit that the Government brings its claim under the statutes listed in Paragraph 1 of the Complaint.  The Defendants deny that they are in violation of any of the statutes.

2.  The Defendants deny that the Government is entitled to any of the types of relief stated in Paragraph 2 of the Complaint.

3.  The Defendants admit that this Court has jurisdiction to hear this case.  The Defendants deny that they are in violation of any of the statutes listed in Paragraph 3 of the Complaint.

4.  The Defendants admit that they are located, reside, and do business in this District.  The Defendants deny that they took part in any events or omissions that violate any laws.

5.  The Defendants admit that the Consumer Financial Protection Bureau is an agency of the United States Government.  The Defendants aver that Consumer Financial Protection Bureau is unconstitutional in its formation, operation, and/or make-up.  Any actions, or putative authority, of the Consumer Financial Protection Bureau are void.  All other averments of Paragraph 5 of the Complaint are denied.

6.  The Defendants admit the first three sentences of Paragraph 6 of the Complaint.  The fourth and fifth sentences of Paragraph 6 of the Complaint constitute legal conclusions, and require no response from the Defendants.  The Defendants admit that All American Check Cashing, Inc. has transacted business in the Southern District of Mississippi.

7.  The Defendants admit the averments of first three sentences of Paragraph 7 of the Complaint.  The fourth and fifth sentences of Paragraph 7 of the Complaint constitute legal conclusions, and require no response from the Defendants.  The Defendants admit that Mid-State Finance, Inc. has transacted business in the Southern District of Mississippi.

8.   The Defendants admit the averments of the first four sentences of Paragraph 8 of the Complaint.  The Defendants deny the averments of the fifth sentence of Paragraph 8 as written. The Defendant admits that Michael Gray is an employee with some managerial responsibility for All American; however, All American employs a team of professionals to formulate, institute, and enforce compliance procedures.  Mr. Gray has materially participated in the conduct of All American's affairs.  The remainder of the averments of the sixth sentence of Paragraph 8 of the Complaint are denied.  Mr. Gray was born at St. Dominic Hospital and reared in Madison, Mississippi.  He has spent his entire life working and living in Madison, Mississippi, including All American Check Cashing where the majority of employees are fellow Mississippians.  The remaining averments in Paragraph 8 are denied.

9.   The first All American Check Cashing (hereinafter "AACC") store was licensed by the State of Mississippi pursuant to Mississippi's Check Cashers Act in 1999.  The first AACC store in Louisiana was licensed pursuant to local law in 2012.  The first AACC store in Alabama was licensed pursuant to local law in 2013.  The business of cashing checks is regulated by state law in each state.

10.  AACC charges fees for its services pursuant to the mandate of Section 75-67-517, Mississippi Code Annotated.  AACC is not privy to the fees charged by its competitors.  It would not be a violation of Mississippi Law for competitors to charge lower fees in their effort to attract customers away from AACC.  AACC does not have a "policy" as averred in the Complaint to charge a minimum fee of $5.00.  This amount is set by Mississippi Statute.  It is the policy of AACC to abide by Mississippi Law.

11.  Over 18 years of business, AACC has built relationships with its customers and cashed several thousand checks for repeat customers.  Because of the repeat business, Defendants can

neither affirm nor deny the number of checks cashed.  The remaining allegations of Paragraph 11 of the Complaint are admitted.

12.   The Defendants admit that the fee structure for cashing a check is set by statute.  The Defendants do not have sufficient information to either admit or deny what a particular employee "knows" at any given time.   The Defendants admit that determining whether a check is a government check is determinative of the fee to be charged pursuant to the statute.  The Defendants aver, however, that whether a check qualifies as a government check is not always readily apparent. Employees do not calculate the fee for cashing a check.  Fees are mandated by Miss. Code Ann. § 75-67-517 and are calculated by e-Cash, a nationally recognized and accepted software program for the industry.  All American's use of e-Cash insures compliance by its employees with state and federal statutes.

13.   The Defendants deny the averments of Paragraph 13 of the Complaint.  Fees are mandated by Miss. Code Ann. § 75-67-517 and are calculated by e-Cash, a nationally recognized and accepted software program for the industry.  Every All American store complies with signage requirements which clearly advise all customers the cost of check cashing.  (See **Exhibit C**).  All American's use of e-Cash insures compliance by its employees with state and federal statutes.   In addition, All American provides a receipt of the transaction that details the original amount of the check, the fee expressed in a dollar amount and percentage and the cash back to the customer, which is signed by the customer.  (See **Exhibit D**).

14.   All American discloses all relevant transactional information, including all fees and percentages as required by state and federal statutes.   That is evidenced by the signage conspicuously displayed in all All American locations and the signature of the customer on the receipt.  (See Exhibits C, D).

15.   The Defendants deny the averments of Paragraph 15 of the Complaint as written. All American makes every effort to provide accurate information regarding the cost of cashing a check.  In order to do so, All American instructs its employees to execute due diligence which allows the employee to verify the check, obtain the appropriate fee utilizing e-Cash,  and provide the customer with accurate information regarding the cost of the transaction.

16.   The Government fails to attach a copy of the document referenced in Paragraph 16 of the Complaint. The Government's averment violates Fed. R. Ev. 1002 in that no document has been provided to prove its contents.   The averments are denied as written.   Employees are instructed to obtain transactional cost information prior to disclosing the fee to the customer so that no mistakes are made and there are no compliance violations.  Full disclosure is made to the customer prior to obtaining the customer's signature on the receipt.  All American has a "10 Rules of Check Cashing" designed to fully disclose the appropriate fee and whether or not the client wishes to accept, which acceptance is shown by the customer's signature on the receipt.  (See Exhibit D and **Exhibit E**.)

17.   The Defendants admit the averments of the first sentence of Paragraph 17 of the Complaint.  Defendants deny the remainder of the averments in paragraph 17.  (See Exhibit D).

18.   The Defendants deny the averments of Paragraph 18 of the Complaint as written.  The Government purposely misrepresents All American's process.  All American utilizes a process designed to fully disclose all accurate information.  The statute sets the amount charged, i.e. the fee, for cashing a check.  That amount varies depending upon the check issuer.  For instance, checks issued by the State of Mississippi are subject to a statutorily set fee, which may be less than a check issued by a private company.   In addition, at times, the amount of a fee might be less than the statutorily set maximum fee due to a business arrangement with the check issuer.

19.  The Defendants admit that state law may require certain disclosure of fees charged, including posting them within the stores.  The Defendants have always striven to comply with applicable laws.  All other averments of Paragraph 19 of the Complaint are denied.  (See Exhibits B, C and D).

20.  The Defendants admit the averments of the first sentence of Paragraph 20 of the Complaint.  In compliance with Mississippi law, All American provides a disclosure of fees charged in cashing a check, which is signed by the customer contemporaneously with receipt of the proceeds. The Defendants admit that All American provides its customers with a receipt that clearly indicates what the fees for cashing the customer's check were, but deny that All American requires its employees to block customer's view of the fee.  The Defendants further aver that the customer has possession of the receipt when the customer leaves an All American location.  The Defendants deny the averments of the third and fourth sentences of Paragraph 20 of the Complaint. The Defendants deny the averments of the fifth sentence of Paragraph 20 of the Complaint, and further aver that the sentence indicates a quotation, but fails to indicate who the speaker might be, when it was said, or where it was said.  The sixth sentence of Paragraph 20 of the Complaint contains an alleged quotation from an unnamed former supervisor of All American.  Since the Government fails to designate the speaker, the Defendants are without sufficient information to either admit or deny the averments of the sixth sentence of Paragraph 20 of the Complaint.  The Defendants admit that a receipt given to a customer clearly indicates the "Fee Charged" and the "Date Cashed," but deny the nefarious purposes espoused by the Government.

21.  The Defendants comply with all signage requirements in both Mississippi and Louisiana.  The required signage is conspicuously displayed to be directly in the customer's view upon entry into the location. It is impossible for anyone entering the store to not see the signage.

The Defendants deny the averments of the second and third sentences of Paragraph 21 of the Complaint.  The sign is not "under" a counter.  (See Exhibit C).   The signs are red with white letters.  The signs comport with state law, and have never been the subject of concern during any state inspection of All American.   Customers will often sit in the lobby while their checks are being processed.   The seats in the lobby of an All American location are in direct line of sight with the sign at the counter.  The Defendants deny that signage can be difficult to read from the lobby.  The seventh sentence of Paragraph 21 of the Complaint contains unattributed hearsay from an alleged former employee.  The Defendants are without sufficient knowledge to either admit or deny what this unnamed former employee may have said.  All other averments of Paragraph 21 of the Complaint are denied.

22.   The Defendants deny the averments of the first sentence of Paragraph 22 of the Complaint.   All American engages in relationship lending as a means of promoting customer satisfaction with All American's services.  In addition, All American seeks as much information as it can obtain from customers cashing checks in an effort to prevent fraud. (See attached **Exhibit F**).  The Government alleges in Paragraph 21 that All American attempts to limit a customer's time at the counter, and here alleges that All American attempts overwhelm the customer at the counter.    It appears that the Government would require All American to guess at the appropriate methods it should employ to run its business.   The second sentence of Paragraph 22 of the Complaint is comprised of unattributed hearsay.  The Defendants are, therefore, without sufficient knowledge to either admit or deny the averments of the second sentence of Paragraph 22 of the Complaint.  The averments of the third sentence of Paragraph 22 of the Complaint are denied.  The Government's attempts to imply nefarious intent on the part of All American is symptomatic of the Government's infringement on and overreaching into consumers' private affairs.

23.   Paragraph 23 of the Complaint is comprised exclusively of unattributed hearsay. Defendants deny the averments and demand strict proof thereof.  (See Exhibits C and D).  Had the Government provided the name and/or copy of the complaint made by the consumer described in Paragraph 23, All American would be able to refute all such allegations.

24.   The Defendants deny the averments of Paragraph 24 of the Complaint.

25.   Paragraph 25 of the Complaint is comprised exclusively of unattributed hearsay.  The Defendants are without sufficient information to either admit or deny what the supervisor said. Defendants deny the averments in Paragraph 25 of the Complaint.

26.   The Defendants deny the averments of Paragraph 26 of the Complaint.

27.  In order to negotiate a check, All American is required to endorse it.  All American endorses checks with a stamp that says "For Deposit Only:  All American Check Cashing, Inc." There is no specific policy requiring an employee to immediately apply the stamp with the intent to interfere with a consumer's ability to cash the check elsewhere.  The "For Deposit Only" is a restrictive endorsement pursuant to § 3-206(c) of the Uniform Commercial Code designed to insure the integrity of the value of the check and the parties thereto.   A check is a negotiable instrument pursuant Article III of the Uniform Commercial Code, which requires its owner to take reasonable steps to prevent fraudulent negotiations.   It is required that the check be endorsed before it can be deposited.  Again, the Government attempts to imply malicious action on the part of a business owner attempting to conduct its business in a reasonably prudent way and according to the laws by which it is governed.

28.   All American employees are trained to preserve the integrity of the transaction by keeping all documents in the same place until the transaction is concluded.  The remaining

averments of Paragraph 28 of the Complaint are denied.  The Government fails to attach a copy of the referenced document to the Complaint.

29.   All American promoted the policies and procedures as set out in the responses to Paragraphs 12-28 and demonstrated in Exhibits A-F.  The specious allegations contained in Paragraphs 12-28 of the Complaint are denied as to All American and Mr. Gray.  The Defendants deny the averments of Paragraph 29 of the Complaint.  (See Responses to Paragraphs 12-28 as to Mr. Gray).

30.   The Defendants admit that All American devotes substantial resources to ensure that employees strictly follow check cashing policies and procedures in every transaction in an attempt to make sure that All American stays in compliance with all state and federal regulations.  The Defendants admit that All American performs regular audits to ensure that employees are following check cashing procedures.  Indeed, All American invests significant time and money to ensure that all transactions comply with applicable law.  All other averments in Paragraph 30 of the Complaint are denied.

31.   The Defendants admit that All American provides managers and supervisors with performance incentives. Check cashing fees are set by statute.  Employees cannot increase those fees.  The averments of Paragraph 31 are therefore denied.

32.   The Defendants deny the averments of Paragraph 32 of the Complaint.  See Responses to Paragraphs 12-28 and accompanying exhibits.

33.   The Defendants admit the averments of Paragraph 33 of the Complaint.

34.   The Defendants deny that a class of customers deemed "monthly consumers" exists. The Defendants admit that All American provides financial products to consumers who may receive income monthly, bi-weekly, or on other schedules.

35.  All American is a leader in the payday lending industry with an eighteen year history of providing loan products not always offered by other lenders.  All American does not offer a thirty-day loan product.  Fees are set by statute.  The Government's averment is mere speculation because the amount of fees any consumer pays is based upon the consumer's product choice and this averment is therefore denied.  All American denies that it has engaged in any deceptive representations.

36.  The Defendants admit the averments of the first sentence of Paragraph 36 of the Complaint.  The Defendants deny the averments of the second sentence of Paragraph 36 of the Complaint.  All American made a legitimate business decision to offer the two loan products.  (See Exhibits B and C).  All American does not offer a $250 loan product, nor is it required to do so. The remaining averments of Paragraph 26 of the Complaint are denied.

37.  The referenced statute, Miss. Code Ann. § 75-67-519(5), speaks for itself.

38.  The Defendants admit that All American only offers two-week loan products in Louisiana.  The referenced statutes, La. Rev. Sta. §§ 9:3578.3(2)(b); 9.3578.6(7), speak for themselves.

39.  The Defendants deny the averments in the first sentence of Paragraph 39 of the Complaint.  The referenced statutes, Ala. Code §§ 5-18A-13(c); 5-18A-12(b), speak for themselves.

40.  The Defendants deny the averments of Paragraph 40 of the Complaint.

41.  The Defendants deny the averments of Paragraph 41 of the Complaint as written.  All American provides two loan products in Mississippi.  All American does not designate any customer as a "monthly consumer" and does not market to any class of persons designated as "monthly consumers."   In fact, All American makes no distinction between any of its customers.

No loan product extends past 14 days in Mississippi.  All American does not have a monthly lending program.  A former employee crafted a program that he designated as a monthly lending program.  That program was published on the company intranet and was not available for viewing by the general public.  When that program was discovered, it was immediately removed.  It has never been the practice or policy of All American to sell, market or promote rollover loans.   All American stands ready and willing to provide restitution to any customer who may have been provided with a rollover loan.

42.  The Defendants deny the averments of Paragraph 42 of the Complaint as written.  The document referenced in Paragraph 41 did not exist until sometime in 2012.  Such program is not prohibited by Louisiana and Alabama statutes.

43.  It was never and is not All American's policy or practice to rollover loans.  If such transaction existed, it is not frequent, intentional or systemic.  In fact, All American had and has internal auditors in place to monitor locations to ensure compliance with all applicable laws.  In the event such a transaction was discovered, it was All American's policy to provide refunds to customers who were qualified to receive such refunds.  Defendants deny the remaining averments of the first sentence of Paragraph 43 of the Complaint.

44.  The Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments of Paragraph 44 of the Complaint.

45. The alleged 1st and 3rd lending document was included in a packet of information given to managers in 2012.  The document was never used for training nor discussed with any manager. The document was included in the training packet by its author, also an organizer of a manager's retreat.  The author, a marketing professional, also uploaded the document to All American's intranet.  When Michael Gray discovered the existence of that document, it was immediately

removed from the intranet and the employee terminated.   (See **Exhibit G**).   The document speaks for itself.

46.   The Defendants deny the averments of Paragraph 46 of the Complaint. Further, Defendants aver that the mathematical computations in Paragraph 46 are incorrect.

47.   Defendants cannot surmise what competitors may have charged in the hypothetical posed by the Government in Paragraph 37.   Defendants are without knowledge or information sufficient to either admit or deny that a former supervisor said anything.   However, Defendants deny the remaining averments in Paragraph 47 of the Complaint as written.

48.   All American has no policy, nor does All American train employees to make any representations about competitor's products.   The Defendants deny the averments of the first sentence of Paragraph 48 of the Complaint.   The averments of the second sentence of Paragraph 48 of the Complaint purport to be direct quotations.   Those quotations fail to attribute the quotations to anyone, or indicate when they were spoken, or to whom.   The Defendants, therefore, are without sufficient information to either admit or deny the averments of the second sentence of Paragraph 48 of the Complaint.   The Defendants deny the averments of the third sentence of Paragraph 48 as written.

49.   Defendants deny the averments in the first sentence of Paragraph 49 of the Complaint. All American has a positive relationship with its customers. Fourteen day loans can be more financially beneficial to All American's customers because customers who make 30 day loans are less likely to be able to pay it back in 30 days.   The ability to borrow a portion of the customer's credit limit relieves the customer from the stress and anxiety that may be caused by having to pay the full amount at the end of 30 days after having exhausted their credit limits. Unforeseen emergencies would eliminate the customer's ability to borrow or seek emergency assistance

because the customer's credit limit had been exhausted.    All American establishes a credit limit below the statutory maximum through an interview process. All American assists its customers in determining an amount that the customer has the ability to repay.   All American is without knowledge or information sufficient to form a belief as to the truth of the averments in the second sentence of Paragraph 49.   Customers who get paid on the 1st and 3rd day of the month only get paid once a month.   Customers who get paid once a month, based on All American's experience, have difficultly repaying a 30 day loan.   All American attempts to assist these customers by offering them the ability to borrow less than All American's competitors would require for a 30 day loan product.   Customers need their paychecks to pay rent, utilities, buy food, clothing, gasoline, insurance, and so forth.   If they borrow more than they can pay back, they go into default and that is bad for the customer and its bad for All American.   All American's default rate is one of the lowest in the industry.   That is good for the customer and its good for All American.   All American calls that "relationship lending."

50.   Customers did not pay a higher fee.   Customers pay the fees as set by statute.   The Government's position asserts that All American does not force customers into untenable debt by demanding a longer repayment schedule, i.e. a 30 day loan. The Government is correct.   All American's loan products are designed to help the customers manage their financial affairs without locking them into a cycle where their paychecks are short every month because of the 30 day loan product they are forced to repay with their monthly paycheck.

51.   The Defendants deny the averments of Paragraph 51 of the Complaint.   All American provides all information to the customer that is required by the statute.   All products have a statutorily defined charge, which is included in the contract signed by the customer.   The fee bears a direct proportional relationship to the amount borrowed.   Therefore, the customer controls the

amount of the fee paid and there is no "additional" fee on either loan.  The Government's allegation to the contrary is an attempt to obfuscate All American's policy of assisting its customers in managing their financial affairs so that customers do not wind up with a diminution of their regular monthly income that would occur with a 30 day loan product.

52.   The Defendants deny the averments of the first and second sentences of Paragraph 52 of the Complaint.   The customer controls the amount of the fee paid based on the loan product chosen and there is no "additional" fee on either loan.   The Government's allegation to the contrary is an attempt to obfuscate All American's policy of assisting its customers in managing their financial affairs so that customers do not wind up with a diminution of their regular monthly income that would occur with a 30 day loan product.   The third sentence of Paragraph 52 of the Complaint references what the Government describes as a cartoon sent in an email by an All American supervisor.   The cartoon is, at best, irrelevant and inadmissible hearsay, and, at worst, unfairly prejudicial pursuant to Fed. R. Civ. P. 403.   By including the cartoon in its pleading, the Government has managed to intentionally circumvent Court Rules, allowing news media to reference or include the cartoon in news stories about the case.   This is fundamentally unfair to the Defendants, and may put their rights to a fair trial in jeopardy.   The cartoon should be stricken from the Record.

53.   Defendants deny that Mr. Gray has ever promoted the use of any deceptive statements at All American.  All American makes a concerted effort to determine the appropriate credit limit for its customers.  The amount of the fee is determined by statute.  Customers repay All American because they can.  The customer does not get locked into a 30 day loan product that he or she will be unlikely or unable to repay.    Mr. Gray does indeed encourage All American employees to engage in relationship lending.

54.  The Defendants deny the averments of the first and second sentences of Paragraph 54 of the Complaint.  When a customer is in default in the repayment of a loan, the customer's check is run through the bank.  The Government's Federal Reserve System, the governmental agency from which the Plaintiff draws its funding, occasions a delay in processing of the customer's check through the automatic clearing house.  Such delay results in confusion in the customer's bank statements. If the customer comes in and cures the default by redeeming the check, a duplicate payment can occur.  When the duplicate payment is discovered, All American goes to great effort to make an immediate recompense to the customer.

55.  All American made every effort to rectify a duplicate payment when it was discovered. The remaining allegations in Paragraph 55 of the Complaint are denied.

56.  The Defendants deny the averments of Paragraph 56 of the Complaint.

57.  The Defendants deny the averments of Paragraph 57 of the Complaint.

58.  All American made every effort to rectify a duplicate payment when it was discovered. The remaining allegations in Paragraph 58 of the Complaint are denied.

59.  The Defendants deny the averments of Paragraph 59 of the Complaint.

60.  The Defendants deny the averments of Paragraph 60 of the Complaint as written. Michael Gray has made it his personal mission since the creation of the first All American store in 1999 to insist on compliance with all laws and regulations pertaining to All American.  (See Exhibit A).

61.  All American is a Subchapter S Corporation. Michael Gray is the sole owner of All American.  As such he is permitted by law to draw income from his solely owned business at any time without any particular formality or with any particular regularity.  Such withdrawals are not illegal or improper; nor are they the concern of the Plaintiff.  This allegation is included in the

Complaint as another attempt by the Government to cast an unwarranted nefarious light on Defendants.  The remainder of the averments in Paragraph 61 of the Complaint are denied.

62.  The Defendants aver that the referenced sections of the CFPA speak for themselves.  Whether the Defendants are "covered person[s]" within the meaning of the CFPA is a legal conclusion, and requires no response from the Defendants.

63.  The Defendants aver that the statute referenced in Paragraph 63 of the Complaint speaks for itself.  The statute, by its own terms, is vague and ambiguous and therefore constitutionally unenforceable against these Defendants as it fails to provide adequate notice of any prohibited activities. The statute requires the Court's conjecture on its meaning.  Such a requirement renders the statute constitutionally infirm.

64.  The averments of Paragraph 64 of the Complaint appear to reference a statute, although the statute is not cited. The statute, if any, speaks for itself.  Any interpretation is subject to judicial review and thus calls for a legal conclusion rather than the admission or denial of a fact.  The Defendants are without sufficient knowledge to admit or deny the averments of Paragraph 64 of the Complaint.   The statute requires the Court's conjecture on its meaning.  Such a requirement renders the statute constitutionally infirm.

65.  The Defendants aver that the statute referenced in Paragraph 65 speaks for itself. The statute requires the Court's conjecture on its meaning.  Such a requirement renders the statute constitutionally infirm.   To this point, the Government has failed to give regulated entities sufficient notice of what "abusive" is intended to mean.  While the Government has the power to issue regulations defining "abusive practices," it has failed to do so.  Instead, the Government relies upon an "I know it when I see it approach."  Such reliance is constitutionally inappropriate as the Constitution guarantees to every citizen the right to know what it can and cannot do.  The

Government can no better describe "abusive" than could Justice Potter Stewart when he failed to define pornography.  *Jacobellis v. Ohio*, 378 U.S. 184 (1964).

66.  To the extent that the averments of Paragraph 66 of the Complaint require a response from the Defendants, the averments are denied.

67.  The Defendants deny the averments of Paragraph 67 of the Complaint.  (See Exhibits C and D).  All American requires its employees to provide all customers with information pertaining to amounts charged for cashing checks.  Those amounts are set by statute.  When a customer enters an All American store, the very first thing the customer sees is a sign with the fees clearly printed.  The size of the sign and the font is mandated by state statute.  (See Exhibit C). The Government's continued obfuscation of All American's compliance with all state regulations further reveals the Government's overreach and misplaced zeal in its attempt to shut All American down.  The Government attempts to couch All American's efforts to give the customer accurate information regarding the amount charged for check cashing as a "material interfer[ance]." Employees at All American are required to enter check information into the company's computers so that the computer software can properly calculate the amount charged for cashing a check according to state statutes.  Therefore, employees are instructed to not quote a fee until such time as that information has been calculated, thus eliminating any human error and or the possibility of the conveyance of incorrect information to the customer.  There is no blocking of the fee amount listed on the receipt.  Employees are instructed to show the receipt to the customer, explain the charge, and obtain a signature on the receipt -- all prior to counting out the money for the check. **After** the customer has signed the receipt and is looking at the receipt, the employee counts the money out over the receipt just as every employee in every retail store in America does.  There is no attempt to minimize the amount of time the consumer has to see the receipt.  There is no attempt

to interfere with the consumer's ability to see the sign listing fee percentages.  (See Paragraph 21 of the Complaint).  In Paragraph 21, the Government accuses All American of making customers sit in the lobby while the computer processes the check.  When a customer is sitting in the lobby, the customer must look at the sign showing the percentage.  The sign is emblazoned directly on the front of the counter facing the lobby.   All American employees do not make false or misleading statements about the availability of information about the fee, nor do they make false or misleading statements to consumers about the ability to cancel or reverse the transaction or cash their check elsewhere.

68.  The Defendants aver that the statutes referenced in Paragraph 68 speak for themselves. The statutes require the Court's conjecture on their meaning.  Such a requirement renders the statutes constitutionally infirm.   The Government has failed to give regulated entities notice of what "abusive" is intended to mean.   While the Government has the power to issue regulations defining "abusive practices," it has failed to do so.  The Government defines the legal processes used by All American to inform and protect its customers as "abusive" when no such definition has been published. The regulations followed by All American are within the parameters of the authority of the Mississippi State Regulatory Authority.  The Plaintiff here has characterized the Mississippi Statutory regulatory scheme adopted by All American as abusive, deceptive and unfair.   Presumptively, all state statutes are constitutional.  As long as All American abides by state statute, there is a presumption that its practices are not abusive, deceptive or unfair. The Defendants deny the averments of Paragraph 68 of the Complaint.

69.  To the extent that the averments of Paragraph 69 of the Complaint require a response from the Defendants, the averments are denied.

70.   Customers deliver checks to All American for cashing. All American processes the check by first determining the validity of the bank account, the identity of the customer and assessing the likelihood of it being a legitimate check.  The customer waits patiently for a short time before the transaction is completed.   The check is retained by All American, a receipt is provided to the customer and cash is provided to the customer.  At any time during this transaction, the customer can retrieve the check and exit the store. The remaining averments of Paragraph 70 of the Complaint are denied.

71.  The Defendants aver that the statutes referenced in Paragraph 71 speak for themselves. The statutes require the Court's conjecture on their meaning.  Such a requirement renders the statutes constitutionally infirm.   The Government has failed to give regulated entities notice of what "abusive" is intended to mean.  While the Government has the power to issue regulations defining "abusive practices," it has failed to do so.  The Government defines the legal processes used by All American to inform and protect its customers as "abusive" when no such definition has been published. The regulations followed by All American are within the parameters of the authority of the Mississippi State Regulatory Authority.  The Plaintiff here has characterizes the Mississippi Statutory regulatory scheme adopted by All American as abusive, deceptive and unfair.   Presumptively, all state statutes are constitutional.  As long as All American abides by state statute, there is a presumption that its practices are not abusive, deceptive or unfair. The Defendants deny the averments of Paragraph 71 of the Complaint.

72.  To the extent that the averments of Paragraph 72 of the Complaint require a response from the Defendants, the averments are denied.

73.   All American requires its employees to provide all customers with information pertaining to amounts charged for cashing checks.  Those amounts are set by statute.  When a

customer enters an All American store, the very first thing the customer sees is a sign with the posted fees clearly printed.  The size of the sign and the font is mandated by state statute.  (See Exhibit C).   The amounts are disclosed on the receipt signed by the customer.  It is no more difficult or time consuming to cancel or reverse a check cashing transaction at All American than it is at any other commercial bank, credit union or savings and loan organization.  All American's processing does not prevent consumers from cashing their checks elsewhere if the customer desires to cancel the transaction after it has been completed.

74.   All American requires its employees to provide all customers with information pertaining to amounts charged for cashing checks.  Those amounts are set by statute.  When a customer enters an All American store, the very first thing the customer sees is a sign with the posted fees clearly printed.  The size of the sign and the font on the sign are mandated by state statute.  (See Exhibit C).   The amounts are disclosed on the receipt signed by the customer.  It is no more difficult or time consuming to cancel or reverse a check cashing transaction at All American than it is at any other commercial bank, credit union or savings and loan organization.  All American's processing does not prevent consumers from cashing their checks elsewhere if the customer desires to cancel the transaction after it has been completed.

75. The Defendants aver that the statutes referenced in Paragraph 75 speak for themselves.  The statutes require the Court's conjecture on their meaning.  Such a requirement renders the statutes constitutionally infirm.   The Government has failed to give regulated entities notice of what "deceptive" is intended to mean.  While the Government has the power to issue regulations defining "deceptive practices," it has failed to do so.  The Government defines the legal processes used by All American to inform and protect its customers as "deceptive" when no such definition has been published. The regulations followed by All American are within the parameters of the

authority of the Mississippi State Regulatory Authority.  The Plaintiff here has characterized the Mississippi Statutory regulatory scheme adopted by All American as abusive, deceptive and unfair.   Presumptively, all state statutes are constitutional.  As long as All American abides by state statute, there is a presumption that its practices are not abusive, deceptive or unfair. The Defendants deny the averments of Paragraph 75 of the Complaint.

76.  To the extent that the averments of Paragraph 76 of the Complaint require a response from the Defendants, the averments are denied.

77.  The Government's averments are based on the false premise that the customer did not know the fees or did not authorize payment of the fees for check cashing.  As set out in multiple paragraphs above, the customer is advised of the fee by state mandated signage and acknowledges acceptance of the terms of the contract for cashing the check by signing the receipt.  If the customer does not want to enter into the contract for cashing the check, the customer need not sign the receipt.  There can be no injury, substantial or otherwise, to the consumer for the participation in a legally authorized contract.  The terms of the check cashing contract are reflected 1) in the signage; 2) in the contract/receipt.  All American becomes a holder in due course upon the customer's acceptance of the terms of the contract.  The customer has to endorse the check and deliver it to All American.  The contract is complete at that point.  The Defendants deny the averments of Paragraph 77 of the Complaint.

78.  The Defendants deny the averments of Paragraph 78 of the Complaint.

79.  The Defendants aver that the statutes referenced in Paragraph 79 of the Complaint speak for themselves. The statutes require the Court's conjecture on their meaning.  Such a requirement renders the statutes constitutionally infirm.   The Government has failed to give regulated entities notice of what "unfair" is intended to mean.  While the Government has the

power to issue regulations defining "unfair practices," it has failed to do so.  The Government defines the legal processes used by All American to inform and protect its customers as "unfair" when no such definition has been published. The regulations followed by All American are within the parameters of the authority of the Mississippi State Regulatory Authority.  The Plaintiff characterizes the Mississippi Statutory regulatory scheme adopted by All American as abusive, deceptive and unfair.  Presumptively, all state statutes are constitutional.  As long as All American abides by state statute, there is a presumption that its practices are not abusive, deceptive or unfair. The Defendants deny the averments of Paragraph 79 of the Complaint.

80.  To the extent that the averments of Paragraph 80 of the Complaint require a response from the Defendants, the averments are denied.

81.  All American has a positive relationship with its customers. Fourteen day loans can be more financially beneficial to All American's customers because customers who make 30 day loans are less likely to be able to pay it back in 30 days.   The ability to borrow a portion of the customer's credit limit relieves the customer from the stress and anxiety that may be caused by having to pay the full amount at the end of 30 days after having exhausted their credit limits. Unforeseen emergencies would eliminate the customer's ability to borrow or seek emergency assistance because the customer's credit limit had been exhausted.    All American establishes a credit limit below the statutory maximum through an interview process. All American assists its customers in determining an amount that the customer has the ability to repay.   Customers who get paid on the 1st and 3rd days of the month only get paid once a month.  Customers who get paid once a month, based on All American's experience, have difficultly repaying a 30 day loan.  All American attempts to assist these customers by offering them the ability to borrow less than All American's competitors would require for a 30 day loan product.  Customers need their paychecks

24

to pay rent, utilities, buy food, clothing, gasoline, insurance, and so forth.  If they borrow more than they can pay back, they go into default and that's bad for everyone.  All American's default rate is one of the lowest in the industry.  That is good for the customer and good for All American.  All American calls that "relationship lending."  The Defendants deny the averments of Paragraph 81 of the Complaint.

82.  The customer controls the amount of the fee paid based on the loan product chosen and there is no "additional" fee on either loan.  The Government's allegation to the contrary is an attempt to obfuscate All American's policy of assisting its customers in managing their financial affairs so that customers do not wind up with a diminution of their regular monthly income that would occur with a 30 day loan product. The Defendants deny the averments of Paragraph 82 of the Complaint as written.

83.  The Defendants aver that the statutes referenced in Paragraph 83 speak for themselves. The statutes require the Court's conjecture on their meaning.  Such a requirement renders the statutes constitutionally infirm.   The Government has failed to give regulated entities notice of what "deceptive" is intended to mean.  While the Government has the power to issue regulations defining "deceptive practices," it has failed to do so.  The Government defines the legal processes used by All American to inform and protect its customers as "deceptive" when no such definition has been published. The regulations followed by All American are within the parameters of the authority of the Mississippi State Regulatory Authority.  The Plaintiff characterizes the Mississippi Statutory regulatory scheme adopted by All American as abusive, deceptive and unfair.   Presumptively, all state statutes are constitutional.  As long as All American abides by state statute, there is a presumption that its practices are not abusive, deceptive or unfair. Defendants deny the averments of Paragraph 83 of the Complaint.

84.  To the extent that the averments of Paragraph 84 of the Complaint require a response from the Defendants, the averments are denied.

85.   When a customer is in default in the repayment of a loan, the customer's check is deposited.  The Government's Federal Reserve System, the governmental agency from which the Plaintiff draws its funding, occasions a delay in processing of the customer's check through the automatic clearing house.  Such delay results in confusion in the customer's bank statements. If the customer comes in and cures the default by redeeming the check, a duplicate payment can occur.  When the duplicate payment is discovered, All American goes to great effort to make an immediate recompense to the customer. The Defendants deny the averments of Paragraph 85 of the Complaint as written.

86.  The Defendants deny the averments of Paragraph 86 of the Complaint.

87.  The Defendants aver that the statutes referenced in Paragraph 87 speak for themselves. The statutes require the Court's conjecture on their meaning.  Such a requirement renders the statutes constitutionally infirm.   The Government has failed to give regulated entities notice of what "unfair" is intended to mean.   While the Government has the power to issue regulations defining "unfair practices," it has failed to do so.  The Government defines the legal processes used by All American to inform and protect its customers as "unfair" when no such definition has been published. The regulations followed by All American are within the parameters of the authority of the Mississippi State Regulatory Authority.  The Plaintiff characterizes the Mississippi Statutory regulatory scheme adopted by All American as abusive, deceptive and unfair. Presumptively, all state statutes are constitutional.  As long as All American abides by state statute, there is a presumption that its practices are not abusive, deceptive or unfair. The Defendants deny the averments of Paragraph 87 of the Complaint.

88. The Defendants deny the averments of Paragraph 88 of the Complaint. All American has consistently obeyed the laws and regulations under which it has operated since 1999 and intends to continue doing so. All American's efforts have included regular internal auditing as well as submission to more than 100 examinations conducted by the Mississippi Department of Banking and Consumer Finance. All American offers financial products geared to assist customers in managing their financial affairs in a fiscally responsible manner. At no point has All American attempted to deceive or harm any customer for its own financial gain or any other purpose.

89. The Defendants aver that the referenced statutes speak for themselves.

90. The Defendants deny that the Government is entitled to any relief in this matter.

## GENERAL DENIAL

HAVING NOW ANSWERED the Complaint, the Defendants hereby categorically and unequivocally deny any allegations not specifically denied or admitted above. The Defendants specifically deny that the Government is entitled to any of the relief requested in Paragraph 90 of the Complaint.

WHEREFORE, the Defendants pray that the Complaint be dismissed in its entirety and that they be awarded their attorneys' fees and costs, pursuant to any applicable statute, and that they be granted any other relief that this Court deems just and proper.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), the Defendants respectfully demand that they be granted a jury for trial in this case.

Respectfully Submitted,

/s/ Robin H. Rasmussen
Robin H. Rasmussen     (MSB 104729)
Peter D. Baskind  *Pro Hac Vice* (TN 19962)
DINKELSPIEL RASMUSSEN & MINK, PLLC
1669 Kirby Parkway, Suite 106
Memphis, TN 38120
Telephone:   (901) 754-7770
Facsimile:   (901) 756-7772
E-mail: rrasmussen@drmlawmemphis.com
           pbaskind@drmlawmemphis.com


Dale Danks, Jr. (MS 5789)
DANKS, MILLER & CORY
213 S. Lamar Street
P.O. Box 1759
Jackson, MS  39215-1759
Telephone:  (601) 957-3101
Facsimile:  (601) 957-3160
E-mail: ddanks@dmc-law.net


Bentley E. Conner (MS 6465)
164 E. Center Street
P.O. Box 563
Canton, MS 39046
Telephone:     (601) 859-6306
Facsimile:     (601) 589-6307
E-mail: bentleyeconner@gmail.com

28

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a copy of the foregoing was served via the Court's ECF system on the following counsel of record on July 29, 2016:

Gregory K. Davis
United States Attorney
Southern District of Mississippi
501 E. Court Street, Suite 4.430
Jackson, MS 39201
gregory.davis3@usdoj.gov

Mitzi Dease Paige
Assistant United States Attorney
Chief, Civil Division
Southern District of Mississippi
501 E. Court Street, Suite 4.430
Jackson, MS 39201
mitzi.paige@usdoj.gov

Emily Mintz
Michael Favretto
Consumer Financial Protection Bureau
1700 G St. NW
Washington, D.C. 20522
emily.mintz@cfpb.gov
michael.favretto@cfpb.gov

/s/   Robin H. Rasmussen

K:\All American Check Cashing\Consumer Financial Protection Bureau\Pleadings\ANSWER\Answer.docx