# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# Northern Division

CONSUMER FINANCIAL PROTECTION BUREAU,

    Plaintiff,

v.

ALL AMERICAN CHECK CASHING, INC.;
MID-STATE FINANCE, INC.; and
MICHAEL E. GRAY, individually;

    Defendants.

Case No. 3:16-cv-356-WHB-JCG

## DEFENDANTS' RESPONSE IN OPPOSITION
## TO THE PLAINTIFF'S MOTION FOR PROTECTIVE ORDER

COME NOW, the Defendants, All American Check Cashing, Inc., Mid-State Finance, Inc., and Michael E. Gray (collectively referred to as All American), by and through counsel of record, and submit this Response in Opposition to Plaintiff's Motion for Protective Order and accompanying Memorandum Brief (Doc. 30, 31). All American would respectfully show the Court:

## I. INTRODUCTION AND BACKGROUND

On May 11, 2016, the Consumer Financial Protection Bureau (the Government or the Bureau) filed its Complaint (Doc. 1), alleging that All American violated various sections of the Consumer Financial Protection Act of 2010 (the CFPA). The Complaint is comprised of 89 paragraphs of supposed factual allegations. Unfortunately, those paragraphs offer little more than conclusory statements, generalized themes, and reference to unnamed individuals and non-specific

actions. The Complaint is designed to leave All American guessing as to the factual basis for the Government's allegations and those with knowledge upon whom the Government relies.

On June 29, 2016, the Government delivered its Initial Disclosures Pursuant to Fed. R. Civ. P. 26(a)(1)(the Disclosure). A true and correct copy of the Government's Rule 26 Disclosure is attached hereto as **Exhibit 1**. The Disclosure names over two hundred individuals, including current and former All American employees, as well as financial institutions, the Mississippi Department of Banking and Consumer Finance, and other entities. Again, the Government's lack of specificity regarding the knowledge of those identified is troublesome. The Government did, however, identify two investigators at the Bureau, Ryan Thomas (Mr. Thomas) and Theresa Ridder (Ms. Ridder), who possess "**discoverable information** that the Bureau may use to support its claims." (emphasis added). (Exhibit 1 at 2). According to the Government, the investigators have "[i]nformation regarding Defendants obtained from third parties, including consumers and former employees; information regarding the check cashing business obtained from other businesses." *Id*.

After discussion with the Government, All American issued notices of deposition for Mr. Thomas, Ms. Ridder, and Taft Webb, the Director of Consumer Finance at the Mississippi Department of Banking and Consumer Finance.[1] In order to allow this Court to provide guidance regarding concerns voiced by counsel for the Government, the Notices of Deposition did not state dates for the depositions. On August 8, 2016, Magistrate Judge John C. Gargiulo issued a text order requiring All American to furnish the Government a list of anticipated topics for the proposed depositions. On August 12, 2016, All American sent the list to the Government, as ordered. (Doc. 30-1 at 8-10). On August 26, 2016, the Government filed the instant motion, essentially attempting to foreclose the ability of All American to gather any useful information from the proposed

---

[1] All American also issued a notice of deposition for Government counsel, Emily Mintz. All American has withdrawn that request for the present.

depositions. The Motion both mischaracterizes the information All American seeks, and attempts to renew the Government's efforts to leave All American in the dark regarding this case.

The Government's Motion is an unreasonable overreach. While the Government stated in its Rule 26 Disclosure that Mr. Thomas and Mr. Ridder possess discoverable information, the Government asks this Court to render that information inaccessible. According to the Government:

> Everything that Bureau investigators know about Defendants, the investigation of Defendants, the DBCF's investigation of Defendants, the allegations in the Complaint, and the factual basis of the allegations in the Complaint, is from communications with third parties, review of documents and information, and internal Bureau communications in anticipation of or during this litigation, under the direction and supervision of Bureau enforcement attorneys ... **As a result, the Court should bar Defendants from inquiring about those topics, specifically investigators' knowledge of the allegations, and the factual basis of the allegations, in the Complaint** (Investigator Topics 5-6), of the history of the investigation (Investigator Topic 7), of actions taken during the investigation (Investigator Topics 9, 11), and of the DBCF investigation (Investigator Topic 13), as protected by the work product doctrine. In addition, as explained above, the Court should also bar Defendants from inquiring about those topics that require investigators to testify about communications with third parties during the investigation or litigation (Investigator Topics 8, 12-16) as protected by the work product doctrine.

(Doc. 31 at 10)(emphasis added). All American is entitled to obtain the Government's factual basis for its allegations. Accordingly, the Government is not empowered to hide those facts from All American, simply because those facts exist in the head of an investigator. <u>Facts are facts</u>. The Department may not obscure those facts behind an inapplicable privilege. Like any other litigant, the Government must comply with the Rules of Civil Procedure and Procedural Due Process. All American must be allowed to explore the information the investigators gathered that support any claims made by the Government.

The same overreach that applies to the Government's arguments regarding its investigators also applies to Taft Webb (Mr. Webb). The Government attempts to shield Mr. Webb through

3

contractual slight-of-hand.  It argues that, because of its Common Interest Agreement with the Mississippi Department of Banking (Doc. 30-1 at 12-15), a contract to which All American is not a party, All American is precluded from seeking information from Mr. Webb relating, *inter alia*, to any factual basis for the Government's Complaint or the sources of those allegations.  (Doc. 31 at 16, n. 12).  Not only does the Government fail to instruct the Court as to why any protection should be offered for knowledge acquired by Mr. Webb before September 9, 2016, the date of the Common Interest Agreement, the Government simply misapplies applicable law of privilege.  The Government is incorrect that a common legal interest privilege applies, or that any other privilege shields Mr. Webb's proposed deposition.  Mr. Webb must appear for deposition and answer questions asked of him.

## II.  ARGUMENT

The United States Supreme Court has long instructed that deposition-discovery rules "are to be accorded a broad and liberal treatment." *Hickman v. Taylor*, 329 U.S. 495, 508 (1947).  The reasons are obvious.  A litigant can and should be empowered to prepare its case for trial.  In this case, the Government seeks to frustrate that right, and invites this Court to apply new interpretations to established law.  The Court should decline that invitation.

The Government faces a high burden.  It must persuade the Court to intervene in discovery, a process that is designed to proceed with a bare minimum of judicial involvement.  *See* 8 C. Wright & A. Miller, FEDERAL PRACTICE AND PROCEDURE § 2288 (1970 & Supp.1985).  The Government has failed to satisfy its burden.  All American has made a measured and appropriate request for discovery.  It should be allowed to take the noticed depositions without delay.

## A. LEGAL STANDARD

The Government understates the stringent legal standard it must satisfy to obtain the relief it seeks here. While it is true that this Court is granted broad discretion in ruling on motions for protective orders, (Doc. 31 at 4), it is equally true that a party seeking a protective order limiting deposition testimony or document production <u>must</u> establish good cause <u>and</u> a specific need for protection. *Landry v. Air Line Pilots Ass'n*, 901 F.2d 404, 435 (5th Cir. 1990)(emphasis added). "Good cause" exists when justice requires the protection of "a party or person from annoyance, embarrassment, oppression, or undue burden or expense." *Id*. (quoting Fed. R. Civ. P. 26(c)). A party seeking protection, such as the Government, may not argue the need for the order generally. The burden is upon the Government to prove the necessity of a protective order, "which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *United States v. Garrett*, 571 F.2d 1323, 1326 n. 3 (5th Cir.1978) (citations omitted). *See also Campos v. Webb Co. Texas*, 288 F.R.D. 134, 136 (S.D. Tex. 2012)("[T]he moving party carries the substantial burden of showing 'extraordinary circumstances based on specific facts that would justify such an order.'") If both of these requirements are sustained, a court may "make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden and expense." Fed. R. Civ. P. 26(c).

The Government has failed to offer this Court the sort of particularized facts that established law requires. Moreover, there is no showing of annoyance, embarrassment, oppression, or undue burden or expense. The Government only argues a flawed interpretation of inapplicable privilege. In no event has the Government justified its effort to deprive All American of its opportunity to obtain information necessary to prepare a defense. The Government does not specifically move that this Court prohibit any of the noticed depositions outright. In its conclusion,

however, the Government asks that the Court prohibit questions to Government investigators on almost every topic, including the most comprehensive request, for knowledge regarding allegations in the Complaint. (Doc. 31 at 21-22). Any implication that All American should be barred from deposing the investigators should be ignored. *See Salter v. Upjohn Co*., 593 F.2d 649, 650 (5th Cir. 1979) ("It is very unusual for a court to prohibit the taking of a deposition altogether and absent extraordinary circumstances, such an order would likely be in error."). The depositions should proceed as envisioned.

B. **THE COURT SHOULD ALLOW ALL AMERICAN TO DEPOSE THE GOVERNMENT'S INVESTIGATORS AS PLANNED.**

    1. **The Work Product Doctrine**

According to the Government, investigators Mr. Thomas and Ms. Ridder lack any independent knowledge of All American's acts or practices. (Doc. 31 at 4). The Government argues that "everything" they know is protected from disclosure. *Id*. at 4-5. Not only does this expansive legal theory directly contradict the Government's Rule 26 Disclosure that indicates the investigators possess "discoverable" information, the Government resorts to bootstrapping of the highest order. The Government, citing *S.E.C. v. Brady*, 238 F.R.D. 429, 441-43 (N.D. Tex. 2006), opines that what facts the investigators know regarding this case have become "suffused" with "mental impressions, conclusions, or legal theories of an attorney," and are, therefore, beyond All American's reach *Id*. at 8. *Brady*, and other cases like it, undercut the Government's own argument. The information All American seeks is <u>not</u> attorney work product. All American requires facts of the allegations it faces. Those <u>facts</u> are not subject to privilege.

According to *Brady*, to qualify for protection under the Work Product Privilege, (1) the materials sought must be documents or tangible things; (2) the materials sought were prepared in anticipation of litigation or for trial; (3) the materials were prepared by or for a party's

6

representative; (4) if the party seeks to show that the material is opinion work product, that party must show that the material contains the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party. *Brady*, 238 F.R.D. at 441. *See also Ferko v. Nat'l Ass'n of Stock Car Auto Racing, Inc.*, 218 F.R.D. 125, 136 (E.D. Tex. 2003)(noting that materials subject to Work Product Privilege "must be documents or tangible thing.")(citing Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, FEDERAL PRACTICE AND PROCEDURE, §2024 at 336 (2d ed. 1994)). Nowhere in any of the seventeen proposed subjects for discussion sent to the Government has All American requested information regarding any <u>document</u> prepared by the Government's attorneys, with the exception of the Complaint itself. *See* Doc. 30-1 at 9-10. Instead, All American was careful to request the investigators' knowledge and contents of communications with third parties. *Id*. Facts and opinions are fundamentally different. As President John Adams once said, "Facts are stubborn things; whatever may be our wishes, our inclinations, or the dictates of our passion, they cannot alter the state of facts and evidence." John Adams, "Argument in Defense of the Soldiers in the Boston Massacre Trials," December, 1770. Thus, the Government fails to satisfy the fourth requirement for protection as work product, that the material contains the mental impressions, conclusions, opinions, or legal theories. All American's requests cannot qualify as protected work product.[2]

---

[2] All American must concede that the information it seeks likely was prepared in anticipation of litigation or for trial. Indeed, it is patently obvious that the Government had anticipated joining the Mississippi Department of Banking and Consumer Finance in its campaign against All American as soon as the Common Interest Agreement was drafted, or even before that time. The present litigation appears to have been a *fait accompli* from the outset of the Government's involvement and cooperation with its Mississippi counterpart. The Government's Brief echoes this assertion. The Government includes the Department of Banking's June, 2014 Cease and Desist Order in its materials submitted with the instant Motion. (Doc. 24-26). The Government fails to inform the Court, however, that in Taft Webb's recent (and still incomplete) deposition taken in the Department of Banking's administrative case, Mr. Webb acknowledged that many of the allegations in the Cease and Desist Order – particularly relating to failure to produce documents or alleged alteration or destruction of documents – were false.

Even if the Government were correct, that facts sought by All American might fall under the Work Product Privilege, the question of disclosure is not yet laid to rest. The Fifth Circuit Court of Appeals, in a case cited by the Government, notes that "even if a third party communication is obtained or prepared with an eye toward litigation, it may be discoverable if the 'one who would invade that privacy can establish adequate reasons to justify production.'" *In re Grand Jury Proceedings*, 43 F.3d 966, 970 (5th Cir. 1994).[3] It is well-established that if a party proves that materials merit work-product protection, the party seeking discovery – in this case, All American – may still gain access to the needed information if it can establish: a "substantial need of the materials in the preparation of the party's case;" and an inability "without undue hardship to obtain the substantial equivalent of the material by other means." *Ferko*, 218 F.R.D. at 136 (citing *Upjohn v. U.S.*, 449 U.S. 383, 397 (1981).

As All American has already argued, the Government's Complaint lacks specificity. It relies upon unnamed witnesses, makes allegations in mere generalities, and fails to indicate any specific instances of illegal activity. It is self-evident that All American has a substantial need to uncover the Government's facts – assuming that those facts exist – if All American is to present an appropriate defense. The Government's unwillingness to produce those facts is problematic. The Government, instead, expects All American to conduct possibly unending investigation, until it stumbles upon the knowledge that the Government's Rule 26 Disclosure indicates the investigators possess and is discoverable. According to the Government:

> Defendants can interview the employees, former employees, and consumers that the Bureau identified in its Rule 26(a) Initial Disclosures, and review non-privileged documents obtained by the Bureau – the vast majority of which come from Defendants own files.

---

[3] The Government also cites *Hickman v. Taylor*, 329 U.S. 495, 512-13 (1947) for the proposition that certain "oral statements made by witnesses to [an attorney]," may be kept from All American. (Doc. 31 at 7). The critical difference is within the quote. *Hickman* protects statements made to an <u>attorney</u> directly. All American is not attempting to depose any members of the Government's counsel at present. *See* Note 1.

8

(Doc. 31 at 9). Evidently, the Government truly wishes to send All American chasing geese. In its Motion, the Government fails to remind the Court that its Rule 26 Disclosures identified over two hundred individuals as possibly possessing knowledge relevant to the Complaint. The Government also identified financial institutions, the Better Business Bureau, and the Mississippi Department of Banking and Consumer Finance as possible sources of information. The Government failed to specify any individuals in those organizations, apparently expecting All American to identify individuals with knowledge on its own. This is unfair, and not in keeping with the requirements of Rule 26(a)(1)(A)(i) that demands "the name and, if known, the address and telephone number of each individual likely to have discoverable information." Additionally, the Government's suggestion that All American should merely "review non-privileged documents obtained by the Bureau" is hollow, considering the lack of specificity in the Government's Rule 26 Disclosures. Those include:

> Documents and ESI relating to Defendants produced by the following financial institutions in response to civil investigative demands, including but not limited to documents and information relating to accounts, such as bank statements and copies of checks: BankPlus, Citizens National Bank of Meridian, Coast Community Bank, Copiah Bank, Guaranty Bank and Trust, Hancock Bank, Holmes County Bank and Trust Company, Renasant Bank, and Trustmark National Bank.
>
> Documents and ESI relating to Defendants produced by the Mississippi Department of Banking and Consumer Finance ("DBCF") that was obtained by the DBCF during or in relation to its investigation of Defendants, including documents and ESI produced to the DBCF by Defendants, former employees, and consumers, including but not limited to e-mails and attachments, policies,
> procedures, training materials, presentations, consumer complaints, and sworn statements and testimony.
>
> Documents and ESI obtained from publicly-available sources, including but not limited to websites and Secretary of State business entity searches.
>
> Consumer complaints filed directly with the Bureau, or other entities whose complaints are stored in the Federal Trade Commission's Consumer Sentinel Network database, and with the Better Business Bureau.

(Exhibit 1 at 9-10). According to the Government, all these documents are located in the Bureau's offices in Washington, D.C. *Id*. Whether this description comports with the requirements of Rule 26(a)(1)(A)(ii) is unclear. What is clear, however, is that review of documents that are so generally identified is a herculean task, if it is possible at all.

In the final analysis, the Government's arguments attempting to insulate investigators from deposition ends exactly where it begins. The investigators, contrary to the assertions of the Government, have knowledge of the case. As the Government notes in its Disclosures, the investigators spoke with third parties. *Id*. at 2. What those parties may have said is relevant to the lawsuit, and presumably, provided some factual basis for the Government's case. Unlike cases relied upon by the Government, such as *S.E.C. v. Buntrock*, 2004 WL 1470278 (N.D. Ill. June 29, 2004), All American has not noticed a Rule 30(b)(6) deposition as a backdoor method to measure attorney opinion; All American merely wishes to obtain information that the Government, itself, deems discoverable. That is appropriate and necessary.

**2. The Deliberative Process Privilege and Attorney-Client Privilege**

All American does not seek to question the investigators about the decision-making process of the Government. It is quite clear that the Government targeted All American for litigation as soon as the Government was contacted by the Mississippi Department of Banking. Essentially, this matter began as a set of facts looking for a lawsuit. The Deliberative Process Privilege, therefore, has no operation in this situation.

Even where operative, the Deliberative Process Privilege is narrow. According to the United States Supreme Court, the Deliberative Process Privilege covers only "**documents** reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated," *N.L.R.B. v. Sears, Roebuck & Co*.,

421 U.S. 132, 150 (1975)(emphasis added). The privilege protects governmental agencies' internal communications that are deliberative in nature, but not those that are "purely factual." *Skelton v. U.S. Postal Serv.*, 678 F.2d 35, 38 (5th Cir. 2002)(citing *EPA v. Mink*, 410 U.S. 73, 88–89 (1973))(emphasis added). Courts have held, including this one, that the "privilege does not extend to facts such as who conducted investigations and whom they interviewed … and communications between [an agency] and witnesses." *S.E.C. v. Cuban*, 2013 WL 1091233 at *9 (N.D. Tex. 2013)(citing *Blanks v. Lockheed Martin Corp.*, 2006 WL 1892512 at *3 (S.D. Miss. 2006)). The Government's attempts to spin All American's legitimate request for such facts – which *Skelton* instructs are outside the privilege – is unfortunate. At no point has All American requested anything – in print, or otherwise -- that would impute the Government's "analysis and evaluation of facts," "opinions, recommendations, considerations, concerns [or] insights," as the Government implies. (Doc. 31 at 11). All American seeks the factual basis for Complaint.

The Government requests, pursuant to the Deliberate Process Privilege, that this Court prevent All American from inquiring about the investigators' knowledge of the allegations All American faces, and the factual basis for those allegations. (Doc. 31 at 13). This request stretches the privilege that the Government asserts well past the point of breaking. Cases beginning with *Sears, Roebuck & Co.*, and continuing with Fifth Circuit precedent like *Skelton* demonstrate that All American has made an appropriate and measured request for information. It has not requested the internal documents that the Deliberative Process Privilege is designed to protect.

The Government's arguments regarding the attorney-client privilege suffer the same infirmities as its arguments regarding deliberative process. The Government relies upon *Ferko* to support its position that the Privilege "extends to third parties who assist an attorney in rendering legal advice." (Doc. 31 at 14)(citing *Ferko*, 218 F.R.D. at 134). While this is a correct citation to

one portion of *Ferko*, it does not justify a protective order in this case. First, the Government does not maintain that Mr. Thomas and Ms. Ridder have assisted counsel in rendering legal advice. Indeed, the Affidavits of the investigators, (Doc. 30-2 and 30-3), do not indicate that either are attorneys. Additionally, the Government's analysis of *Ferko* is incomplete. According to the Court:

> The attorney-client privilege prevents disclosure of communications between an attorney and client that were made while seeking or rendering legal services. *See Upjohn Co. v. United States*, 449 U.S. 383, 389, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981). **Information and facts contained within the communications, however, are not protected.** *In re LTV Sec. Litig.*, 89 F.R.D. 595, 603 (N.D.Tex.1981).

*Ferko*, 218 F.R.D. at 133 (emphasis added). By its plain language, the case upon which the Government relies does not apply to these facts. Nothing in *Ferko*, or any authority cited in the Motion, indicate that All American has exceeded the latitude afforded by the Rules of Civil Procedure. The Government's Motion should be denied.

### 3. The Government's Attempts to Limit "Irrelevant Topics."

The Government does not limit its requests for a protective order to information that, it claims, is protected by privilege. It goes one step further, requesting the Court to prohibit investigation into two areas that the Government deems irrelevant – the investigators' knowledge and familiarity with federal regulatory and statutory schemes regarding check cashers and payday lenders, and those statutes and regulations applicable at the state level. (Doc. 31 at 14-15). The Government's request is without merit.

Pursuant to Fed. R. Civ. P. 26(b)(1), "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." What constitutes "relevant information" for the purpose of Rule 26(b)(1) is quite broad. *Ferko*, 218 F.R.D. at 132. Indeed, a request for discovery should be considered relevant whenever there is any possibility that the

information sought may be relevant, or may lead to the discovery of admissible evidence. *Yeager v. Corinthian Colleges, Inc.,* 2002 WL 1976773 (E.D. La. 2002)(citing *Beach v. City of Olathe*, 2000 WL 960808 (D. Kan. 2000)). As this Court has instructed, "Relevance for purposes of discovery is broader than relevance for purposes of admissibility at trial, though this tenet should not be misapplied so as to allow fishing expeditions in discovery." *Williams v. Manitowoc Cranes, LLC*, 2015 WL 11004904 at *2 (S.D. Miss. 2015)(citing *Hemphill v. State Farm Mut. Auto. Ins. Co.*, 2014 WL 4101657, *1 (S.D. Miss. 2014)). *See also Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)(noting that relevant information encompasses "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.").

The relevance of the two requests that the Government claims are objectionable should be quite plain. The Government's suit is predicated upon statutes and regulations. What statutes and regulations may apply and what those laws mean is foundational to this case. All American is entitled to explore the investigators' knowledge in this area. Even if the relevance of the topics were questionable, the Government's Motion is insufficient to justify a protective order. The Government has failed to indicate how the questions that might arise from these topics could cause the Government "annoyance, embarrassment, oppression, or undue burden or expense," as is required by Fed. R. Civ. P. 26(c)(1).

The Government is not entitled to dictate how All American defends its case. The Government's attempts to limit investigation into what it considers relevant is an inappropriate attempt to do so. The Court should deny the Government's request for a protective order arising from arguments of relevance.

## C. THE COURT SHOULD ALLOW ALL AMERICAN TO DEPOSE TAFT WEBB AS PLANNED.

Taft Webb is the Director of the Consumer Finance Division of the Mississippi Department of Banking and Consumer Finance (the Department). There is no dispute that Mr. Webb has been providing the Government information in its campaign against All American. Mr. Webb, therefore, possesses relevant information relating to the instant lawsuit.

The Government questions the necessity for Mr. Webb's deposition. It states, "Earlier this month, Defendants questioned Mr. Webb for more than six hours under oath in a state administrative proceeding about the [Department's] investigation of Defendants, so it is unclear why they need to do so again in this matter." (Doc. 31 at 15). The Government's confusion is puzzling. It is well-established that any testimony taken by All American in the administrative matter could never be admissible as substantive evidence in this case, as the Government is not a named party to that action. *See* Fed. R. Ev. 804(b)(1). Additionally, Mr. Webb's deposition in the administrative action has not concluded. Mr. Webb claimed he became ill during questioning, and requested to continue his deposition on another date. Department attorneys quickly filed a motion in the administrative action to limit All American's time with Mr. Webb, once the deposition resumes. Additionally, Mr. Webb was repeatedly instructed by counsel for the Department not to answer questions based upon, *inter alia*, the same inapplicable privileges asserted by the Government here. All American is entitled to defend its case as it sees fit. If All American believes that deposing Mr. Webb would be fruitful, it must be allowed to do so.

The Government's justification for limiting access to Mr. Webb or the information he possesses is even more tenuous than the Government's justification for insulating its investigators. The Government relies upon a so-called Common Interest Agreement between the Department and the Government. (Doc. 30-1 at 12-15). Through this document, all the Government's

arguments for protection flow.  All American is not a party to that contract and, therefore, has no rights, duties, or obligations arising from it.  More importantly, under applicable law in this Circuit, the contract does not operate to prevent questioning of Mr. Webb.

**1. There is no Common Interest Privilege in this Matter.**

The foundation upon which the Government argues privilege for Mr. Webb is a putative "common interest" between the Department and the Government.  According to the Government, "persons who share a common interest in litigation should be able to communicate with their respective attorneys and with each other to more effectively prosecute or defend their claims" (Doc. 31 at 20)(citing *In re Grand Jury Subpoenas,* 89-3 & 89-4, John Doe 89-129, 902 F.2d 244, 249 (4th Cir. 1990).  Plain language of *In re Grand Jury Subpoenas*, cited by the Government, demonstrates the inapplicability of the privilege claimed.  "This common interest privilege has been applied to 'potential co-parties to prospective litigation,' 'plaintiffs who were pursuing separate actions in different states,' and 'civil defendants who were sued in separate actions.'" (Doc. 31 at 20)(citing *In re Grand Jury Subpoenas*, 902 F.2d at 249).  None of those situations are in play here.

*In re Grand Jury Subpoenas* is a Fourth Circuit case.  Fifth Circuit jurisprudence is even more clear.  As this Court instructed earlier this year:

> The Fifth Circuit recognizes two types of communications protected by the common legal interest privilege: (1) communications between co-defendants in actual litigation and their counsel; and (2) communications between potential co-defendants and their counsel.

*Wachob Leasing Co., Inc. v. Gulfport Aviation Partners*, LLC, 2016 WL 3449897 at *2 (S.D. Miss. 2016)(citing *In re Santa Fe Intern. Corp*., 272 F.3d 705, 710 (5th Cir. 2001).  While the *Wachob Leasing* Court did conclude that the privilege can be applied to co-plaintiffs, those parties are intended to be within the same potential suit and a "single legal right" against potential parties.

15

*Id*. at *2.  That is not the case here.  The Government and the Department are separate sovereigns, bringing actions in different forums -- one of which in an administrative forum with its own rules -- with causes of action arising under completely different sets of laws.  *But see Stanley v. Trinchard*, 2005 WL 230938, at *1 (E.D. La. 2005) ("[I]t is questionable in the Fifth Circuit whether the common interest doctrine extends to plaintiffs.").  The only nebulous "interest" the two have in common is "enforcing consumer protection laws."  (Doc. 30 at 20-21).  General aspirations are not enough.  The Department and the Government have different functions, and specifically different missions.  Indeed, the Government has specifically stated that it is not pursuing any action under state law.  There is no commonality of a single legal right.

The Government is advocating a significant change in the law.  The public policy implications of that argument are chilling.  According to the Government, two unrelated governmental agencies, enforcing different statutes and prosecuting different causes of action, may act in concert and hide from a potential defendant facts needed for defense.  The result of such a rule becomes even more concerning when one of those agencies – in this case, the Department – repeatedly stonewalls the defendant, claiming that defendant has no right to discovery.  *See* July 11, 2016 Order of the Commissioner at ¶ 11, attached hereto as **Exhibit 2**.  A defendant facing governmental prosecution must be allowed to defend itself.

> **2. No Other Source of Privilege Applies to Taft Webb.**

The Government may not rely upon the attorney-client privilege to prevent All American's questions to Mr. Webb.  As the Government argues, the privilege applies to **co-parties** where the communications are designed to further a joint or common interest.  (Doc. 31 at 20)(citation omitted)(emphasis added). The Government and the Department are not co-parties.  They do not share a common interest sufficient to justify a privilege; the Department and the Government

simply have a similar general goal – to shut down All American and put more than 150 Mississippi citizens out of work. No one claims that the Government represents the Department, or Mr. Webb personally. Thus, there cannot be any attorney-client relationship. In no event, however, can the Government shield <u>facts</u> from All American through attorney-client privilege, or any other defense. *In re LTV Sec. Litig.*, 89 F.R.D. 595, 603 (N.D.Tex.1981)(noting that information and facts contained within the communications are not protected by attorney-client privilege). All American must have access to those facts. If Mr. Webb has knowledge about the Government's claims against All American, All American is justified in exploring it.

In terms of the Work Product Privilege, Mr. Webb is no different than the third party witnesses interviewed by Government investigators. Even if the narrow privilege does apply, it protects little. All American is not seeking "the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of [the Government]." *Brady*, 238 F.R.D. at 441. All American intends to uncover facts that may, or may not, support allegations made in the Complaint. All American's list of subjects to be explored in Mr. Webb's deposition, (Doc. 30-1 at 8-10), requests no documents generated by the Government or its internal communications, another flaw of the Government's theory that work product shields Mr. Webb. *Id*.

The Government's reliance on the Deliberative Process Privilege is particularly interesting. Arguably, Item 19 on the list of expected topics for Mr. Webb, (Doc. 30-1 at 9), <u>might</u> impute internal communications of the Department, if All American were seeking documents. But this is a state law question. The Department is pursuing All American under Mississippi statues, not federal law. *See* Fed. R. Ev. 501 ("[S]tate law governs privilege regarding a claim or defense for which state law supplies the rule of decision.") Mississippi law does not seem to embrace the Deliberative Process Privilege. Even if it did, however, the Government does not have standing

to invoke the privilege on behalf of the Department. The Department would have to make the objection for itself. Nothing All American included in its notification to the Government regarding Mr. Webb requests "**documents** reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *See N.L.R.B. v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975)(emphasis added). The Deliberative Process Privilege simply provides no protection from the relevant, appropriate questions that All American wishes to ask Taft Webb. This Court should deny the Government the relief it seeks, and allow All American to prepare its defense.

### III. CONCLUSION

The United States Supreme Court has instructed that "mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation." *Hickman*, 329 U.S. at 507. The Government's Motion to limit All American's ability to depose necessary witnesses necessarily impinges upon that important tenet. The protections sought by the Government are not applicable and would deny All American the latitude it needs to prepare a case. This Court should DENY the Government's Motion for Protective Order.

**DATED: September 9, 2016**

                                                  Respectfully Submitted,

                                                  /s/ Robin H. Rasmussen
Robin H. Rasmussen (MSB 104729)
Peter D. Baskind, *pro hac vice* (TN 019962)
DINKELSPIEL RASMUSSEN & MINK, PLLC
1669 Kirby Parkway, Suite 106
Memphis, TN 38120
Telephone: (901) 754-7770
Facsimile: (901) 756-7772
pbaskind@drmlawmemphis.com
rrasmussen@drmlawmemphis.com

Dale Danks, Jr. (MS 5789)
DANKS, MILLER & CORY
213 S. Lamar Street
P.O. Box 1759
Jackson, MS  39215-1759
Telephone:  (601) 957-3101
Facsimile:  (601) 957-3160
E-mail: ddanks@dmc-law.net


Bentley E. Conner (MS 6465)
164 E. Center Street
P.O. Box 563
Canton, MS 39046
Telephone:	(601) 859-6306
Facsimile:	(601) 589-6307
E-mail:  bentleyeconner@gmail.com

# **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing was served via the Court's ECF system on the following counsel of record on September 9, 2016:

Gregory K. Davis
United States Attorney
Southern District of Mississippi
501 E. Court Street, Suite 4.430
Jackson, MS 39201
gregory.davis3@usdoj.gov

Mitzi Dease Paige
Assistant United States Attorney
Chief, Civil Division
Southern District of Mississippi
501 E. Court Street, Suite 4.430
Jackson, MS 39201
mitzi.paige@usdoj.gov

Emily Mintz
Michael Favretto
Consumer Financial Protection Bureau
1700 G St. NW
Washington, D.C. 20522
emily.mintz@cfpb.gov
michael.favretto@cfpb.gov

/s/   Robin H. Rasmussen

K:\All American Check Cashing\Consumer Financial Protection Bureau\Pleadings\MOTION FOR PROTECTIVE ORDER\Response Protective Order.docx

20