UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**CONSUMER FINANCIAL PROTECTION BUREAU**                    **PLAINTIFF**

**VS.**                              **CIVIL ACTION NO. 3:16-cv-00356-WHB-JCG**

**ALL AMERICAN CHECK CASHING, INC.;**
**MID-STATE FINANCE, INC.; and**
**MICHAEL E. GRAY, individually**                              **DEFENDANTS**

**PLAINTIFF'S REPLY TO DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR A PROTECTIVE ORDER**

Plaintiff, Consumer Financial Protection Bureau ("Bureau"), submits this reply in support of its Motion for a Protective Order, ECF No. 30. Defendants argue that the Bureau seeks to prevent them from investigating the underlying facts at issue in this matter. *See* Defendants' Opposition, ECF No. 36 ("Def. Opp."). This is not true. The Bureau does not seek to prevent Defendants from investigating facts relevant to the claims or defenses. Rather, the Bureau seeks to prevent improper inquiry into a narrow area: the Bureau's work product and privileged information.

The Bureau brought this lawsuit against Defendants for their violations of law. The facts that are relevant to these violations arise solely from the actions taken by Defendants and are available to Defendants from their employees, former employees, and customers, and in their own documents. Yet, instead of seeking information from these sources, Defendants seek the Bureau's work product and privileged information. Defendants admit that they seek "to explore the information the investigators gathered." Def. Opp. 3. And with respect to Mr. Webb, Defendants seek privileged communications between two government agencies. However, there is a difference between the

-1-

underlying facts, which are relevant and properly within the scope of discovery, and what Defendants want to explore, which is the Bureau's preparation for this litigation. Defendants' threadbare arguments should be disregarded, and the Court should grant the Bureau's Motion.

## I.  STANDARD

Defendants argue that the Bureau has failed to satisfy the requirements for issuing a Protective Order. *See* Def. Opp. 5-6. It is well-established, however, that discovery must be limited where "inquiry touches upon the irrelevant or encroaches upon the recognized domains of privilege." *Hickman v. Taylor*, 329 U.S. 495, 508, 67 S. Ct. 385, 91 L. Ed. 451 (1947); *see* Fed.R.Civ.P. 26(b)(2)(C)(iii) (court must limit discovery outside scope of Rule 26(b)(1)).[1] Courts regularly grant protective orders in these circumstances. *See, e.g.*, *Dunn v. State Farm Fire & Cas. Co.,* 927 F.2d 869, 875 (5th Cir. 1991) (upholding a protective order where documents sought were privileged).[2] The Bureau does not seek to bar the depositions entirely, and Defendants' attempt to obtain privileged and protected information is unduly burdensome and oppressive.[3]

---

[1] Defendants cite *Hickman v. Taylor* for the proposition that "[m]utual knowledge of all the relevant facts gathered by both parties is essential to proper litigation," but Defendants fail to note the corollary in the very same paragraph: "But discovery… has ultimate and necessary boundaries… limitations come into existence when the inquiry touches upon the irrelevant or encroaches upon the recognized domains of privilege." *Hickman,* 329 U.S. at 507-08.

[2] *See also Wachob Leasing Co. v. Gulfport Aviation Partners, LLC*, No. 1:15CV237-HSO-RHW, 2016 WL 3449897, at *3 (S.D. Miss. June 16, 2016) (same); *Standard Inv. Chartered, Inc. v. Nat'l Ass'n of Sec. Dealers, Inc.*, No. 07 CIV. 2014 (SWK), 2008 WL 199537, at *5 (S.D.N.Y. Jan. 22, 2008) ("a valid assertion of privilege constitutes good cause" for a protective order).

[3] Cases relied on by Defendants are readily distinguishable. In *U.S. v. Garrett*, 571 F.2d 1323 (5th Cir. 1978), "the district court, upon a <u>bare request</u> from the government and without further inquiry, issued a protective order <u>barring all discovery without citing any reason</u>." *Id.* at 1326 (emphasis added). This is distinguishable from the Bureau's more narrow, detailed request here. In *Campos v. Webb Co. Texas*, 288 F.R.D. 134 (S.D. Tex. 2012), a court declined to grant a protective order staying a deposition entirely due to health issues where the plaintiff did not provide a "specific and documented factual showing[.]" *Id.* at 136. Here, the request is not "conclusory or speculative," and the Bureau does not seek to block a deposition entirely. *Id.*

## II.   DEPOSITIONS OF BUREAU INVESTIGATORS

### A.  Work Product Doctrine

Defendants do not dispute that the work done by investigators was "in anticipation of litigation or for trial," *see* Def. Opp. 7, n. 2, but assert that investigators must testify regarding what they learned from their communications with third parties, from their review of documents, and from Bureau enforcement counsel. Defendants misstate the elements and application of the work product doctrine.

First, Defendants' assertion that the work product doctrine only applies to documents is incorrect. *See* Def. Opp. 6-7. Work product protection applies to intangible, as well as tangible, information. *See U.S. v. Deloitte*, 610 F.3d 129, 136 (D.C. Cir. 2010), *citing Hickman*, 329 U.S. at 511; Memorandum Brief Supporting Plaintiff's Motion ("Bur. Mem."), ECF No. 31, 5.[4]

Second, Defendants inaccurately assert that the work product doctrine does not apply to factual information but only to material containing "mental impressions, conclusions, opinions, or legal theories." Def. Opp. 6-7. Factual material – when it is prepared and gathered in anticipation of litigation – is protected work product. *See Baker v. Gen. Motors Corp.*, 209 F.3d 1051, 1054 (8th Cir. 2000) ("Ordinary work product includes raw factual information.").[5] The requirement that material contain

---

[4] *See also In re Cendant Corp. Sec. Litig.*, 343 F.3d 658, 662 (3d Cir. 2003) ("It is clear from *Hickman* that work product protection extends to both tangible and intangible work product."); *U.S. v. One Tract of Real Prop.*, 95 F.3d 422, 428 n. 10 (6th Cir. 1996) (same); *Buford v. Holladay*, 133 F.R.D. 487, 492-93 (S.D. Miss. 1990) (Barbour, J.) (work product protection applies to depositions of attorneys about their recollection of conversations and statements).

[5] *See also Judicial Watch, Inc. v. D.O.J.*, 432 F.3d 366, 371 (D.C. Cir. 2005) (factual material is privileged when within work product); *Martin v. Bally's Park Place Hotel & Casino*, 983 F.2d 1252, 1261 (3d Cir. 1993) (work product encompasses factual material); *Tax Analysts v. I.R.S.*, 117 F.3d 607, 620 (D.C. Cir. 1997) (same); *F.T.C. v. Hope Now Modifications, LLC*, No. CIV. 09-1204 JBS/JS, 2011 WL 2634029, at *4-5 (D.N.J. July 5, 2011) (investigators' factual notes are work product); *Power Mosfet Techs. v. Siemens AG*, No. 2:99-CV-168, 2001 WL 35986948, at *1

"mental impressions, conclusions, opinions, or legal theories" is only for opinion work product. *S.E.C. v. Brady*, 238 F.R.D. 429, 442 (N.D. Tex. 2006) (both ordinary and opinion work product are protected, the difference is when a court may nevertheless compel discovery).

Third, Defendants erroneously assert that the work product doctrine only applies to communications by third parties to attorneys and not to investigators. *See* Def. Opp. 8, n. 3. It is well-established that work product protections extend to work done by agents of attorneys, such as investigators. *See U.S. v. Nobles*, 422 U.S. 225, 238-39 & n.13, 95 S. Ct. 2160, 2170, 45 L. Ed. 2d 141 (1975) (work product doctrine protects work by investigators); Bur. Mem. 6.[6] A ruling to the contrary would undermine common litigation practice and chill all communications between attorneys and support staff.

Defendants note that the Bureau listed its investigators in the Bureau's initial disclosures. The Bureau's decision, out of an abundance of caution, to disclose that investigators assisted in the investigation does not waive work product protections over information gathered by investigators under the direction of Bureau attorneys. Investigators may testify during depositions regarding certain facts that would not constitute work product, such as their background, the type of work they perform generally, and that their work on this matter was at the direction of attorneys.

---

(E.D. Tex. July 30, 2001) ("raw factual information" is work product); *Buford,* 133 F.R.D. at 493 n. 1 (S.D. Miss. 1990) (recognizing existence of "ordinary 'fact' work product").

[6] *See also Appeal of Hughes*, 633 F.2d 282, 290 (3d Cir. 1980) (investigator testimony about witness interviews is "core of the work product of an agent of the attorney"); *In re Grand Jury Proceedings*, 601 F.2d 162, 171 (5th Cir. 1979) (work product doctrine "protects material prepared by agents for the attorney"); *O'Connor v. Boeing N. Am., Inc.*, 216 F.R.D. 640, 642-44 (C.D. Cal. 2003) (work product doctrine bars questioning plaintiff's investigator about communications with third parties).

Defendants also contend that, even if work product protections apply, the Court should compel disclosure of the protected information. *See* Def. Opp. 8-9. Defendants have not made the showing required to meet the high bar set for such disclosure. As a preliminary matter, Defendants mistakenly apply the standard for "ordinary work product," rather than "opinion work product" to the testimony they seek. *Id.* A court may compel discovery of ordinary work product "if the party seeking the materials demonstrates a substantial need for the information and an inability to obtain the substantial equivalent without undue hardship," while for opinion work product, there is "nearly an absolute protection." *Brady*, 238 F.R.D. at 443; Bur. Mem. 8-9. The *Brady* court explained that investigatory reports summarizing witness interviews are opinion work product because "the reports are 'suffused' with the investigator's mental impressions and conclusions." *Id.* at 442. Here, investigator testimony regarding their recollection of the investigation, including facts gathered and documents reviewed, would necessarily be permeated with mental impressions, conclusions, and attorney instruction, and therefore be opinion work product, with nearly absolute protection.[7]

Even if the information Defendants seek were merely "ordinary work product," Defendants still have not demonstrated substantial need and the inability to obtain the substantial equivalent elsewhere without undue hardship. *See Brady*, 238 F.R.D. at 443. It is insufficient to merely allege, as Defendants have, that large numbers of witnesses

---

[7] *See* Bur. Mem. 7-9; *Appeal of Hughes*, 633 F.2d at 290 (testimony by investigator about witness interviews was "the core of the work product of an agent of the attorney" and "his recollection of the interview might have indirectly revealed his, and [the attorney's], mental processes"); *In re Grand Jury Proceedings*, 43 F.3d at 970 ("stricter limits on disclosure of work product which results from oral communications with third parties is also necessary due to the likelihood that... will reveal the attorney's mental processes or litigation strategy").

and documents exist, or that the Bureau's initial disclosures are too extensive.[8] There is no question that Defendants can obtain all information known by investigators through other means, such as by interviewing their employees, former employees, and customers, and reviewing documents obtained by the Bureau – the vast majority of which are Defendants' own documents. *See* Bur. Mem. 9. Yet, Defendants have not noticed depositions of any employees, former employees, or consumers, or sent any document requests. The Bureau is willing to provide Defendants with the names of third parties interviewed by Bureau investigators. There is no reason why Defendants cannot review their own documents and interview the very same people.

In alleging that they have made the necessary showing, Defendants argue that the Bureau's Complaint is too vague[9] and the Bureau's initial disclosures are too extensive. *See* Def. Opp. 8-10. Defendants fail to cite to a single authority for the proposition that – even if these characterizations were correct – the Court should order the Bureau to produce its work product. In addition, Defendants mischaracterize both the Complaint and the initial disclosures. For example, in responding to the Bureau's assertion that Defendants can interview their employees, former employees, and customers, Defendants complain that the Bureau "identified over two hundred individuals" in its

---

[8] *See King v. Odeco Inc.*, 106 F.3d 396, at *2-3 (5th Cir. 1997) (work product generally not available if within parties' own knowledge or can be obtained by deposition; undue hardship test generally not satisfied merely by expense of obtaining materials); *S.E.C. v. Buntrock*, No. 02 C 2180, 2004 WL 1470278, at *2 (N.D. Ill. June 29, 2004) (information was available to defendants by other means when SEC productions included 200 boxes of documents, a 12-page witness list, and investigative testimony from 49 witnesses); *O'Connor*, 216 F.R.D. at 643 (witness statement usually not disclosed when witness available to other party); *U.S. v. Chatham City Corp.*, 72 F.R.D. 640, 644 (S.D. Ga. 1976) (cost or inconvenience of taking depositions itself does not satisfy "undue hardship" requirement).

[9] The Bureau has already responded to this argument in its opposition to Defendants' Motion for a More Definite Statement. *See* ECF No. 14, 2-4, 7 (Complaint describes policies and practices at issue in detail). *See also* Order Denying Motion for a More Definite Statement, ECF No. 24, 4-5 (discussing detail in allegations in Complaint).

initial disclosures. Def. Opp. 8-9.[10] In its initial disclosures, however, the Bureau lists 42 current employees, former employees, and consumers; the Bureau also noted that the Bureau may identify additional individuals, including from lists provided *by Defendants* (which were attached to the initial disclosures as a courtesy), and would supplement the initial disclosures as required. *See* Bureau's Initial Disclosures, ECF No. 36-1, 1-9.[11]

## B.  Deliberative Process Privilege and Attorney Client Privilege

Because the areas and topics at issue are protected work product, the Court need not reach the deliberative process or attorney-client privileges. If the Court chooses to address these privileges, however, the Bureau has demonstrated their application.

With respect to the deliberative process privilege, Defendants first argue that it does not apply because this litigation was a foregone conclusion. *See* Def. Opp. 10. This argument is a red herring. During the investigation, the Bureau gathered facts for a potential lawsuit and determined whether to file the lawsuit, and once the Bureau decided to do so, continued to deliberate over what facts and legal claims to include in the lawsuit; all of which falls within the deliberative process privilege. *See* Bur. Mem. 12.[12] Next, Defendants argue that the deliberative process privilege only applies to documents. *See* Def. Opp. 10-11. This is also incorrect: the privilege applies equally to deliberations not memorialized in writing. *See* Bur. Mem. 11. Finally, Defendants argue that the deliberative process privilege does not apply here because they seek only facts, which are not protected. *See* Def. Opp. 11. While purely factual material is not protected,

---

[10] Defendants also complain that in the initial disclosures, the Bureau listed certain organizations rather than individuals. But it is the organizations that have the relevant information, such as Defendants' records and consumer complaints.

[11] Also contrary to Defendants' assertion, the Bureau's identification of documents in its initial disclosures by category and location complies with Fed.R.Civ.P. 26(a)(1)(A)(ii).

[12] This does not limit the application of the work product doctrine, as "litigation need not necessarily be imminent" for it to apply. *U.S. v. Davis*, 636 F.2d 1028, 1040 (5th Cir. 1981).

the privilege does protect "analysis and evaluation of facts," *Skelton v. U.S. Postal Serv.*, 678 F.2d 35, 38 (5th Cir. 1982), and facts that are "intertwined within analysis or evaluation," *S.E.C. v. Cuban*, No. 3:08-CV-2050-D, 2013 WL 1091233, at *9 (N.D. Tex. Mar. 15, 2013). Here, Defendants do not seek purely factual material, which is available from non-privileged documents and witnesses with first-hand knowledge. Rather, they seek to discover what investigators know about Defendants, which necessarily requires investigators to testify about protected information: the selection of documents and information they reviewed, what they learned from such review, and the substance of internal Bureau communications. *See* Bur. Mem. 11-13. Defendants also argue that the deliberative process privilege does not extend to communications with third parties, *see* Def. Opp. 11, *quoting S.E.C. v. Cuban*, but the Bureau does not ask the Court to apply the privilege to these communications (which are work product). *See* Bur. Mem. 13.

With respect to the attorney-client privilege, Defendants again argue that the privilege does not apply because they seek only facts. *See* Def. Opp. 12.[13] However, Bureau investigators have no knowledge of the facts other than what they learned from their work during the investigation. *See* Bur. Mem. 4-5; Ridder Decl., ECF No. 30-2; Thomas Decl., ECF No. 30-3. Any facts that investigators learned solely from Bureau enforcement counsel are privileged. *See* Bur. Mem. 13-14. Defendants can seek these facts from other sources, such as non-privileged documents or witnesses with first-hand knowledge, but cannot ask investigators to repeat facts that they learned solely from Bureau enforcement counsel. *See Upjohn Co. v. United States*, 449 U.S. 383, 395-96,

---

[13] Defendants also maintain that the Bureau did not assert that investigators assisted counsel in rendering legal advice, noting that neither investigator is an attorney. *See* Def. Opp. 12. This is incorrect, and the fact that neither investigator is an attorney does not affect the application of the privilege. *See* Bur. Mem. 14, *citing Ferko v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 218 F.R.D. 125, 134 (E.D. Tex. 2003); Ridder Decl., ECF No. 30-2; Thomas Decl., ECF No. 30-3.

101 S. Ct. 677, 66 L. Ed. 2d 584 (1981) (party can obtain facts even if also in privileged communication, but cannot obtain content of privileged communication).[14]

## C. Irrelevant Topics

Defendants argue that **Investigator Topics 2 and 3** (investigators' knowledge and familiarity with federal and state law, respectively) are relevant because this lawsuit is "predicated upon statutes and regulations" and their application and meaning is "foundational to this case." Def. Opp. 13. However, there are no *state* laws or regulations at issue. While there are federal laws at issue, what investigators, who are not attorneys, know of them has nothing to do with how the Court will interpret and apply them here.

## III. DEPOSITION OF TAFT WEBB

The Bureau does not seek to preclude Mr. Webb from testifying about the underlying facts at issue. *See* Def. Opp. 3-4. Rather, the Bureau seeks only to protect its work product and privileged communications with the Department of Banking and Consumer Finance ("DBCF"). *See* Bur. Mem. 15-21.[15] Defendants incorrectly state that all privileges asserted by the Bureau in this respect are based on the Common Interest Agreement ("CIA"). *See* Def. Opp. 14-15. In fact, the CIA need only be considered for the attorney-client privilege, which is waived by third-party disclosure unless a common interest privilege applies. *See* Bur. Mem. 20. The CIA need not be considered for the work product doctrine or deliberative process privilege, neither of which can be waived by disclosure to the DBCF, a non-adversarial government agency. *See* Bur. Mem. 18-19.

---

[14] *See also S.E.C. v. World-Wide Coin Investments, Ltd.*, 92 F.R.D. 65, 67 (N.D. Ga. 1981) (communications between SEC investigator and SEC counsel regarding investigation are protected by attorney-client privilege); *Ferko*, 218 F.R.D. at 139-140 (E.D. Tex. 2003) (documents disclosed to third parties and "all communications relating to those documents" are protected by attorney-client privilege).

[15] Such questions will certainly arise under **Webb Topic 15** (communications between Mr. Webb and the Bureau), but may also arise under other topics. *See* Bur. Mem., p. 16, n. 12.

**A. Attorney Client Privilege and Common Interest Privilege**

Defendants assert that the common interest privilege does not apply because Defendants are not a party to the CIA. *See* Def. Opp. 15. This argument is nonsensical. The Bureau and the DBCF share a common legal interest in enforcing the law, on behalf of consumers, with respect to the violations by Defendants. *See* Bur. Mem. 16-18.[16] It is illogical to suggest that Defendants would be a party to an agreement between regulators sharing work product and privileged information for that purpose.

Defendants' assertion that the application of the common interest privilege here would be a "significant change in the law" is also unfounded. *See* Def. Opp. 16. Courts – including in this Circuit – have held that the common interest privilege applies to potential co-plaintiffs contemplating litigation and between a party and non-party with a common legal interest. *See* Bur. Mem. 20. The privilege has also been applied to plaintiffs pursuing actions in separate forums. *Id.* The same rationale applied by these courts holds true here: "persons who share a common interest in litigation should be able to communicate with their respective attorneys and with each other to more effectively prosecute or defend their claims." *Id.* (citation omitted). Defendants also claim that the Bureau failed to provide a basis for the common interest privilege prior to Sept. 9, 2014, when the CIA was executed. *See* Def. Opp. 4.[17] A written agreement is not necessary for the privilege to apply, however.[18] In addition, a Memorandum of Understanding, ECF No. 30-1, 32-38, executed in 2011, also memorialized the common legal interest. *See* Bur. Mem. at 16-17.

---

[16] In fact, the DBCF issued an order requiring Defendants to cease an illegal lending program at issue in this matter. *See* Bur. Mem. 6, n. 4.

[17] Defendants incorrectly state Sept. 9, 20**16**. *Compare* Def. Opp., 4 *with* CIA, ECF No. 30-1, 15.

[18] *See Vacco v. Harrah's Operating Co.*, No. CIV.A107CV0663TJMDEP, 2008 WL 4793719, at *8 (N.D.N.Y. Oct. 29, 2008) ("formal written common interest agreement" not necessary).

Finally, Defendants argue that there is no attorney-client relationship because the Bureau does not represent Mr. Webb. *Id.* at 17. The attorney-client relationship at issue, however, is between Bureau enforcement attorneys and the Bureau. *See* Bur. Mem. 19-21. As part of its efforts to render legal advice to the Bureau, Bureau enforcement attorneys communicated with the DBCF. *Id.* Because of the Bureau's common interest with the DBCF, the privilege attached to these communications is not waived. *Id.*

## B. Work Product Doctrine and Deliberative Process Privilege

Defendants assert no legally-sound rationale for why the work product doctrine or deliberative process privilege do not apply to communications between the Bureau and the DBCF. With respect to the work product doctrine, Defendants assert, as they do with other privileges, that it does not protect facts and only applies to documents. *See* Def. Opp. 17. This is incorrect. *See supra* 3-4.[19] Defendants also assert that the deliberative process privilege only applies to documents. *See* Def. Opp. 18. This is also incorrect. *See* Bur. Mem. 11. Finally, Defendants assert that the Bureau cannot raise the DBCF's deliberative process privilege, but in fact, the Bureau is asserting that testimony regarding the communications in question is protected by the Bureau's deliberative process privilege. *See* Bur. Mem. 19.

## IV. CONCLUSION

The Bureau respectfully requests that the Court enter a Protective Order prohibiting inquiry into protected and privileged areas summarized below. *See also* Bur. Mem. 21-22.

---

[19] *See also S.E.C. v. Rosenfeld*, No. 97 CIV. 1467 (RPP), 1997 WL 576021, at *4 (S.D.N.Y. Sept. 16, 1997) (granting protective order for communications between SEC and Ontario Securities Commission because testimony would inevitably disclose "investigating attorneys' preliminary positions and legal theories… and those factual areas which were of particular interest").

| **Depositions of Bureau Investigators** | |
|---|---|
| Communications with third parties; **Investigator Topics 8, 12**-**16** (comm. with third parties) | Work product |
| Conclusions, observations, and analyses from review of documents and information; selection of documents and information to review | Work product; deliberative process privilege |
| Internal Bureau communications | Work product; deliberative process privilege; attorney client privilege |
| **Investigator Topics 5-6** (knowledge of and factual basis of allegations in Complaint) | Work product; deliberative process privilege; attorney client privilege |
| **Investigator Topic 7, 9, 11** (history of and actions taken during investigation) | Work product; deliberative process privilege; attorney client privilege |
| **Investigator Topic 13** (knowledge of the DBCF investigation) | Work product; deliberative process privilege; attorney client privilege |
| **Investigator Topics 2-3** (knowledge of federal and state statutes and regulations) | Not relevant |
| **Deposition of Taft Webb** | |
| Communications between the Bureau and the DBCF; **Webb Topic 15** (comm. between Webb and Bureau) | Work product; deliberative process privilege; attorney client privilege and common interest privilege |

Dated: September 16, 2016

Respectfully submitted,

CONSUMER FINANCIAL PROTECTION BUREAU

ANTHONY ALEXIS
Enforcement Director

CARA PETERSEN
Deputy Enforcement Director for Litigation

R. GABRIEL D. O'MALLEY              GREGORY K. DAVIS
Assistant Litigation Deputy          United States Attorney

  s/Emily Mintz                      MITZI DEASE PAIGE
EMILY MINTZ (VA Bar No. 82437)       (MS Bar No. 6014)
Phone: (202) 435-9424                Assistant United States Attorney
E-mail: emily.mintz@cfpb.gov         Chief, Civil Division
MICHAEL FAVRETTO (NY Bar No. 4508727) Southern District of Mississippi
Phone: (202) 435-7785                501 E. Court Street, Suite 4.430
E-mail: michael.favretto@cfpb.gov    Jackson, MS 39201
Enforcement Attorneys                Phone: (601) 965-4480
Consumer Financial Protection Bureau Direct: (601) 973-2840
1700 G Street NW, Washington, DC 20552 Facsimile: (601) 965-4409
Facsimile: (202) 435-7722            E-mail: mitzi.paige@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on September 16 2016, I electronically filed the foregoing with the Clerk of the Court using the ECF system, which sent notification of such filing to all counsel of record, including the following:

Robin H. Rasmussen (MS 104729)
Dinkelspiel Rasmussen & Mink, PLLC
1669 Kirby Parkway, Suite 106
Memphis, TN 38120
Telephone: (901) 754-7770
Facsimile: (901) 756-7772
E-mail: rrasmussen@drmlawmemphis.com

Peter D. Baskind (TN 019962)
Dinkelspiel Rasmussen & Mink, PLLC
1669 Kirby Parkway, Suite 106
Memphis, TN 38120
Telephone: (901) 754-7770
Facsimile: (901) 756-7772
E-mail: pbaskind@drmlawmemphis.com

Dale Danks, Jr. (MS 5789)
Danks, Miller & Cory
P.O. Box 1759
Jackson, MS 39215-1759
Telephone: (601) 957-3101
Facsimile: (601) 957-3160
E-mail: ddanks@dmc-law.net

Bentley E. Conner (MS 6465)
P.O. Box 563
Canton, MS 39046
Telephone: (601) 859-6306
Facsimile: (601) 859-6307
E-mail: connerbentleye@bellsouth.net

  s/Emily Mintz
EMILY MINTZ (VA Bar No. 82437)
Phone: (202) 435-9424
E-mail: emily.mintz@cfpb.gov
Enforcement Attorney
Consumer Financial Protection Bureau
1700 G Street NW
Washington, DC 20552
Facsimile: (202) 435-7722