## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF MISSISSIPPI
## NORTHERN DIVISION

**CONSUMER FINANCIAL PROTECTION BUREAU**                    **PLAINTIFF**

**VS.**                    **CIVIL ACTION NO. 3:16-cv-00356-WHB-JCG**

**ALL AMERICAN CHECK CASHING, INC.;**
**MID-STATE FINANCE, INC.; and**
**MICHAEL E. GRAY, individually**                    **DEFENDANTS**

---

### MEMORANDUM BRIEF SUPPORTING
### PLAINTIFF'S SECOND MOTION TO COMPEL DISCOVERY RESPONSES

---

Plaintiff, Consumer Financial Protection Bureau ("Bureau" or "Plaintiff"), hereby moves the Court, pursuant to Federal Rule of Civil Procedure 37, for an Order compelling production of documents and responses to interrogatories from Defendants All American Check Cashing, Inc., Mid-State Finance, Inc., and Michael E. Gray ("Defendants"). Specifically, the Bureau requests that the Court enter an Order compelling Defendants, by February 10, 2017, to: (1) produce documents responsive to six Requests for Production of Documents (Requests 4, 5, 6, 12, and 13 from the Bureau's First Set of Requests and Request 2 from the Bureau's Second Set of Requests); (2) provide responses to three Interrogatories (Interrogatories 4, 7, and 17); and (3) identify by Bates number any documents responsive to the Bureau's Requests for Documents that Defendants previously produced to the Bureau (Instruction K). In addition, as discussed in the Bureau's First Motion to Compel, ECF No. 50, and the accompanying memorandum, ECF No. 51, the Bureau seeks responsive information from July 21, 2011 to the present, and for electronically stored information (ESI) to be

produced in either native format or in a reasonably usable and searchable format, the latter meaning that Defendants provide at least the same information and usability as would be present in the native format, including sufficient information to determine where one document begins and another one ends, whether a document is an attachment to an email or a stand-alone document, and the document's metadata, such as the creation date and author. The parties have been unable to resolve these disputes through negotiation. *See* Mintz Declaration, attached as Exhibit A, pp. 6-8, Ex. 1 (Good Faith Certificate).

## BACKGROUND

On July 26, 2016, the Bureau served its first Requests for Production of Documents on Defendants ("First Set of Requests"), which consisted of fourteen requests for production of documents due by August 29, 2016. *See* Mintz Decl., pp. 9-21, Ex. A-2 (Plaintiff's First Set of Requests). On August 24, 2016, Defendants requested a two-week extension to respond, and the Bureau agreed. On September 7, 2016, Defendants sent their first production, which contained documents in response to four of the Bureau's fourteen requests. *See* Mintz Decl., pp. 22-36, Ex. A-3 (Defendants' Sept. 7, 2016 Responses). Defendants stated there were no responsive documents to two requests (Requests 8 and 11) and produced no documents in response to the other eight requests (Requests 3-7, 9, 12, and 14). *Id.* On September 15, 2016, Defendants supplemented their response to Request 13. *See* Mintz Decl., pp. 37-44, Ex. A-4 (Defendants' Sept. 15, 2016 Supplemental Response).

On September 22, 2016, the Bureau contacted Defendants to schedule a Meet and Confer in an attempt to resolve Defendants' objections and discuss various deficiencies in Defendants' productions. *See* Mintz Decl., pp. 45-46, Ex. A-5 (Email Requesting Meet

and Confer). On October 13, 2016, the parties conducted a Meet and Confer to attempt to resolve their disputes. *See* Mintz Decl., pp. 68-73, Ex. A-7 (Email Summarizing Oct. 13, 2016 Meet and Confer). During the call, the Bureau agreed to narrow some requests, and Defendants' counsel agreed to speak with their clients regarding the production of additional documents. *Id.* On October 26, 2016, during a second phone call regarding these issues, Defendants' counsel stated that they had not yet conferred with their clients regarding the issues discussed during the October 13, 2016 Meet and Confer. *See* Mintz Decl., pp. 127-29, Ex. A-11 (Email Summarizing Oct. 26, 2016 Call). The parties spoke again on October 31, 2016 regarding these issues, and on November 4, 2016, Defendants supplemented their response. *See* Mintz Decl., pp. 132-38, Ex. A-13 (Defendants' Nov. 4, 2016 Supplemental Response). Defendant also produced some additional responsive documents on November 30, 2016 and December 16, 2016.  *See* Mintz Decl., pp. 160-63, Ex. A-18 (Defendants' Nov. 30, 2016 Supplemental Response); pp. 184-88, Ex. A-21 (Defendants' Dec. 16, 2016 Supplemental Response).

Meanwhile, on October 7, 2016, the Bureau served its second Requests for Production of Documents ("Second Set of Requests"), which consisted of two additional requests due by November 9, 2016. *See* Mintz Decl., pp. 47-67, Ex. A-6 (Plaintiff's Second Set of Requests). On November 4, 2016, Defendants produced documents in response to the first of these two requests, but not the second, stating that Defendants believed they had already produced responsive documents during the Bureau's investigation and requesting clarification if the Bureau sought additional documents. *See* Mintz Decl., pp. 139-43, Ex. A-14 (Defendants' Nov. 4, 2016 Response to Plaintiff's Second Set of Requests). On November 7, 2016, the Bureau provided further clarification regarding the second request. *See* Mintz Decl., pp. 147-49, Ex. A-16 (Email

Summarizing Nov. 7, 2016 Call). One month later, on December 8, 2016, Defendants stated that they would not produce any documents in response to the second request. *See* Mintz Decl., p. 183, Ex. A-20 (Email Summarizing Dec. 8, 2016 Call).

In addition, on October 18, 2016, the Bureau served Interrogatories, which consisted of eighteen interrogatories due by November 21, 2016. *See* Mintz Decl., pp. 82-123, Ex. A-9 (Plaintiff's Interrogatories). On December 2, 2016, Defendants provided responses, objecting to providing certain information based on, *inter alia*, relevance and Defendants' position that only discovery after May 2013 is appropriate. *See* Mintz Decl., pp. 164-80, Ex. A-19 (Defendants' Response to Plaintiff's Interrogatories). On December 8, 2016, the parties conferred regarding Defendants' objections, but were unable to resolve their disagreements. *See* Mintz Decl., pp. 181-83, Ex. A-20 (Email Summarizing Dec. 8, 2016 Call).

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 26, information is discoverable if it is "relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). A party may move for an order compelling a response when another party fails to produce documents requested under Rule 34 or respond to interrogatories sent under Rule 33. *See* Fed. R. Civ. P. 37(a)(3)(B). The party seeking to compel discovery does not bear "the burden of addressing all proportionality considerations." Fed. R. Civ. P. 26(b)(1) (2015 Amendments, Advisory Committee Notes). The "party claiming undue

burden or expense ordinarily has far better information -- perhaps the only information -- with respect to that part of the determination." *Id.*

Parties objecting to discovery must state the grounds with specificity. *See* Fed. R. Civ. P. 33(b)(4), 34(b)(2)(B). "General objections to discovery, without more, do not satisfy the burden of the responding party... because they cannot be applied with sufficient specificity to enable courts to evaluate their merits." *Hager v. Graham*, 267 F.R.D. 486, 492 (N.D. W.Va. 2010). *See also McCall v. Lockheed Martin Corp.*, No. 4:04-cv-122-LS, 2006 WL 1686566, at *1 (S.D. Miss. June 19, 2006) ("In this District, the prohibition against general objections has been long established."); *Exobox Techs. Corp. v. Tsambis*, No. 2:14-CV-501-RFB-VCF, 2014 WL 4987903, at *3 (D. Nev. Oct. 7, 2014) ("Boilerplate, generalized objections are inadequate and tantamount to making no objection at all."). As a result, simply stating that a request is "overly broad, burdensome, oppressive and irrelevant" is not an adequate objection. *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990) (citation and quotation marks omitted).

## ARGUMENT

### A. Bureau's First Set of Requests for Production of Documents

### 1. Document Request 12: Materials from Company-Wide Meetings

**Bureau's Request 12:** All documents generated in connection with Defendants' corporate retreats, manager meetings, manager training sessions, manager trainee training sessions, and other company-wide meetings. *See* Mintz Decl., p. 19, Ex. A-2.

**Defendants' Objection:** All American objects to this Request on the grounds that it is overly broad and unduly burdensome, vague and ambiguous, and fails to describe with reasonable particularity each item or category of items to be inspected pursuant to F.R.C.P. 34(b)(1)(A). All American further objects to Request No. 12 as attempting to impermissibly expand the scope of discovery permitted under F.R.C.P. 26(b)(1). *See* Mintz Decl., pp. 33-34, Ex. A-3.

**Bureau's First Modification:** [T]he following materials relating to these meetings, retreats, or sessions, including those parts that involved all attendees, as well as break-out sessions or parts that involved smaller groups of attendees: (1) all agendas, minutes, and summaries of planning meetings; (2) all draft and final presentations; (3) all draft and final agendas; (4) all draft and final documents distributed to attendees at any point before, during, or after the meeting; (5) all attendee lists; (6) all questionnaires, evaluations, or surveys completed before, during, or after the meeting; (7) all video or audio recordings shown during the meeting; (8) all video or audio recordings of the meeting; (9) all talking points for presenters; and (10) all minutes, post-meeting summaries, or recaps. *See* Mintz Decl., p. 72, Ex. A-7.

**Defendants' Supplemental Response:** Defendants state that if the CFPB has documents relating to Request No. 12 already in its possession, then the Defendants object to Request No. 12 to the extent that the CFPB is attempting to unnecessarily duplicate discovery and cause Defendants undue burden and expense. Defendants object to Request No. 12 as disproportional to the needs of the case and attempting to expand the scope of discovery beyond what is permitted under F.R.C.P. 26(b)(1). The CFPB has made no showing as to how any of the information requested is relevant, especially draft forms of any documents or information presented during meetings or provided during the meetings. Defendants state that attempting to produce all information responsive to Request No. 12 would take an inordinate amount of time, as information relating to Request No. 12 is kept by individual presenters from years past or may not have been retained at all. Without waiving the foregoing objections, the Defendants are producing the agendas, minutes, and attendee lists in their possession, bates stamped All American 004170 – All American 004234. *See* Mintz Decl., p. 186, Ex. A-21.

**Bureau's Second Modification:** [I]n addition to the agendas, minutes, and attendee lists... (1) all agendas, minutes, and summaries of planning meetings; (2) all final presentations; (3) all documents distributed to attendees at any point before, during, or after the meeting; (4) all questionnaires, evaluations, or surveys completed before, during, or after the meeting; (5) all video or audio recordings shown during the meeting; (6) all video or audio recordings of the meeting; and (7) all post-meeting summaries or recaps. *See* Mintz Decl., p. 192, Ex. A-23.

## Reasons Supporting the Bureau's Motion to Compel:

Documents related to Defendants' corporate retreats, manager meetings, training sessions, and other company-wide meetings are integrally relevant to the Bureau's claims in this action. The Bureau alleges that Defendants created and implemented

company-wide policies and procedures relating to payday lending, check cashing, and consumer overpayments that violated federal consumer law. *See* Bureau's Complaint ("Compl."), ECF No. 1, ¶¶ 12-32 (check cashing), 33-53 (payday lending), 54-58 (overpayments). Defendants acknowledge that they hold company-wide meetings and have produced documents demonstrating that these meetings include trainings and presentations relating to the policies in question. For example, Defendants have produced an agenda from a January 2014 meeting for managers with a breakout session titled "Check Cashing: Increase Profitability by Overcoming Objections." Mintz. Decl., pp. 189-90, Ex. A-22 (agenda produced with Bates Number All American 004174). In addition, Defendants attached to their Answer a copy of a training document for the 1st and 3rd lending program which the Bureau alleges involves deceptive representations. *See* Defendants' Answer ("Def. Ans."), ECF No. 26, ¶ 45, Ex. G; Compl. ¶¶ 48-49, 80-83. The training document states "Fall Management Retreat 2012" in the footer, and Defendants admit that it was distributed in a packet of information at that meeting. *See* Def. Ans., ¶ 45, Ex. G. These and other similar documents generated in connection with company-wide meetings in order to train employees on company policies and procedures are directly relevant to the Bureau's claims.

The Bureau has attempted to minimize the purported burden on Defendants by narrowing Document Request 12 on two occasions. First, on October 19, 2016, after the first Meet and Confer, the Bureau narrowed the request from "[a]ll documents generated in connection" with these meetings to ten specific categories of documents. *See* Mintz Decl., p. 72, Ex. A-7 (Email Summarizing Oct. 13, 2016 Meet and Confer). Defendants never objected to these ten categories or requested that the Bureau narrow the request further. Then nearly two months later, on December 16, 2016, without ever

indicating that they would not produce documents in all ten categories, Defendants produced materials from only two[1] of the ten categories and objected to the rest.[2] Nevertheless, in an attempt to reach a compromise, later that day, the Bureau offered to narrow the request a second time to exclude drafts and presenters' talking points. *See* Mintz Decl., pp. 191-93, Ex. A-23 (Dec. 16, 2016 Email). Defendants have not yet responded to this proposal.

Defendants' cursory explanation of the alleged burden – that documents may rest with multiple custodians and that some may no longer exist – articulates a normal circumstance in the discovery process and does not state with any specificity why producing these documents is particularly burdensome. Defendants do not state the number of meetings or potential custodians, or suggest that some meetings may consist solely of content not relevant to the Bureau's claims. Nonetheless, a review of information and materials produced by Defendants thus far – albeit limited to information and documents from after May 2013 – suggests that Defendants need not gather materials from a large number of meetings. In their response to Interrogatory 5, which requested a list of all meetings attended by either a majority of managers or a majority of manager trainees, Defendants listed only nine meetings since May 2013. *See*

---

[1] In their response, Defendants stated that they were producing agendas, minutes, and attendee lists, but there were no minutes included in the production. *See* Mintz Decl., p. 186, Ex. A-21 (Defendants' Dec. 16, 2016 Supplemental Response).

[2] This is despite the fact that the parties engaged in numerous communications during the intervening two months, including with respect to the production of documents for this request. For example, on November 4, 2016, Defendants stated that they had "received a substantial number of documents" responding to this and another request, but had not yet had the opportunity to review the documents. *See* Mintz Decl., pp. 145, Ex. A-15 (Nov. 4, 2016 Letter). On November 7, 2016, Defendants estimated that they would produce documents responsive to this request by November 30, 2016. *See* Mintz Decl., pp. 148, Ex. A-16 (Email Summarizing Nov. 7, 2016 Call). On December 8, 2016, Defendants stated that they would produce documents responsive to this request the following week. *See* Mintz Decl., p. 183, Ex. A-20 (Email Summarizing Dec. 8, 2016 call).

Mintz Decl., p. 169, Ex. A-19. A review of meeting agendas produced in response to Document Request 12 reveals no more than ten additional company-wide meetings since May 2013, two of which appear to relate solely to title loans and which the Bureau is therefore willing to exclude as not relevant. While the Bureau seeks materials dating back to July 2011, assuming Defendants have not significantly decreased the frequency of their company-wide meetings in recent years, the total number of meetings will not be great. As a result, since the documents generated in connection with company-wide meetings are relevant to the Bureau's claims and Defendants have not articulated a sufficient burden, the Court should order that Defendants produce the requested documents by February 10, 2017.

## 2.  Document Requests 4-6: Defendants' Emails

**Bureau's Request 4:** All e-mails sent by, received by, or copied to Defendant Michael E. Gray concerning Defendants' check cashing services, consumer loans, overpayments, or refunds from email accounts other than "michael@allamericancheckcashing.com," excluding e-mails already produced in response to the September 3, 2014 Civil Investigative Demand. *See* Mintz Decl., p. 17, Ex. A-2.

**Defendants' Objection to Request 4:** All American objects to this Request on the grounds that it is overly broad and unduly burdensome. All American further objects to Request No. 4 to the extent this request seeks documents subject to the attorney-client privilege, work-product doctrine, or any other applicable privilege. Request No. 4 is unlimited in scope and essentially a blanket request for every email of Michael Gray concerning All American. Such request is outside the scope of permissible discovery under F.R.C.P. 26(b)(1). All American requests that the Government further define and narrow the emails that it is seeking. *See* Mintz Decl., p. 29, Ex. A-3.

**Bureau's Request 5:** All e-mails that were sent by, received by, or copied to any of the following individuals, on or after September 4, 2014, concerning check cashing services, consumer loans, overpayments, or refunds: (a) Michael Gray; (b) Jeremy Hoskinson; (c) Lisa Reed; and (d) William M. Hendrix II. *See* Mintz Decl., p. 17, Ex. A-2.

**Defendants' Objection to Request 5:** All American objects to this Request on the grounds that it is overly broad and unduly burdensome, vague and

ambiguous, and fails to describe with reasonable particularity each item or category of items to be inspected pursuant to F.R.C.P. 34(b)(1)(A). All American further objects to Request No. 5 to the extent this request seeks documents subject to the attorney-client privilege, work-product doctrine, or any other applicable privilege. Request No. 5 is unlimited in scope and essentially a blanket request for every email of the parties named in subsections (a)-(d). Such request is outside the scope of permissible discovery under F.R.C.P. 26(b)(1). All American requests that the Government further define and narrow the emails that it is seeking. *See* Mintz Decl., pp. 29-30, Ex. A-3.

**Bureau's Request 6:** All e-mails that were sent by, received by, or copied to any of the following individuals, concerning check cashing services, consumer loans, overpayments, or refunds, excluding e-mails already produced in response to the September 3, 2014 Civil Investigative Demand: (a) Dianne Valladares; (b) Amanda M. Hearn; (c) Jason Scott Cain; (d) Laura Faulkner; (e) Jason Stabbs; and (f) James A. Wilson Jr. *See* Mintz Decl., pp. 17-18, Ex. A-2.

**Defendants' Objection to Request 6:** All American objects to this Request on the grounds that it is overly broad and unduly burdensome, vague and ambiguous, and failing to describe with reasonable particularity each item or category of items to be inspected pursuant to F.R.C.P. 34(b)(1)(A). All American further objects to Request No. 6 to the extent this request seeks documents subject to the attorney-client privilege, work-product doctrine, or any other applicable privilege. Request No. 6 is unlimited in scope and essentially a blanket request for every email of the parties named in subsections (a)-(f). Such request is outside the scope of permissible discovery under F.R.C.P. 26(b)(1). All American requests that the Government further define and narrow the emails that it is seeking. *See* Mintz Decl., pp. 30-31, Ex. A-3.

## Reasons Supporting the Bureau's Motion to Compel:

The Bureau alleges that Defendants created and implemented company-wide policies and procedures relating to payday lending, check cashing, and consumer overpayments that violated federal consumer law. *See* Compl., ¶¶ 12-58. Emails among Defendants employees regarding and carrying out these policies and practices are directly relevant to the Bureau's claims, including the scope, content, and execution of the policies and practices at issue, as well as the impact on consumers and the involvement and knowledge of individual Defendant Michael E. Gray ("Mr. Gray"). *See Woods v. S. Care, Inc.*, No. 3:09-CV-313-CWR-LRA, 2014 WL 11515605, at *1 (S.D.

Miss. Nov. 4, 2014) (upholding request for all electronic communications sent to or by all management level employees relating to the alleged conduct or type of conduct at issue). The Bureau only seeks emails from ten individuals whom the Bureau believes were integral in either the development or implementation of the policies and practices at issue or in consumer complaints and compliance. In addition, the Bureau seeks only emails not already produced by Defendants during the Bureau's investigation. Requests 4 and 6 specifically exclude all emails already produced in response to the Bureau's September 3, 2014 Civil Investigative Demand ("September 3, 2014 CID"), which contained the Bureau's previous requests for emails. In addition, these requests list custodians – or in the case of Mr. Gray, email addresses – not listed in the Sept. 3, 2014 CID. In Request 5, the Bureau seeks emails from custodians listed in the September 3, 2014 CID, but to avoid duplication, only requests emails on or after September 4, 2014.

To further limit the burden on Defendants, on October 20, 2016, the Bureau proposed search terms for email production. *See* Mintz Decl., pp. 124-26, Ex. A-10 (Oct. 20, 2016 Email). On November 2, 2016, Defendants responded that their system could not run the search terms provided by the Bureau and produced a search manual describing the search tools available. *See* Mintz Decl., pp. 130-31, Ex. A-12 (Nov. 2, 2016 Email). The Bureau reviewed the manual and, on November 10, 2016, provided updated search terms that Defendants could use in their system. *See* Mintz Decl., pp. 150-59, Ex. A-17 (Nov. 10, 2016 Email and Attachments). Defendants have not objected to the search terms or requested the Bureau further limit or reformat them. On multiple occasions, during November and early December, Defendants stated that they could not yet provide a timeline for email production, although they suggested it could take multiple months. *See*, *e.g.*, Mintz Decl., p. 183, Ex. A-20 (Email Summarizing Dec. 8,

2016 Call). On December 23, 2016, Defendants stated that they "believe that it will take approximately two months to produce all emails" responsive to Requests 4, 5, and 6, without providing any further detail. Mintz Decl., pp. 194-95, Ex. A-24 (Dec. 23, 2016 Letter).[3] Defendants have not provided a sufficient justification for why it will take two months from December 23, 2016 to produce the requested emails. The Bureau requests that the Court order Defendants to produce all responsive non-privileged emails in response to Requests 4, 5, and 6 by February 10, 2017, which is three months from when the Bureau first sent revised search terms on November 10, 2016 and less than two months before the end of discovery on March 31, 2017.

### 3. Document Request 13: Emails Relating to Consumers

**Bureau's Request 13:** All documents concerning individuals listed in Section[]... I.H. of the Bureau's June 29, 2016 Rule 26(a)(1) Initial Disclosures (not including the exhibits)[.] *See* Mintz Decl., p. 19, Ex. A-2.[4]

**Defendants' Objection:** All American objects to this Request on the grounds that it is overly broad and unduly burdensome, vague and ambiguous, and fails to describe with reasonable particularity each item or category of items to be inspected pursuant to F.R.C.P. 34(b)(1)(A). All American further objects to Request No. 13, specifically with regard to Section I.C., as attempting to impermissibly expand the scope of discovery permitted under F.R.C.P. 26(b)(1). All American objects to Request No. 13 to the extent the request seeks documents protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege. All American will only produce documents with regard to Section I.H. *See* Mintz Decl., p. 34, Ex. A-3.

---

[3] With respect to Request 4, Defendants stated on Nov. 4, 2016 that "Michael Gray does not use any non-All American email addresses as a business email for All American," and that "[i]n the past, Mr. Gray may have copied or forwarded emails sent to a non-business email to his All American email account," and "[a]ny such emails should be in the possession of the CFPB." *See* Mintz Decl., p. 135, Ex. A-13 (Defendants' Nov. 4, 2016 Supplemental Response). Only after the Bureau provided examples of emails concerning Defendants' business from a non-All American email address belonging to Mr. Gray, did Defendants agree to run the search terms in Mr. Gray's non-All American email account. *See* Mintz Decl., p. 183, Ex. A-20 (Email Summarizing Dec. 8, 2016 Call).

[4] Request 13 also sought information related to former employees listed in Section I.C. of the Bureau's Initial Disclosures, but that part of the request is not at issue in this Motion.

**Reasons Supporting the Bureau's Motion to Compel**

In Document Request 13, the Bureau requested documents concerning twenty-one consumers listed in the Bureau's Initial Disclosures who may have been harmed by Defendants' practices at issue in this litigation. The Defendants agreed to produce responsive documents concerning these consumers, but produced no emails. *See* Mintz Decl., p. 72, Ex. A-7 (Email Summarizing Oct. 13, 2016 Meet and Confer). The Bureau requested that Defendants produce emails relating to these consumers and, to that end, included the names of these consumers in the search terms provided to Defendants. *See* Mintz Decl., p. 155, Ex. A-17, Search Term 17. Emails concerning these consumers are directly relevant to the Bureau's claims: they may contain information about the Defendants' practices and the impact of these practices on consumers. The Court should order Defendants to produce emails concerning these consumers by February 10, 2017.

B. <u>**Bureau's Second Set of Requests of Production of Documents**</u>

**Bureau's Request 2:** All documents concerning Defendants' efforts in 2014 and 2015 to provide Refunds to consumers who had made an Overpayment but were not previously provided with a Refund, including as described in Defendants' response to the Bureau's Request for Written Report 1, attached hereto as Exhibit B, such as Refunds to consumers whose credit balances were cleared in 2011, 2012, or 2013. *See* Mintz Decl., p. 54, Ex. A-6.

**Defendants' Objection:** All American believes that any documents responsive to Request No. 2 have already been provided to the CFPB; Copies of refund checks for the subject customers were provided and produced. If Request No. 2 is seeking documents above and beyond what has been produced, All American requests clarification of the category or type of documents that the CFPB is currently seeking. *See* Mintz Decl., p. 141, Ex. A-14.

**Reasons Supporting the Bureau's Motion to Compel:**

The Bureau alleges that from at least 2011 until at least 2014, in violation of federal law, Defendants failed to take affirmative steps to notify consumers of overpayments or to refund consumers' positive balances and instead deleted those

-13-

positive balances. *See* Compl., ECF No. 1, ¶¶ 55-56, 84-87. Although Defendants broadly

deny these allegations in this litigation, *see* Def. Ans., ECF No. 26, ¶¶ 55-56, 84-87,

Defendant All American Check Cashing, Inc. ("AACC") acknowledged in a March 2015

submission to the Bureau that "[u]ntil sometime in 2013, if the Company owed a refund

to a customer and the customer did not return to the store, the Company cleared the

credit balance after approximately 30 days," and also that in October 2011, "all credit

balances were cleared, regardless of their origin." Mintz Decl., p. 67, Ex. A-6 (AACC's

March 20, 2015 Submission to Bureau). The same submission states that "[b]eginning

in July 2014, the Company conducted a voluntary review of these accounts and provided

paper checks (or an account credit) to all consumers whose credit balances were

cleared," and with respect to the credits cleared in October 2011, "[r]ecently, the

Company conducted a thorough manual review… and any customer actually owed a

refund received one." *Id.*

The Bureau seeks all documents concerning these efforts in 2014 and 2015 to

provide refunds to these consumers. This information is directly relevant to the Bureau's

claims, including both the scope of the injury to consumers and whether consumers

have been remediated. Three days after receiving Defendants' objection on November 4,

2016, the Bureau provided further detail on November 7, 2016 regarding what it was

seeking, specifically "all internal documents relating to [efforts in 2014 and 2015 to

provide refunds to consumers], whether they are internal communications, meeting

notes, meeting agendas, spreadsheets, etc." Mintz Decl., p. 148, Ex. A-16 (Email

Summarizing Nov. 7, 2016 Call). Defendants never requested that the Bureau narrow

this request further and never provided information about why producing responsive

documents would be burdensome. Then, over a month later, on December 8, 2016,

Defendants stated that would not produce any documents in response to this request. *See* Mintz Decl., p. 183, Ex. A-20 (Email Summarizing Dec. 8, 2016 Call). Because these documents are relevant to the Bureau's claim, and the Defendants have provided no persuasive justification for not producing them, the Court should order Defendants do so by February 10, 2017.

## C. Bureau's Interrogatories

### 1. Interrogatory 4: Former Employees

**Bureau's Interrogatory 4:** Identify all of Defendants' full-time employees whose employment ceased on or after September 1, 2014, and state his or her position, the dates of his or [sic] employment, and the reason(s) for the departure. *See* Mintz Decl., p. 89, Ex. A-9.

**Defendants' Objection:** Defendants object to this interrogatory on the grounds that information requested is not relevant to any claim or defense and is therefore not discoverable under F.R.C.P. 26(b). *See* Mintz Decl., p. 168, Ex. A-19.

**Reasons Supporting the Bureau's Motion to Compel:**

The Bureau alleges that Defendants engaged in company-wide policies and practices in violation of federal consumer law. *See* Compl., ¶¶ 12-61. Defendants deny many of the Bureau's allegations. *See* Def. Ans. ¶¶ 12-61. The Bureau seeks information concerning Defendants' former employees in order to identify witnesses who can testify as to Defendants' policies and practices. Other courts have held that the identity of former employees is relevant and discoverable information. For example, in *In re Bank of America Wage & Hour Employment Practices Litigation*, 275 F.R.D. 534 (D. Kan. 2011), the plaintiffs sought the identity and contact information of the defendant's former employees in order to obtain information about the extent of policies and procedures at issue in the suit. *Id.* at 538-39. The court held that the identity of former employees was relevant as it "appears reasonably likely that these former employees

would possess information about the extent of the alleged policy or plan." *Id. See also Young v. Dollar Tree Stores, Inc.*, No. 11-CV-01840-REB-MJW, 2012 WL 1719792, at *1-2 (D. Colo. May 11, 2012) (finding that interrogatories seeking names and contact information of former employees sought relevant information); *Stone v. Advance Am.*, No. 08 CV 1549 WQH (WMC), 2010 WL 5892501, at *1-2 (S.D. Cal. Sept. 21, 2010) (ordering defendant to provide names and contact information for former employees); *Tierno v. Rite Aid Corp.*, No. C 05-02520 TEH, 2008 WL 3287035, at *3 (N.D. Cal. July 31, 2008) (holding that requesting party has "significant interest in identifying witnesses" and that employees "will have relevant information about the tasks they performed and [Defendant's] policies and practices...."). Here, as in *In Re Bank of America*, the Bureau seeks information about former employees who likely have information about the policies and practices at issue. Because this information is relevant to the Bureau's claims, and Defendants have not stated that producing it would be burdensome, the Court should order Defendants to respond by February 10, 2017.

## 2. Interrogatory 7: Bonus Policies

**Bureau's Interrogatory 7:** Identify and describe, in detail, all employee bonus policies in place from July 21, 2011 to the present, including any changes in the policies. *See* Mintz Decl., p. 89, Ex. A-9.

**Defendants' Objection:** Defendants object to the CFPB's demand for documents for a time period outside the applicable statute of limitations, which Defendants believe to be May 11, 2013, three years before the date the Complaint was filed. Defendants object to this interrogatory on the grounds that information requested is not relevant to any claim or defense and is therefore not discoverable under F.R.C.P. 26(b). *See* Mintz Decl., p. 170, Ex. A-19.

## Reasons Supporting the Bureau's Motion to Compel:

The Bureau alleges that Defendants encouraged their employees to implement the policies and practices at issue, including through use of bonuses. *See* Compl., ¶ 31

("AACC and Mr. Gray provide store managers and supervisors with incentives to ensure they follow AACC's check cashing policies and procedures. For example, managers and supervisors can increase their monthly bonuses by increasing check cashing fees collected at their stores."); *see also* ¶ 52 ("AACC has instructed employees to sell 1st and 3rd lending aggressively to consumers."). Whether and to what extent Defendants used bonuses to encourage employees to implement the policies and practices at issue is relevant to the scope and implementation of those policies and practices, as well as to Defendants' knowledge and culpability. Because Defendants' bonus policies are relevant to the Bureau's claims, and Defendants have not articulated any burden, the Court should order Defendants to respond by February 10, 2017.

### 3. Interrogatory 17: Store Locations

**Bureau's Interrogatory 17:** Identify all of Defendants' store locations that operated from July 21, 2011 to present in Mississippi, Louisiana, and Alabama, including (i) the address of the store, (ii) the date the store opened, (iii) the date the store permanently closed, if applicable, (iv) all store managers employed at the location from July 21, 2011 to the present, including the dates of their employment as store manager for the location, (v) the area supervisor overseeing the location from July 21, 2011 to the present, including the dates that they oversaw the location. *See* Mintz Decl., p. 92, Ex. A-9.

**Defendants' Objection:** Defendants object to the CFPB's demand for documents for a time period outside the applicable statute of limitations, which Defendants believe to be May 11, 2013, three years before the date the Complaint was filed. Defendants object to the form of this interrogatory. Defendants object to this interrogatory on the grounds that information requested in subparts (iv) and (v) are not relevant to any claim or defense and is therefore not discoverable under F.R.C.P. 26(b). Without waiving the foregoing objections, following is a list of All American and Mid-State Finance store locations and the date the store opened and date closed. *See* Mintz Decl., p. 176, Ex. A-19.

**Reasons Supporting the Bureau's Motion to Compel:**

Defendants responded to the Bureau's Interrogatory 17 subparts (i)-(iii), but refuse to respond to subparts (iv)-(v), in which the Bureau seeks to discover which of

-17-

Defendants' employees had responsibility for which geographic areas and stores. As with Interrogatory 4, discussed *supra* at pp. 15-16, this information is relevant for identifying witnesses to the policies and practices at issue. Since this information is relevant to the Bureau's claims, and Defendants have not articulated any burden, the Court should order Defendants to respond by February 10, 2017.

**D. Instruction K**

**Bureau's Instruction K:** If a Document Request seeks responsive documents that Defendants have previously produced to the Bureau pursuant to any Civil Investigative Demand, Defendants are not expected to re-produce such documents but may instead respond by designating the relevant document(s) with reference to the appropriate Bates numbers. *See* Mintz Decl., pp. 12-13, Ex. A-2 (First Set of Requests); Mintz Decl., pp. 50-51, Ex. A-6 (Second Set of Requests).

**Defendants' General Objection 6:** All American objects to each definition, instruction, or document request to the extent each that each instruction, definition, and document request seeks documents that are readily or more accessible to the Government or requests documents previously produced. Responding to such requests is unduly burdensome and designed to burden All American with unnecessary expense. *See* Mintz Decl., p. 25, Ex. A-3.

**Reasons Supporting the Bureau's Motion to Compel:**

In both its First and Second Sets of Requests, the Bureau included Instruction K, which stated that if there are documents responsive to a request that Defendants already produced to the Bureau pursuant to any Civil Investigative Demand issued during the Bureau's investigation, then Defendants are not expected to re-produce such documents but may instead respond by designating the relevant document(s) with reference to the appropriate Bates numbers. Defendants have refused to do so.

In drafting its document requests, the Bureau sought to minimize overlap between these requests and requests made during the Bureau's investigation. Five of the Bureau's sixteen requests specifically exclude documents already produced to the

Bureau (First Set of Requests 2, 4, 6, 8, and 14), and another four are limited to documents from after September 4, 2014 to avoid overlap with documents requested in the Bureau's September 3, 2014 CID (First Set of Requests 5, 7, 10, and 11). *See* Mintz Decl., pp. 16-19, Ex. A-2 (First Set of Requests). This leaves only seven requests where there is even potential for overlap (First Set of Requests 1, 3, 9, 12, and 13; Second Set of Requests 1 and 2). *Id.*; Mintz Decl., p. 54, Ex. A-6 (Second Set of Requests). Thus far, Defendants have only stated in response to two requests (First Set of Requests 12; Second Set of Requests 2) from these remaining seven requests that they believe responsive documents have already been provided to the Bureau. *See* Mintz Decl., p. 141, Ex. A-14 (Defendants' Nov. 4, 2016 Response to Plaintiff's Second Set of Requests); Mintz Decl., p. 186, Ex. A-21 (Defendants' Dec. 16, 2016 Supplemental Response). As a result, this instruction applies only to a very narrow set of requests, perhaps only two.

It is not unduly burdensome for Defendants to comply with Instruction K. If Defendants determine in responding to a request that responsive documents were already produced to the Bureau, then it should not be difficult for them to identify those documents by Bates number or the range of Bates numbers. Although Defendants produced a large number of documents during the investigation, over 99% of those documents are emails and their attachments. *See* Van Atta Decl., attached as Ex. B, ¶ 2.[5] As discussed above, the Bureau excluded previously produced emails from the email requests in this litigation (Requests 4-7), either explicitly or based on the date range, relieving Defendants of any burden associated with producing or identifying emails that were already produced. *See* p. 11, *supr*a; Mintz Decl., pp. 17-18, Ex. A-2 (First Set of

---

[5] This large number of emails and attachments is due in part to Defendants' decision during the investigation to produce emails from identified custodians without narrowing the productions by keyword search for relevant emails. *See* Mintz Decl., ¶ 2.

Requests). As a result, Instruction K does not impose a significant burden on Defendants. In addition, it is not unusual for a party to request – or for a Court to require – a responding party to identify previously produced documents by Bates numbers. *See Clapper v. Am. Realty Inv'rs, Inc.*, No. 3:14-CV-2970-D (BF), 2015 WL 11023596, at *1 (N.D. Tex. Sept. 24, 2015) ("To the extent that any responsive documents have already been produced in the bankruptcy proceeding, the defendants shall identify the bates numbers of the documents already produced and specify which bates numbers are responsive to which document requests."); *Burdette v. Panola Cty.*, No. 3:13-CV-286-MPM-SAA, 2015 WL 1433462, at *5 (N.D. Miss. Mar. 31, 2015) ("Defendants are ordered to identify the documents they have produced which are responsive to this request, along with the bates stamp numbers for each applicable document."); *Herring v. Univ. of S. Miss.*, No. 2:09CV176-KS-MTP, 2010 WL 3023093, at *3 (S.D. Miss. July 29, 2010) ("Defendants shall supplement their response to state unequivocally whether they have produced all documents responsive to this request, and shall identify such documents by bates number."); *Raytheon Co. v. Indigo Sys. Corp.*, No. 4:07-CV-109, 2008 WL 5378044, at *3 (E.D. Tex. Dec. 23, 2008) ("If, as [Plaintiff] suggests, it has produced documents responsive to the Defendants' RFPs, it must provide bates numbers for documents that are responsive to each request.").

If Defendants are able to respond to the Bureau's requests by stating that responsive documents have already been produced, without specifying which documents are responsive, then the Bureau is limited in its ability to identify and use those documents effectively during this litigation. This is especially true because Defendants have stated that they will not stipulate that all documents produced to the Bureau during the Bureau's investigation are authentic business records, despite the fact

that these documents were produced with sworn statements by Defendants' employees that the documents were true copies of Defendants' business records. *See* Mintz. Decl., pp. 74-81, Ex. A-8 (Oct. 17, 2016 Email and Attachments). Defendants have stated that if the Bureau identifies individual documents, then Defendants will consider such a stipulation on a document-by-document basis, but Defendants' refusal to comply with Instruction K creates the potential for an untenable position: Defendants refuse to produce or identify responsive documents because the documents have already been produced, but then later challenge whether the documents previously produced are authentic business records. This Court should order that Defendants comply with Instruction K by February 10, 2017.

## CONCLUSION

For the reasons set forth above, the Bureau respectfully requests that the Court issue an Order requiring that by February 10, 2017, Defendants (1) provide all non-privileged documents responsive to Requests 4, 5, 6, 12, and 13 from the Bureau's First Set of Requests and Request 2 from the Bureau's Second Set of Requests; (2) fully respond to the Bureau's Interrogatories 4, 7, and 17; and (3) comply with Instruction K in the Bureau's First and Second Set of Requests. In addition, as discussed in the Bureau's First Motion to Compel, ECF No. 50, and the accompanying memorandum, ECF No. 51, the Bureau seeks responsive information from July 21, 2011 to the present, and for electronically stored information (ESI) to be produced in either native format or in a reasonably usable and searchable format.

Dated: January 3, 2017

Respectfully submitted,

CONSUMER FINANCIAL PROTECTION BUREAU

ANTHONY ALEXIS
Enforcement Director

CARA PETERSEN
Deputy Enforcement Director for Litigation

R. GABRIEL D. O'MALLEY
Assistant Litigation Deputy

_s/Emily Mintz_____
EMILY MINTZ (VA Bar No. 82437)
Phone: (202) 435-9424
E-mail: emily.mintz@cfpb.gov
MICHAEL FAVRETTO (NY Bar No. 4508727)
Phone: (202) 435-7785
E-mail: michael.favretto@cfpb.gov
STEPHANIE BRENOWITZ (NY Bar No. 4317418)
Phone: (202) 435-9005
E-mail: stephanie.brenowitz@cfpb.gov
Enforcement Attorneys
Consumer Financial Protection Bureau
1700 G Street NW
Washington, DC 20552
Facsimile: (202) 435-7722

GREGORY K. DAVIS
United States Attorney
Southern District of Mississippi

MITZI DEASE PAIGE (MS Bar No. 6014)
Assistant United States Attorney
Chief, Civil Division
Southern District of Mississippi
501 E. Court Street, Suite 4.430
Jackson, MS 39201
Phone: (601) 965-4480
Direct: (601) 973-2840
Facsimile: (601) 965-4409
E-mail: mitzi.paige@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on January 3, 2017, I electronically filed the foregoing with the Clerk of the Court using the ECF system, which sent notification of such filing to all counsel of record, including the following:

Robin H. Rasmussen (MS 104729)
Dinkelspiel Rasmussen & Mink, PLLC
1669 Kirby Parkway, Suite 106
Memphis, TN 38120
Telephone: (901) 754-7770
Facsimile: (901) 756-7772
E-mail: rrasmussen@drmlawmemphis.com

Peter D. Baskind (TN 019962)
Dinkelspiel Rasmussen & Mink, PLLC
1669 Kirby Parkway, Suite 106
Memphis, TN 38120
Telephone: (901) 754-7770
Facsimile: (901) 756-7772
E-mail: pbaskind@drmlawmemphis.com

Megan B. Ross (MS 103609)
Dinkelspiel Rasmussen & Mink, PLLC
1669 Kirby Parkway, Suite 106
Memphis, TN 38120
Telephone: (901) 754-7770
Facsimile: (901) 756-7772
E-mail: mross@drmlawmemphis.com

Dale Danks, Jr. (MS 5789)
Danks, Miller & Cory
P.O. Box 1759
Jackson, MS 39215-1759
Telephone: (601) 957-3101
Facsimile: (601) 957-3160
E-mail: ddanks@dmc-law.net

Bentley E. Conner (MS 6465)
P.O. Box 563
Canton, MS 39046
Telephone: (601) 859-6306
Facsimile: (601) 859-6307
E-mail: connerbentleye@bellsouth.net

 s/Emily Mintz
EMILY MINTZ (VA Bar No. 82437)
Phone: (202) 435-9424
E-mail: emily.mintz@cfpb.gov
Enforcement Attorney
Consumer Financial Protection Bureau
1700 G Street NW
Washington, DC 20552
Facsimile: (202) 435-7722