IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**CONSUMER FINANCIAL PROTECTION**
**BUREAU**                                                                              **PLAINTIFF**

v.                                   CIVIL ACTION NO. 3:16-cv-356-WHB-JCG

**ALL AMERICAN CHECK CASHING, INC.,**
**MID-STATE FINANCE, INC., and**
**MICHAEL E. GRAY, individually**                              **DEFENDANTS**

<u>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'**</u>
<u>**FIRST MOTION TO COMPEL RESPONSES TO INTERROGATORIES (ECF**</u>
<u>**NO. 79)**</u>

Before the Court is Defendants' First Motion to Compel Responses to Interrogatories (ECF No. 79) filed by Defendants All American Check Cashing, Inc., Mid-State Finance, Inc., and Michael E. Gray. Plaintiff, the Consumer Financial Protection Bureau filed a Response in Opposition (ECF No. 89), and Defendants thereafter filed a Reply (ECF No. 95). The matter is fully briefed. Having considered the submissions of the parties and relevant legal authority, the Court finds that Defendants' First Motion to Compel Interrogatory Responses (ECF No. 79) should be GRANTED IN PART and DENIED IN PART. To the extent that Defendants seek further clarification regarding the relevant subject matter to which individuals listed in Attachments A, J, and K can attest, the Motion is GRANTED. The Motion is otherwise DENIED.

<u>I. BACKGROUND</u>

Plaintiff, the Consumer Financial Protection Bureau ("the Bureau") – which is an independent agency of the Federal Government – filed its Complaint (ECF No.

1) on May 11, 2016. The Complaint alleges that Defendants All American Check Cashing Inc., Mid-State Finance, Inc., and Michael E. Gray violated the Consumer Financial Protection Act ("CFPA") "by engaging in unfair, deceptive, and abusive acts and practices in connection with their offering and providing of payday loans and check cashing services to consumers." (ECF No. 14, at 1).

On September 23, 2016, Defendants propounded to Plaintiff Defendants' First Set of Interrogatories. "The request included twenty-six separate Interrogatories," which, according to Defendants "were intended to ascertain the factual basis of the Bureau's allegations." (ECF No. 80, at 1). The Bureau served Defendants with its responses to these interrogatories on October 24, 2016. Dissatisfied with the Bureau's responses to seventeen of the twenty-six interrogatories, Defendants filed the instant Motion to Compel Responses to Interrogatories (ECF No. 79).

## II. DISCUSSION

Defendants contend that most of the Bureau's interrogatory responses "lacked the specificity [sic] requested required to fully respond to the Interrogatory, or to indicate the basis for the allegations about which All American is seeking information."[1] (ECF No. 80, at 1-2). Moreover, Defendants assert that the Bureau's responses "fail to serve the basic purpose of discovery – to narrow issues before the Court." *Id.* at 2. Defendants also lament the inadequacy of a privilege log

---

[1] Defendants also make arguments about the timeliness of the Bureau's proposal to supplement their interrogatory responses in March. This argument was already of questionable relevance when the instant Motion was filed on March 1, 2017 and is now moot given the extension of case management deadlines provided for in the Text Only Amended Case Management Order entered March 20, 2017.

purportedly provided by the Bureau because it "offered no real insight to assist All American in determining whether to seek further information." *Id.* The Bureau responds by arguing that it "has fully complied with its discovery obligations" by "produc[ing] a 96-page response that includes a detailed narrative answer to each interrogatory and specifically identifies documents, witnesses, and other sources responsive to each interrogatory. (ECF No. 90, at 1). Furthermore, says the Bureau, "all of [Defendants'] interrogatories are impermissible and premature contention interrogatories" and "much of the information at issue is protected work product." *Id.* at 2.

    A.  <u>Legal Standard</u>

In reviewing a motion to compel, courts must take into account that discovery rules "are to be accorded a broad and liberal treatment to effect their purpose of adequately informing litigants in civil trials." *Herbert v. Lando,* 441 U.S. 153, 176 (1979). "At some point, however, discovery yields diminishing returns, needlessly increases expenses, and delays the resolution of the parties' dispute." *Willis v. City of Hattiesburg*, No. 2:14-cv-89-KS-MTP, 2016 WL 918038, at *2 (S.D. Miss. Mar. 10, 2016). Indeed, "[d]iscovery is not a license for the plaintiff to 'go fishing' and is limited to information that 'is relevant to any party's claim or defense.'" *Barnes v. Tumlinson*, 597 F. App'x 798, 799 (5th Cir.), *cert. denied,* 136 S. Ct. 485 (2015) (citing *Marshall v. Westinghouse Elec. Corp.,* 576 F.2d 588, 592 (5th Cir. 1978); Fed. R. Civ. P. 26(b)(1)). "Finding a just and appropriate balance in the discovery process" is thus one of the Court's key responsibilities. *Willis*, 2016 WL 918038, at

3

\*2. "It hardly bears repeating that control of discovery is committed to the sound discretion of the trial court…." *Van Duzer v. U.S. Bank Nat. Ass'n*, 582 F. App'x 279, 283 (5th Cir. 2014) (quoting *Williamson v. U.S. Dep't of Agric.,* 815 F.2d 368, 382 (5th Cir. 1987)).

In addition to relevance, Federal Rule of Civil Procedure 26(b)(1) requires that matters be "proportional to the needs of the case" in order to be discoverable. Considerations include "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). However, "[i]nformation within [Rule 26's] scope of discovery need not be admissible in evidence to be discoverable." *Id.*

Interrogatories to parties are governed by Federal Rule of Civil Procedure 33, which provides that "[a]n interrogatory may relate to any matter that may be inquired into under Rule 26(b)." Fed. R. Civ. P. 33(a)(2). Further, Rule 33 provides that an interrogatory "is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact, but the court may order that the interrogatory need not be answered until designed discovery is complete, or until a pretrial conference or some other time." *Id.* However,

> [i]f the answer to an interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing a party's business records (including electronically stored information), and if the burden of deriving or ascertaining the answer will be substantially the same for either party, the responding party may

4

> answer by … specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could.

*Id.* (d)(1).

  B. <u>Analysis</u>

Defendants seek to compel the Bureau to produce more detailed and specific responses to seventeen interrogatories: Nos. 2-6, 9, 13-18, and 20-24. Because Defendants raise the same issues in addressing each of the aforementioned interrogatory responses – and because the Court finds that the Bureau's responses to each provided a similar degree of detail and specificity – the Court has selected a single interrogatory to serve as an example for the Court's analysis.

Interrogatory No. 2 reads as follows:

> Please state in detail, including identification of any persons or documents from which the information originated, the factual basis for the Plaintiff's allegation in Paragraph 13, of the Complaint that states:
>
> "AACC prohibits employees from orally disclosing to consumers the fee structure (e.g. 3% of 5%), the fee percentage that applies to a transaction (e.g. 3%), or the dollar amount of the fee, at any point during a check cashing transaction, even when a consumer asks the employee what the fee is."

(ECF No. 80, at 3). In response, the Bureau objected to the interrogatory by raising privilege and asserting that it is unduly burdensome as a premature contention interrogatory, and then answered with the following:

> In emails and attachments, training documents, presentations, policies, and procedures, Defendants instruct and train employees to never disclose to

5

> consumers the fee structure, the fee percentage, or the dollar amount of the fee for cashing a check. Defendants instruct employees to proceed with a check cashing transaction without ever orally disclosing the fee to consumers, even if consumers ask about the fee. If consumers ask about the fee, Defendants instruct employees to deflect the question long enough to verify and process the check, such as by saying that the employee is not sure what the fee is and needs to take additional steps, like putting information in the store's computer, processing the check, or verifying the check, to determine the fee. The factual basis for this allegation originates from Defendants' documents, Defendants' current employees, Defendants' former employees, and Defendants' customers. In response to this interrogatory, the Bureau identifies the individuals in **Attachment A**, who are persons from whom the factual basis regarding the Bureau's check cashing allegations originated. In addition, the Bureau identifies the documents in **Attachment B**, which Defendants produced to the Bureau during the Bureau's investigation. Pursuant to Fed. R. Civ. P. 33(d), the Bureau states that further factual basis for the allegation can be found in the documents listed in **Attachment B**.

(ECF No. 80-1, at 6).

Defendants assert that this response from the Bureau is inadequate because it "lacks the specificity required by the Interrogatory":

> The Bureau was asked to state in detail its factual basis and to identify persons from which information originated in Paragraph 13 of the Complaint. Pursuant to the Definitions and Instructions included in the Interrogatories, "state in detail" requires specific information, including underlying facts, rather than ultimate facts. A proper response should also particularize facts as to time, place, and manner. The Bureau's "Attachment A" simply identifies individuals from whom "the factual basis regarding the Bureau's check cashing allegations originated." The Attachment fails to indicates which individuals possess knowledge regarding Paragraph 13 of the Complaint. That is insufficient. The Bureau should timely supplement its Responses in such a manner

6

>as to specifically address the information requested and to identify those individuals, who the Bureau believes, have the information requested.

(ECF No. 80, at 4).

For the most part, the Court cannot agree with Defendants' assessment of the Bureau's response. Putting aside, for the moment, the disputed propriety of so-called "contention interrogatories" at this stage of the litigation, the Bureau's response to Defendants' interrogatory strikes the Court as sufficiently detailed and specific, especially in conjunction with the attachments identifying relevant documents and persons with relevant information. Rule 33(d) provides that the party served with the interrogatory may direct the serving party to review specific records "if the burden of deriving or ascertaining the answer will be substantially the same for either party." Fed. R. Civ. P. 33(d). Doing so in the instant circumstances seems entirely reasonable to the Court and Defendants do not assert that the burden of reviewing these records is disproportionate.

Turning to the Bureau's assertion that Defendants' interrogatories are premature contention interrogatories, the Court notes that Defendants do not dispute the characterization of their interrogatories as "contention interrogatories." Thus, Defendants, as the serving party, bear the burden of showing that their interrogatories are "limited, specifically crafted questions seeking responses that would 'contribute meaningfully to clarifying the issues in the case, narrowing the scope of the dispute, or setting up early settlement discussions, or that such answers are likely to expose a substantial basis for a motion under Rule 11 or Rule

7

56.'" *Brassell v. Turner*, No. 3:05-cv-476-LS, 2006 WL 1806465, at *3 (S.D. Miss. June 29, 2006) (quoting *Convergent Tech. Sec. Litig.*, 108 F.R.D. 328, 338 (N.D. Cal. 1985)). Indeed, "courts are reluctant to require a party to 'write basically a portion of their trial' for the other parties." Ian D. Johnston and Robert G. Johnston, *Contention Interrogatories in Federal Court*, 148 F.R.D. 441, 444 (July 1993) (quoting *Roberts v. Helm*, 130 F.R.D. 424, 427 (N.D. Cal. 1989)). Given the sheer number of contention interrogatories propounded by Defendants, the manner in which they track most of the significant allegations made in the Bureau's Complaint, and the asserted inadequacy of the Bureau's responses, the Court cannot find that Defendants' interrogatories are limited, specifically crafted questions that seek to narrow the scope of the dispute. Rather, the additional detail Defendants seek strikes the Court as an attempt to make the Bureau "try [its] case in the context of a response to interrogatories." *United States v. The Louisiana Clinic*, No. Civ. A. 99-1767, 2003 WL 21283944, at *6 (E.D. La. June 4, 2003); *see also United States v. Davita, Inc.*, No. 1:05-CV-227, 2011 WL 13077087, at *3 (E.D. Tex. Nov. 28, 2011). The Court will not require the Bureau to write more detailed responses to Defendants' interrogatories.

However, upon review of the attachments submitted with the Bureau's interrogatory responses, the Court agrees with Defendants that the attachments identifying individuals with relevant information – Attachments A, J, and K – should specify which individuals possess knowledge with respect to each allegation referenced in Interrogatories Nos. 2-6, 9, 13-18, and 20-24. These three attachments

8

list fifty-nine individuals and are each referenced in response to many of the seventeen interrogatories at issue, but there is no further indication as to which individuals possess what information. The Bureau should supplement its interrogatory responses with updated attachments that provide this specificity.

Finally, to the extent that Defendants seek to compel the Bureau to produce a more-detailed privilege log – and it is not clear whether Defendants do, *see* (ECF No. 80, at 2) – that request will be denied. Defendants have not provided the Court with a copy of the referenced privilege log or any argument describing its purported deficiencies. The Court, therefore, has no basis on which to assess the adequacy of this privilege log.

### III. CONCLUSION

The Bureau is required to supplement its responses to Interrogatories Nos. 2-6, 9, 13-18, and 20-24 by updating Attachments A, J, and K to indicate which individuals possess information relevant to which interrogatories. Defendants' requests to compel additional supplementation are denied.

Accordingly, **IT IS HEREBY ORDERED** Defendants' First Motion to Compel Interrogatory Responses (ECF No. 79) is **GRANTED IN PART and DENIED IN PART**. To the extent that Defendants seek further clarification regarding the relevant subject matter to which individuals in Attachments A, J, and K can attest, the Motion is **GRANTED**. The Bureau shall provide Defendants with supplementation specifying which individuals in Attachments A, J, and K possess knowledge with respect to each allegation referenced in Interrogatories Nos. 2-6, 9,

9

13-18, and 20-24. The Bureau's deadline to complete this supplementation is May 23, 2017. The Motion (ECF No.79) is otherwise **DENIED**.

**SO ORDERED AND ADJUDGED**, this the 9th day of May, 2017.

/s/ *John C. Gargiulo*
JOHN C. GARGIULO
UNITED STATES MAGISTRATE JUDGE