# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF MISSISSIPPI
## NORTHERN DIVISION

**CONSUMER FINANCIAL PROTECTION BUREAU**         **PLAINTIFF**

**VS.**         **CIVIL ACTION NO. 3:16-cv-00356-WHB-JCG**

**ALL AMERICAN CHECK CASHING, INC.;**
**MID-STATE FINANCE, INC.; and**
**MICHAEL E. GRAY, individually**         **DEFENDANTS**

---

## MEMORANDUM BRIEF SUPPORTING
## PLAINTIFF'S THIRD MOTION TO COMPEL DISCOVERY RESPONSES

---

Plaintiff, Consumer Financial Protection Bureau ("Bureau" or "Plaintiff"), hereby moves the Court, pursuant to Federal Rule of Civil Procedure 37, for an Order compelling production of documents and responses to interrogatories from Defendant All American Check Cashing, Inc. ("AACC"). Specifically, the Bureau requests that the Court order AACC to provide responses to six Interrogatories (Interrogatories 1, 4-6, 8-9) and nine Requests for Production of Documents (Requests 8-15, 18). The Bureau also requests the Court order AACC to provide all documents in the format required by the Court's March 16, 2017 Order granting the Bureau's First and Second Motions to Compel Discovery Responses. *See* ECF No. 92 ("March 16 Order").

## BACKGROUND

On July 26, 2016, the Bureau served its First Requests for Production of Documents, which consisted of fourteen requests. *See* Bureau's Mem. Brief Supporting Second Motion to Compel Discovery Responses, ECF No. 59, p. 2. On October 7, 2016, the Bureau served its Second Requests for Production of Documents, which consisted of two additional requests. *See id.*, p. 3. AACC asserted a number of unfounded objections to these Requests and did not produce all responsive, non-privileged documents in its

possession. On October 18, 2016, the Bureau served its First Set of Interrogatories, which consisted of eighteen interrogatories. *See id.*, p. 4. AACC asserted a number of unfounded objections to the interrogatories and failed to respond fully.

The Bureau filed its First Motion to Compel Discovery Responses on November 21, 2016, ECF No. 50, concerning several issues with the responses to the Bureau's First Requests for Production. The Bureau filed its Second Motion to Compel Discovery Responses on January 3, 2017, ECF No. 58, concerning additional issues with the responses to the Bureau's First Requests for Production, Second Requests for Production, and First Set of Interrogatories. On March 16, 2017, the Court entered an Order granting the Bureau's First and Second Motions to Compel. *See* ECF No. 92.

Meanwhile, on March 3, 2017, the Bureau served its Second Set of Interrogatories and its Third Requests for Production of Documents, which consisted of nine interrogatories and nineteen requests for production of documents, respectively. *See* Mintz Decl., Ex. D (Bureau's Second Set of Interrogatories); Ex. E (Bureau's Third Requests for Production of Documents). These discovery requests are the subject of the instant motion.

On April 5, 2017, AACC's counsel provided the Bureau with a "first pass" of AACC's responses to the Bureau's Second Set of Interrogatories and Third Requests for Production. *See* Mintz Decl., Ex. F (4/5/17 Email from P. Baskind). This "first pass" consisted of AACC's initial objections to each of the Bureau's requests and statements indicating whether AACC intended to respond to a particular request or wanted to further confer, as well as initial responses to the Bureau's interrogatories. *Id.* AACC produced no documents with their "first pass."

On April 7, 2017, the parties met and conferred on a number of issues relating to AACC's "first pass." *See* Mintz Decl., Ex. G (4/7/17 Email from E. Mintz). During the meet-and-confer, the Bureau narrowed the scope of certain document requests in response to AACC's objections, and clarified others in response to AACC's questions. *Id.* On April 17, 2017, AACC provided responses to thirteen of the requests for production and six of the interrogatories. *See* Mintz Decl., Ex. H (Responses to Bureau's Second Set of Interrogatories); Ex. I (Responses to Bureau's Third Requests for Production).[1] As set forth in detail below, however, in their April 17, 2017 response and production, AACC ignored the Bureau's earlier attempts at compromise and efforts to clarify, and in many instances did not produce any responsive document whatsoever.

On April 27, 2017, the Bureau contacted AACC to meet-and-confer again regarding the deficient responses. *See* Mintz Decl., Ex. J (4/27/17 Email from E. Mintz). The parties scheduled a meet-and-confer for May 2, 2017, but AACC's counsel cancelled on the day of the scheduled meeting. *See* Mintz Decl., Ex. K (5/2/17 Email Thread between E. Mintz and P. Baskind). During a meet-and-confer on May 8, 2017, the first available date for AACC's counsel, the Bureau raised numerous concerns about the responses, most of which the Bureau had previously raised during the April 7, 2017 meet-and-confer. *See* Mintz Decl., Ex. L (5/9/17 Letter from E. Mintz). Although AACC asserts that it intends to supplement some responses at some point in the future, as of the date of this filing, AACC has not done so.

---

[1] AACC failed to Bates stamp the documents they produced, despite earlier representations that they would do so.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 26, information is discoverable if it is "relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed.R.Civ.P. 26(b)(1). A party may move for an order compelling a response when another party fails to produce documents requested under Rule 34 or respond to interrogatories sent under Rule 33. *See* Fed.R.Civ.P. 37(a)(3)(B). The party seeking to compel discovery does not bear "the burden of addressing all proportionality considerations." Fed.R.Civ.P. 26(b)(1) (2015 Amendments, Advisory Committee Notes). The "party claiming undue burden or expense ordinarily has far better information -- perhaps the only information -- with respect to that part of the determination." *Id.*

Parties objecting to discovery must state the grounds with specificity. *See* Fed.R.Civ.P. 33(b)(4), 34(b)(2)(B). "General objections to discovery, without more, do not satisfy the burden of the responding party... because they cannot be applied with sufficient specificity to enable courts to evaluate their merits." *Hager v. Graham*, 267 F.R.D. 486, 492 (N.D. W.Va. 2010). *See also Exobox Techs. Corp. v. Tsambis*, No. 2:14-CV-501-RFB-VCF, 2014 WL 4987903, at *3 (D. Nev. Oct. 7, 2014) ("Boilerplate, generalized objections are inadequate and tantamount to making no objection at all."); *McCall v. Lockheed Martin Corp.*, No. 4:04-cv-122-LS, 2006 WL 1686566, at *1 (S.D. Miss. June 19, 2006) ("In this District, the prohibition against general objections has been long established."). As a result, simply stating that a request is "overly broad,

burdensome, oppressive and irrelevant" is not an adequate objection. *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990) (citation and quotation marks omitted).

## ARGUMENT

**A.** <u>**Bureau's Second Set of Interrogatories**</u>

**1. Interrogatory 1**

**Interrogatory 1:** List in detail all information that an employee enters into eCash when cashing a check. If an employee selects information from multiple options, list all possible options. If there have been changes since July 21, 2011, describe the changes.

**Objection:** Defendants object to this Interrogatory on the grounds that the information sought is not relevant to any claim or defense, and is therefore not discoverable under Fed. R. Civ. P. 26(b). The Request, as stated, is vague and inexact in specifying the information sought. The Request also fails to specify any time periods; All American will, therefore, provide the most current information.

**Response:** Without waiving the foregoing, All American states: The Information requested can be found in the eCash Training Guide. See documents, designated as responsive to this Interrogatory.

**Reasons Supporting the Bureau's Motion to Compel:**

In Interrogatory 1, the Bureau seeks information that AACC employees enter into eCash, the software and database system that AACC uses to conduct check-cashing transactions. This information is relevant to the Bureau's allegation that, even though AACC employees know the fees associated with cashing a check, AACC prohibited employees from telling consumers the fee structure (e.g. 3% or 5%), the applicable fee percentage (e.g. 3%), or the dollar amount of the fee. *See* Bureau's Complaint, ECF No. 1 ("Compl."), ¶¶ 12-13. The information that an employee enters into eCash is relevant not only to AACC's procedure for cashing checks, but also to what AACC employees may know, and when, about the fee.

In response to Interrogatory 1, AACC produced an eCash Training Guide, which shows what employees enter into eCash. AACC represents, however, that the Guide reflects the information that employees are *currently* required to input into eCash, and claims that it need not produce prior information because Interrogatory 1 "fails to specify any time periods." Mintz Decl., Ex. H (Resp. to Interrogatories), p. 1. This is false. Both Interrogatory 1 and Instruction H provide a specific relevant time period: July 21, 2011 to the present. *See* Mintz Decl., Ex. D (Bur. Interrogatories), pp. 2, 6. In the April 7, 2017 meet-and-confer, the Bureau specifically highlighted the relevant time period, *see* Mintz Decl., Ex. G (4/7/17 Email), p. 2, but AACC still asserted this objection in its April 17, 2017 responses. The Bureau requests the Court require AACC to supplement its resp0nse with information from July 21, 2011 to the present.

## 2. Interrogatory 4

**Interrogatory 4:** Identify all of Defendants' employees or former employees involved in making agreements with other Persons on behalf of Defendants that resulted in Defendants charging a different fee for cashing a consumer's check than the Check Cashing Fee Structure.

**Objection:** Defendants object to this Interrogatory on the grounds that the information sought is not relevant to any claim or defense, and is therefore not discoverable under Fed. R. Civ. P. 26(b). Defendants object to the CFPB's demand for information regarding a time period outside the applicable statute of limitations, which Defendants believe to be May 11, 2013, three years before the date the Complaint was filed. The Request, as stated, is unclear as to the information sought.

**Response:** The only employee who may have made any such agreements is Michael E. Gray.

## Reasons Supporting the Bureau's Motion to Compel:

In Interrogatory 4, the Bureau seeks the names of employees or former employees involved in making agreements between Defendants and other entities that resulted in Defendants charging a different check cashing fee than its typical fees, which are 3% or 5% of the amount of the check in Mississippi and Alabama, with a $5

minimum, and 2% or 5% of the amount of the check in Louisiana, with a $5 minimum. *See* Compl. ¶ 10. Laura Vance, an AACC employee, stated during her deposition that agreements like this exist. *See* Mintz Decl., Ex. M (Deposition of Laura Vance formerly known as Laura Faulkner), 66:4-67:13; 136:3-137:19.

AACC objects that this information is not relevant, *see* Mintz Decl., Ex. H (Resp. to Interrogatories), p. 3, but that is not true: these agreements, if they exist, may affect what AACC employees knew, and when, about the fee percentage charged for cashing a particular check. *See* Compl. ¶ 12 (Bureau alleges that "[t]o determine the particular fee percentage a consumer will pay, the only information the AACC employee needs to know is whether or not the check is a government check"). Any such agreements are also relevant to whether signs in AACC stores posting check cashing fee percentages are always accurate. *See* Compl. ¶ 21 ("In both Mississippi and Louisiana, AACC is required to display a sign listing the fee percentages that AACC charges to cash checks.").

AACC also objects that the Bureau seeks information "outside the applicable statute of limitations, which Defendants believe to be May 11, 2013, three years before the date the Complaint was filed," Mintz Decl., Ex. H (Resp. to Interrogatories), p. 3, despite the fact that the Court *overruled this very objection* in its March 16 Order, *see* ECF No. 92, pp. 10-13. Even if AACC's statute-of-limitations position were correct, which it is not, statutes of limitations are not decisive cut-offs for discovery. *See id.* at pp. 11-12. In addition, the Bureau's Complaint includes conduct dating back to 2011. *See id.* at p. 12. AACC has no basis to continue to assert this meritless objection.

AACC then responds to Interrogatory 4 by stating that "[t]he only employee who **may** have made any such agreements is Michael E. Gray." Mintz Decl., Ex. H (Resp. to Interrogatories), p. 3 (emphasis added). This response is insufficient: it is vague and

ambiguous, and does not specifically address whether or not Mr. Gray actually did make any such agreements. The Bureau raised this issue during the April 7, 2017 meet-and-confer, *see* Mintz Decl., Ex. G (4/7/17 Email), p. 2, but AACC has not updated their responses, despite their representation that they would look into this matter further. *Id.* The Bureau requests that the Court require AACC to state definitively whether or not Michael E. Gray ("Mr. Gray") actually made any such agreements – not just whether he may have – from July 21, 2011 to present.

### 3. Interrogatory 5

**Interrogatory 5:** Identify all Persons with whom Defendants have or ever had an agreement that resulted in Defendants charging a different fee for cashing a consumer's check than the Check Cashing Fee Structure.

**Objection:** Defendants object to this Interrogatory on the grounds that the information sought is not relevant to any claim or defense, and is therefore not discoverable under Fed. R. Civ. P. 26(b). Defendants object to the CFPB's demand for information regarding a time period outside the applicable statute of limitations, which Defendants believe to be May 11, 2013, three years before the date the Complaint was filed. The Request, as stated, is unclear as to the information sought.

**Response:** Without waiving the foregoing, All American states: There have been no such formal agreements made during the applicable statutes of limitations periods. Michael E. Gray may, however, have made some informal agreements with tenants of his owned properties to waive some or all of fees for check cashing.

**Reasons Supporting the Bureau's Motion to Compel:**

Interrogatory 5 seeks information about persons with whom Defendants made the agreements that are also the subject of Interrogatory 4. The requested information is relevant for the same reasons as Interrogatory 4, p. 7, *supra.* As with Interrogatory 4, AACC refuses to provide a definite answer, stating only that Michael E. Gray **may** have made such agreements. *See* Mintz Decl., Ex. H (Resp. to Interrogatories), p. 4. AACC states that the agreements were "informal" – but this misses the point. Regardless of whether the agreements were formal or informal, if they impacted the fees charged then

they are responsive to this request. Finally, AACC again asserts the statute-of-limitations objection that the Court expressly rejected in its March 16 Order, ECF No. 92. The Bureau requests that the Court require AACC to identify any persons with whom Defendants entered into an agreement, formal or informal, affecting the fees Defendants charged to cash checks, from July 21, 2011 to present.

### 4. Interrogatory 6

**Interrogatory 6:** Describe the content of all agreements with the Persons identified by Defendants in response to the Bureau's Interrogatory 5, *supra*, that resulted in Defendants charging a different fee for cashing a consumer's check than the Check Cashing Fee Structure.

**Objection:** The Request, as stated, seeks a description of the contents of documents. Those documents speak for themselves.

**Reasons Supporting the Bureau's Motion to Compel:**

Interrogatory 6 seeks the content of the same agreements that are the subject of Interrogatories 4 and 5. AACC objects that the Bureau seeks "a description of the contents of documents" and that "[t]hose documents speak for themselves," but AACC has not produced any documents for the Bureau to review. *See* Mintz Decl., Ex. H (Resp. to Interrogatories), p. 4. While AACC may produce documents in response to an interrogatory in certain circumstances, *see* Fed.R.Civ.P. 33(d), AACC has not produced any documents here. AACC's response is insufficient, and the Bureau requests that the Court order AACC to respond to this request either by describing the content of the relevant agreements or producing the agreements themselves.

### 5. Interrogatory 8

**Interrogatory 8:** Specify the journal entries in Defendants' General Ledger showing the debits and corresponding credits associated with Zeroing-Out[2] the

---

[2] "Zero Out" is defined as "to reduce the amount of money in an account to zero." Mintz Decl., Ex. D (Bur. Interrogatories), Definition T, p. 6.

Credit Balances[3] in consumers' accounts from July 21, 2011 to December 31, 2015.

**Objection:** The Request is unclear as stated. The Interrogatory states, "zeroing-out the credit balances." The CFPB fails to consider that paying a refund zeros out a credit. The Interrogatory is overly broad and unduly burdensome. If the CFPB is asking All American to trace each refund transaction from eCash to the General Ledger, an extension of time would have to be provided. General ledgers have been provided. Between July 21, 2011 and December 31, 2015, All American "zeroed out" <u>exactly</u> 6,568 transactions. If one assumes time spent at 6-8 minutes per transaction, it would require 36 full days to complete. The CFPB should narrow its Request, such that the information can be provided. (emphasis in original)

**Reasons Supporting the Bureau's Motion to Compel:**

The Bureau alleges that AACC did not refund overpayments made by consumers and instead deleted credit balances from consumers' accounts. *See* Compl. ¶¶ 55-56. In Interrogatory 8, the Bureau seeks to identify specific transactions where AACC owed consumers money and zeroed-out that credit in the consumers' account. In their response, AACC states that it "'zeroed out'" exactly 6,568 transactions between July 21, 2011 and December 31, 2015 and claims that specifying the corresponding General Ledger entries would take 6-8 minutes per transaction, or 36 full days, to complete. *See* Mintz Decl., Ex. H (Resp. to Interrogatories), pp. 5-6. AACC requested that the Bureau narrow its request, but did not explain why it would take 6-8 minutes to identify each transaction, particularly since AACC already appears to know the 6,568 transactions at issue. *Id.*

Even though AACC refused to provide any detail about its burden claim, the Bureau offered to narrow Interrogatory 8. Specifically, on May 9, 2017, the Bureau narrowed Interrogatory 8 to request only the following:

---

[3] "Credit Balance" is defined as "the amount of funds that are owed to a consumer by Defendants." Mintz Decl., Ex. D (Bur. Interrogatories), Definition H, p. 3.

Specify the General Ledger debits and corresponding credits resulting in the following refunds, including any original date of overpayment and of zeroing-out of a credit balance arising in a consumer's account prior to dates listed below:

1. Refunds issued on and between March 3-17, 2014
2. Refunds issued on and between March 5-19, 2015
3. Refunds issued on and between May 14-28, 2015
4. Refunds processed with a "Trans Date" between January 23, 2015 and February 5, 2015, according to the "Refunds Paid June 2009 May 2015" tab On CFPB00056557, produced to Defendants on April 11, 2017 and attached as Exhibit B.

Mintz Decl., Ex. L (5/9/17 Letter), p. 3. AACC has not responded to the Bureau's offer to narrow Interrogatory 8. Because AACC has failed to provide any detailed explanation of burden, and failed to engage in any good-faith compromise to limit the scope of the purported burden, the Bureau requests that the Court order AACC to respond to Interrogatory 8 in its original form. Alternatively, the Bureau requests that the Court order AACC respond to Interrogatory 8 as narrowed on May 9, 2017.

## 6. Interrogatory 9

**Interrogatory 9:** Please provide the following information, in a separate list for each year, from January 1, 2008 to December 31, 2015, for each Overpayment, Credit Balance, Refund, and Zeroing-Out of a Credit Balance[4] arising in a consumer's account, including all transactions marked with a notation containing "Offset Cleanup" or "Home Office" or any variation thereof:

i. Customer first and last name
ii. Customer contract number
iii. Amount of Overpayment
iv. Method of Refund (check, credit, cash)
v. Refund check number
vi. Whether a Refund was provided
vii. Overpayment date
viii. Refund date
ix. Amount of Refund
x. Notes from eCash
xi. Whether the Credit Balance was Zeroed-Out on October 9, 2011
xii. Whether Credit Balance was matched with a returned check in QuickBooks that had not been entered into eCash

---

[4] The Bureau defines Overpayment, Credit Balance, Refund, and Zero Out in its Interrogatories. *See* Mintz Decl., Ex. D (Bur. Interrogatories), Definitions P, H, R, and T, pp. 3 & 6.

xiii.   Whether the Credit Balance or Refund had a notation containing the phrase "Home Office"

**Objection:** The Interrogatory is overly broad and unduly burdensome. To produce the requested information would be a long, laborious process. Letter x, for instance, asks for eCash notes. To fill that Request, as stated, 6500 customer accounts would need to be examined to print responsive notes. That subpart alone could take weeks to address. The Interrogatory is also vague and inexact in that, for instance, the CFPB fails to specify what it means by "zero-ed out." If responsive information is to be provided, the CFPB should narrow the Interrogatory. Moreover, the CFPB already possesses much of the information requested. To that extent, the Interrogatory is cumulative. Defendants also object to the CFPB's demand for information for a time period outside the applicable statute of limitations, which Defendants believe to be May 11, 2013, three years before the date the Complaint was filed.

**Reasons Supporting the Bureau's Motion to Compel:**

In Interrogatory 9, as in Interrogatory 8, the Bureau seeks to identify specific transactions where AACC owed consumers money but zeroed-out the credit balance in the consumers' account instead of refunding the overpayment. AACC responds that the Interrogatory is overly broad and unduly burdensome and also asserts statute-of-limitations objections the court has already rejected. *See* Mintz Decl., Ex. H (Resp. to Interrogatories), p. 7. In the meet-and-confer on May 8, 2017, the Bureau stated that the interrogatory calls for a synthesis of previously existing information and that AACC should be able to respond without great burden. *See* Mintz Decl., Ex. L (5/9/17 Letter), p. 3. The Bureau offered to discuss the matter further with Jeremy Hoskinson, AACC's Director of Finance and the employee charged with responding to this request. *Id.* AACC has not responded to the Bureau's proposal. Nor has AACC provided any additional detail that would allow the Bureau to evaluate its claim of burden. As a result, the Bureau requests that the Court order AACC to respond to Interrogatory 9. Alternatively, the Bureau requests that the Court order AACC to provide Bureau staff with access to

AACC's transactional and financial records and databases so the Bureau can locate the requested information itself.

**B. Bureau's Third Set of Requests for Production of Documents**

**1. Requests for Production 8 & 9**

**Request 8:** Any agreement, memorialization, communication, or any other record concerning any agreement between Defendants and any other Person that resulted in Defendants charging a different fee for cashing a consumer's check than the Check Cashing Fee Structure.

**Objection:** Defendants object to this Request on the grounds that the information sought is not relevant to any claim or defense, and is therefore not discoverable under Fed. R. Civ. P. 26(b). Defendants also object to the CFPB's demand for information regarding a time period outside the applicable statute of limitations, which Defendants believe to be May 11, 2013, three years before the date the Complaint was filed.

**Response:** Without waiving the foregoing, All American states: None.

**Request 9:** All Materials concerning any agreement between Defendants and any other Person that resulted in Defendants charging a different fee for cashing a consumer's check than the Check Cashing Fee Structure.

**Objection:** The Request is, for all intents and purposes, the same Request as Request No. 8. All relevant objections to that Request apply here.

**Response:** Without waiving the foregoing, All American states: None.

**Reasons Supporting the Bureau's Motion to Compel:**

Like Interrogatories 4-6, Requests for Production 8-9 seek information concerning agreements between Defendants and other entities that have resulted in Defendants charging a different check cashing fee than the typical fee. *See* p. 7, *supra* (describing relevance). AACC asserts that it has no responsive documents, but it also asserts the statute-of-limitations objection that the Court overruled in its March 16 Order, *see* ECF No. 92, making it impossible to know whether AACC is in possession of and withholding responsive documents that pre-date May 11, 2013. The Bureau has asked AACC to clarify its response, but AACC has not yet done so. *See* Mintz Decl., Ex. L (5/9/17 Letter), p. 1. The Bureau requests that the Court order AACC to produce

responsive documents dating back to July 21, 2011 or to state that no responsive documents exist from July 21, 2011 to present.

## 2. Request for Production 10

**Request 10:** All Materials supporting the contention that Defendants extended loans to consumers paid monthly in the beginning of a month and then required these consumers to pay back those loans in full in the middle of the month with funds other than from another loan from Defendants.

**Objection:** The Request, as stated, is an attempt to invade the attorney work product doctrine, and to inappropriately gain insight into All American's trial strategy and attorney opinion and impressions. Moreover, the Request also is overly broad in that it imputes the entire breadth of eCash records for every customer that the CFPB alleges participated in the 1st and 3rd program. The Request also requests information regarding activity that is subject of state law, not federal law. The CFPB does not contend that it seeks relief for violation of state regulations. The Request is based upon a false premise. It assumes that all individuals "paid monthly" do not receive any other income during the course of the month. The CFPB should restate its Request.

**AACC produced no responsive documents for Request 10.**

## Reasons Supporting the Bureau's Motion to Compel:

Request for Production 10 seeks documents that support AACC's contention that AACC required consumers paid monthly to pay back their loans in full in the middle of the month, rather than roll them over. The Bureau alleges AACC often had consumers roll over their loans mid-month as part of AACC's 1st and 3rd lending program. *See* Compl. ¶ 43. The "Materials" that the Bureau seeks are:

(1) any and all policies, procedures, training materials, memoranda, and other documents of Defendants, (2) any and all written or recorded statements in Defendants' possession, whether they are sworn or otherwise, from any witness or potential witness, and (3) all unprivileged correspondence and unprivileged documents between Defendants' counsel and any witness, potential witness, or other third party.

Mintz Decl., Ex. E (Bur. Req. for Prod.), p. 7. AACC denies rollovers occurred mid-month, *see* Defendants' Answer ("Ans."), ECF No. 26, ¶ 43, but produced no documents in response to Request for Production 10.

AACC first objects that the request invades the attorney work product doctrine. *See* Mintz Decl., Ex. I (Resp. to Req. for Prod.), p. 5. But the Bureau is neither seeking protected materials nor suggesting that AACC cannot withhold privileged documents. The Bureau seeks only unprivileged documents, statements, and communications in AACC's possession, custody, or control that are responsive to this request. Indeed, the Bureau has already produced similar documents, statements, and communications to AACC in response to Defendants' requests.[5]

AACC also objects that the request is "overly broad in that it imputes the entire breadth of eCash records for every customer that the CFPB alleges participated in the 1st and 3rd program." Mintz Decl., Ex. I (Resp. to Req. for Prod.), p. 5. The Bureau addressed this objection on April 7, 2017 by narrowing the request to exclude any such records: "in response to [Requests for Production 10-11], Defendants do not need to produce all eCash records that allegedly demonstrate that consumers paid back their

---

[5] Examples of such requests include:

**REQUEST FOR PRODUCTION No. 1**: Please produce any written or recorded statements in the CFPB's possession, whether they are sworn or otherwise, from any witness, or potential witness.

**REQUEST FOR PRODUCTION No. 5**: Please produce copies of any written or recorded statements, whether those statements are sworn or otherwise, from any individuals listed in "Attachment A" to the CFPB's Response to Defendants' First Set of Interrogatories.

**REQUEST FOR PRODUCTION No. 9**: Please produce all unprivileged correspondence and unprivileged documents between you and any entity or person concerning any of the events, incidents, conduct or alleged damages which form the basis of any of the claims asserted by you in this lawsuit.

**REQUEST FOR PRODUCTION No. 11**: Please produce copies of any and all emails, text messages, memoranda, or any other written communication between the CFPB and any financial institution, other than All American, regarding any All American accounts or All American business at that financial institution.

**REQUEST FOR PRODUCTION No. 12**: Please produce any and all documents and communications substantiating the CFPB's cause of action for Count I of the Complaint.

Mintz Decl., Ex. N (Defendant' Second Set of Requests for Production of Documents), at pp. 3-5.

loans in full in the middle of the month." Mintz Decl., Ex. G (4/7/17 Email), p. 1. AACC, however, still needs to produce any other responsive documents, but has not done so.

AACC further objects that the request seeks "information regarding activity that is subject of state law, not federal law." Mintz Decl., Ex. I (Resp. to Req. for Prod.), p. 5. The Court should reject this argument. AACC may have violated state law, but state law is not the subject of the Bureau's action, which is premised on federal law. *See* Compl. ¶¶ 48-49; 80-83. Moreover, AACC provides no basis for withholding documents simply because they touch on activity that is governed by both state and federal law.

Finally, AACC states that the request is "based upon a false premise" because "[i]t assumes that all individuals 'paid monthly' do not receive any other income during the course of the month." Mintz Decl., Ex. I (Resp. to Req. for Prod.), p. 6. The Bureau's request does not make any such assumption, however, but merely seeks documents relating to consumers paid monthly. *See id.*, Ex. L (5/9/17 Letter), p. 4.

AACC produced no documents in response to Request 10. AACC's objections have no merit, and the Bureau requests that the Court order AACC to produce responsive documents or, if no responsive documents exist, to so state.

### 3. Request for Production 11

**Request 11:** All Materials supporting the contention that Defendants loaned consumers paid monthly part of their credit limit in the beginning of a month and then required these consumers to pay back that amount in full in the middle of the month with funds other than from another loan from Defendants.

**Objection:** The Request, as stated, is an attempt to invade the attorney work product doctrine, and to inappropriately gain insight into All American's trial strategy and attorney opinion and impressions. Moreover, the Request also is overly broad in that it imputes the entire breadth of eCash records for every customer that the CFPB alleges participated in the 1st and 3rd program. The Request also requests information regarding activity that is subject of state law, not federal law. The CFPB does not contend that it seeks relief for violation of state regulations. The Request is based upon a false premise. It assumes that all

individuals 'paid monthly' do not receive any other income during the course of the month. The CFPB should restate its Request.

**AACC produced no responsive documents for Request 11.**

**Reasons Supporting the Bureau's Motion to Compel:**

Request for Production 11 is identical to Request for Production 10, except that it is focused specifically on situations where Defendants loan consumers paid monthly part of the consumer's credit limit in the beginning of the month. The Bureau alleges this is the initial step in the "1st and 3rd lending" program. *See* Compl. ¶ 45. Defendants claim that they help consumers by loaning them only part of their credit limit in the beginning of the month. *See* Ans. ¶ 49 ("The ability to borrow a portion of the customer's credit limit relieves the customer from the stress and anxiety that may be caused by having to pay the full amount at the end of 30 days after having exhausted their credit limits…. All American attempts to assist [customers who get paid once a month] by offering them the ability to borrow less than All American's competitors would require for a 30 day loan product."). The Bureau seeks any documents supporting AACC's contention that consumers paid monthly are able to pay back loans made for part of their credit limit at beginning of the month by mid-month.

AACC produced no documents in response to Request 11. Instead, AACC asserts identical objections as asserted in response to Request 10. The Court should reject the objections for the same reasons set forth above in connection Request 10. The Bureau requests that the Court order AACC to produce responsive documents and, if no responsive documents exist, to so state.

### 4. Request for Production 12

**Request 12:** All Materials supporting the contention that Defendants' employees voided or cancelled a check cashing transaction promptly upon the request of a consumer.

**Objection:** The Request, as stated, is an attempt to invade the attorney work product doctrine, and to inappropriately gain insight into All American's trial strategy and attorney opinion and impressions. The Request, as stated, requires All American to ascertain the time involved in every check cashing void over the course of its history. All American does not, and cannot, track such information. The request is also vague in that it fails to define "promptly." The CFPB should restate its Request.

**AACC produced no responsive documents for Request 12.**

**Reasons Supporting the Bureau's Motion to Compel:**

The Bureau alleges that AACC makes it difficult or impossible for consumers to cancel a check cashing transaction and that AACC employees falsely told consumers that voiding a transaction took a long time. *See* Compl. ¶¶ 24, 26. AACC denies these allegations, contending that AACC employees do not make false or misleading statements about a consumers' ability to cancel a transaction. *See* Ans. ¶¶ 24, 26, 67. In Request for Production 12, the Bureau seeks any documents supporting the contention that AACC employees void or cancel a check cashing transaction promptly upon a consumer's request. AACC has not produced any documents in response to this request.

AACC first objects based on the attorney work product doctrine. *See* Mintz Decl., Ex. I (Resp. to Req. for Prod.), p. 6. However, as discussed with respect to Request for Production 10, p. 15, *supra*, the Bureau does not seek privileged or protected documents. AACC also objects that it does not track the time involved in every check cashing void and therefore cannot produce that information. *See* Mintz Decl., Ex. I (Resp. to Req. for Prod.), pp. 6-7. But the Bureau has made clear to AACC that the Bureau does not expect AACC to produce documents that do not exist; rather, it expects AACC to produce responsive documents in its possession, custody, or control. *See* Mintz Decl., Ex. L (5/9/17 Letter), p. 4. Finally, AACC objects because the request fails to define "promptly." Mintz Decl., Ex. I (Resp. to Req. for Prod.), p. 7. "Promptly" is not a

word that requires further definition to be understood, however. The Oxford Dictionary defines it as follows, ""[w]ith little or no delay; immediately."[6] The word is regularly used in the context of litigation; for example, it is used, without definition, in at least 16 of the Federal Rules of Civil Procedure. *See* Fed.R.Civ.P. 5, 5.1, 7.1, 11, 26, 30, 31, 32, 45, 51, 53, 58, 65, 65.1, 71.1, and 72.

AACC's objections have no merit, and the Bureau requests that the Court order AACC to produce responsive documents or, if no responsive documents exist, to so state.

## 5. Request for Production 13

**Request 13:** All Materials supporting the contention that Defendants' employees informed a consumer about the amount of the fee or the fee percentage for cashing a check.

**Objection:** The Request, as stated, is an attempt to invade the attorney work product doctrine, and to inappropriately gain insight into All American's trial strategy and attorney opinion and impressions. The Request is also overly broad in that it requires All American to produce every document provided to every customer for which a check was cashed. That is an impossible task. The CFPB should restate its Request.

**Narrowed Request (April 7, 2017):** All Materials supporting the contention that Defendants' employees informed a consumer about the amount of the fee or the fee percentage for cashing a check either by telling the consumer the fee or fee percentage orally or by indicating to the consumer the fee or fee percentage on the check cashing receipt or the sign posted in the store.

**AACC produced no responsive documents for Request 13.**

## Reasons Supporting the Bureau's Motion to Compel:

In Request for Production 13, the Bureau seeks documents supporting AACC's contention that employees told consumers the amount of the fee or the fee percentage for cashing a check. The Bureau alleges that AACC prohibited employees from doing so, Compl. ¶¶ 13-16, which AACC denies, Ans. ¶¶ 13-16.

---

[6] Promptly (adverb), Oxford Dictionary (May 22, 2017), available at https://en.oxforddictionaries.com/definition/promptly.

AACC first objects based on the attorney work product doctrine. *See* Mintz Decl., Ex. I (Resp. to Req. for Prod.), p. 7. However, as discussed with respect to Request for Production 10, p. 15, *supra*, the Bureau does not seek privileged or protected documents. AACC next objects that the request is "overly broad in that it requires All American to produce every document provided to every customer for which a check was cashed." Mintz Decl., Ex. I (Resp. to Req. for Prod.), p. 7. AACC's objection appears to be based on the fact that the check cashing receipt provided to consumers after the transaction includes the amount of the fee and the fee percentage. *See* Ans. ¶ 13. The Bureau addressed this concern when AACC first raised it by narrowing Request 13 to seek only documents "supporting the contention that Defendants' employees informed a consumer about the amount of the fee or the fee percentage for cashing a check *either by telling the consumer the fee or fee percentage orally or by indicating to the consumer the fee or fee percentage on the check cashing receipt or the sign posted in the store*." Mintz Decl., Ex. G (4/7/17 Email) (emphasis added). As a result of the narrowed request, AACC need not produce all check cashing receipts provided to consumers. Although the Bureau narrowed this request on April 7, 2017, AACC ignored these efforts and asserted the same objection in their April 17, 2017 responses as they did on April 5, 2017.

AACC's objections have no merit, and the Bureau requests that the Court order AACC to produce responsive documents or, if no responsive documents exist, to so state.

**6. Request for Production 14**

**Request 14:** All Materials concerning why Defendants' employees must "[c]ount money out over receipt" when cashing a check. *See* Defendants' Answer, ECF. No. 26, Ex. E.

**Objection:** The Request, as stated, is an attempt to invade the attorney work product doctrine, and to inappropriately gain insight into All American's trial

strategy and attorney opinion and impressions. The referenced document, ECF 26, Ex. E, is very specific. It requires "Have the customer sign receipt" before it instructs that money be counted out over the receipt. Thus, by the document's clear instructions, customers have had full opportunity to review the contents of the receipt before the money is counted. Defendants object to this Request on the grounds that the information sought is not relevant to any claim or defense, and is therefore not discoverable under Fed. R. Civ. P. 26(b).

**AACC produced no responsive documents for Request 14.[7]**

**Reasons Supporting the Bureau's Motion to Compel:**

In Request for Production 14, the Bureau seeks documents concerning why AACC employees are required to "[c]ount money out over receipt" when cashing a check. *See* Ans., Ex. E. The Bureau alleges that the purpose of this requirement is to block the consumers' view of the fee, which is stated on the receipt. *See* Compl. ¶ 20. Defendants admit that their "10 Rules of Check Cashing" require employees to count money out over the receipt, *see* Ans., Ex. E, but deny that AACC employees block the customer's view of the fee, *see* Ans. ¶ 20. As a result, the Bureau seeks any documents concerning why AACC employees are required to count money out over the receipt, where the fee is listed. Such a request is relevant to the Bureau's claims that Defendants interfere with consumers' ability to learn the fee for cashing a check. *See* Compl. ¶ 67.

AACC first objects based on the attorney work product doctrine. *See* Mintz Decl., Ex. I (Resp. to Req. for Prod.), p. 7. However, as discussed with respect to Request for Production 10, p. 15, *supra*, the Bureau does not seek privileged or protected documents. AACC next states that the "10 Rules of Check Cashing" – Ex. E to Defendants' Answer – instruct employees to have customers sign the receipt before counting money out over it, and therefore customers can see the receipt before the

---

[7] AACC does not state that it produced any responsive documents, but AACC did provide two additional copies of the "10 Rules of Check Cashing," also attached as Ex. E to Defendants' Answer. These documents instruct employees to count money out over the receipt, but do not say why, and therefore are not responsive to this request.

money is counted. *See* Mintz Decl., Ex. I (Resp. to Req. for Prod.), p. 7. This statement,

however, is not an objection, and does not provide any rationale as to *why* AACC

employees count money out over the receipt, other than to cover the fee.

AACC's objections have no merit, and therefore the Bureau requests that the

Court order AACC to produce responsive documents or, if no responsive documents

exist, to so state.

## 7. Request for Production 15

**Request 15:** All Materials concerning when in the course of a check cashing transaction Defendants' employees stamp a consumer's check with a "For Deposit Only: All American Check Cashing, Inc." stamp. *See* Defendants' Answer, ECF. No. 26, ¶ 27.

**Objection:** The Request misreads the applicable paragraph of the Answer. It states:

> In order to negotiate a check, All American is required to endorse it. All American endorses checks with a stamp that says "For Deposit Only: All American Check Cashing, Inc." **There is no specific policy requiring an employee to immediately apply the stamp with the intent to interfere with a consumer's ability to cash the check elsewhere.** The "For Deposit Only" is a restrictive endorsement pursuant to § 3-206(c) of the Uniform Commercial Code designed to insure the integrity of the value of the check and the parties thereto. A check is a negotiable instrument pursuant Article III of the Uniform Commercial Code, which requires its owner to take reasonable steps to prevent fraudulent negotiations. It is required that the check be endorsed before it can be deposited. Again, the Government attempts to imply malicious action on the part of a business owner attempting to conduct its business in a reasonably prudent way and according to the laws by which it is governed.

(emphasis added). By the plain language of the Paragraph, there is no specific policy. The CFPB should restate its request to better indicate the information it seeks.

**AACC produced no responsive documents for Request 15.**

**Reasons Supporting the Bureau's Motion to Compel:**

In Request for Production 15, the Bureau seeks documents concerning when

AACC employees stamp a consumer's check with a "For Deposit Only: All American

Check Cashing, Inc." stamp. The Bureau alleges that some AACC employees stamp a consumer's check during a check cashing transaction and then, if the consumer becomes upset about the fee later in the transaction, tell the consumer that the consumer cannot cash the check elsewhere. *See* Compl. ¶ 27.

AACC objects to the Bureau's request based on the fact that, in Defendants' Answer, they stated that "[t]here is no specific policy requiring an employee to immediately apply the stamp with the intent to interfere with a consumer's ability to cash the check elsewhere." Ans. ¶ 27. AACC claims that the Bureau should restate its request because no such policy exists. *See* Mintz Decl., Ex. I (Resp. to Req. for Prod.), p. 7. However, as the Bureau explained on April 7, 2017 after AACC initially raised this objection, the Bureau does not seek a policy that does not exist but rather any documents that *do exist* with respect to when a check is stamped. *See* Mintz Decl., Ex. G (4/7/17 Email), p. 1; Ex. L (5/9/17 Letter), p. 4.

AACC's objection has no merit, and therefore the Bureau requests that the Court order AACC to produce responsive documents or, if no responsive documents exist, to so state.

### 8. Request for Production 18

**Request 18:** All documents and information stored in eCash – including but not limited to documents and information stored in the "General," "References," "Call Log," "Pmt Plans," "Appointments," "Correspondence," "Documents," "Notes," "History," and "Referral" sections – concerning the following consumers:
   a. Oliver Block
   b. June Carol Booth

**Objection:** Defendants object to this Request on the grounds that the information sought is not relevant to any claim or defense, and is therefore not discoverable under Fed. R. Civ. P. 26(b). The Request is not limited to any specific time frame. Defendants, therefore, also object to the CFPB's demand for information regarding a time period outside the applicable statute of limitations,

which Defendants believe to be May 11, 2013, three years before the date the Complaint was filed.

**Response:** Without waiving the foregoing, All American states: See documents designated as responsive to this Request.

**Reasons Supporting the Bureau's Motion to Compel:**

In Request for Production 18, the Bureau seeks eCash records for two individuals – Oliver Block and June Carol Booth – whom the Bureau has identified as potential witnesses in its disclosures and responses to AACC's Interrogatories. *See* ECF No. 80-1, p. 70 (Attachment K to Bureau's Responses to AACC's Interrogatories). The Bureau is seeking AACC's records concerning these individuals, as they may be witnesses in the Bureau's case. AACC's records concerning potential witnesses are clearly relevant to the Bureau's claims. AACC produced responsive documents for Oliver Block, but not for June Carol Booth. The Bureau has pointed this out to AACC, but AACC has still not produced responsive documents relating to Ms. Booth. *See* Mintz Decl., Ex. L (5/9/17 Letter), p. 5. The Bureau requests that the Court order AACC to produce responsive documents relating to Ms. Booth.

## C. <u>Format of Documents Produced</u>

The Court's March 16 Order, ECF. No. 92, requires all documents to be produced "in either their native format or – if good reason exists for producing a document in PDF format – in a manner that (1) demarcates between different documents, (2) indicates whether a document is an attachment to an email, (3) is searchable, and (4) includes the important information contained in metadata, such as creation date and author." ECF No. 92, pp. 15-16. Although many of the documents produced by AACC are in native format, AACC's response to Request for Production 6 violates the Court's March 16 Order. In response to this request, AACC produced a single non-searchable PDF

consisting of multiple emails and attachments, without demarcating between different documents, without indicating whether a document is an attachment to an email, and without including metadata for the emails or attachments. Like the rest of the production, this PDF does not have Bates numbers.

The Bureau requests that the Court order AACC to comply with the March 16 Order and produce documents in the format required therein.

## CONCLUSION

For the reasons set forth above, the Bureau respectfully requests that the Court issue an Order that AACC (1) fully respond to the Bureau's Interrogatories 1, 4-6, and 8-9 from the Bureau's Second Set of Interrogatories; (2) provide all non-privileged documents responsive to Requests 8-15 and 18 from the Bureau's Third Requests for Production of Documents; and (3) provide all documents in the format required by the Court's March 16 Order.

Dated: May 23, 2017

Respectfully submitted,
CONSUMER FINANCIAL PROTECTION BUREAU

ANTHONY ALEXIS
Enforcement Director

CARA PETERSEN
Deputy Enforcement Director for Litigation

R. GABRIEL D. O'MALLEY
Assistant Litigation Deputy

  s/Emily Mintz_____
EMILY MINTZ (VA Bar No. 82437)
Phone: (202) 435-9424
E-mail: emily.mintz@cfpb.gov
MICHAEL FAVRETTO (NY Bar No. 4508727)
Phone: (202) 435-7785
E-mail: michael.favretto@cfpb.gov
STEPHANIE BRENOWITZ (NY Bar No. 4317418)
Phone: (202) 435-9005

E-mail: stephanie.brenowitz@cfpb.gov
Enforcement Attorneys
Consumer Financial Protection Bureau
1700 G Street NW
Washington, DC 20552
Facsimile: (202) 435-7722

HAROLD BRITTAIN
Acting United States Attorney
Southern District of Mississippi

MITZI DEASE PAIGE (MS Bar No. 6014)
Assistant United States Attorney
Chief, Civil Division
Southern District of Mississippi
501 E. Court Street, Suite 4.430
Jackson, MS 39201
Phone: (601) 965-4480
Direct: (601) 973-2840
Facsimile: (601) 965-4409
E-mail: mitzi.paige@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on May 23, 2017, I electronically filed the foregoing with the Clerk of the Court using the ECF system, which sent notification of such filing to all counsel of record.

 s/Emily Mintz
EMILY MINTZ (VA Bar No. 82437)
Phone: (202) 435-9424
E-mail: emily.mintz@cfpb.gov
Enforcement Attorney
Consumer Financial Protection Bureau
1700 G Street NW
Washington, DC 20552
Facsimile: (202) 435-7722