**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**Northern Division**

CONSUMER FINANCIAL PROTECTION BUREAU,

Plaintiff,

Case No. 3:16-cv-356-WHB-JCG

v.

ALL AMERICAN CHECK CASHING, INC.;
MID-STATE FINANCE, INC.; and
MICHAEL E. GRAY, individually,

ORAL ARGUMENT REQUESTED

Defendants.

# DEFENDANTS' REBUTTAL MEMORANDUM IN FURTHER SUPPORT OF THEIR MOTION FOR A JUDGMENT ON THE PLEADINGS

Theodore B. Olson, *pro hac vice* (DC 367456)
Helgi C. Walker, *pro hac vice* (DC 454300)
Joshua S. Lipshutz, *pro hac vice* (DC 1033391)
Lochlan F. Shelfer, *pro hac vice* (DC 1029799)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
Telephone: (202) 955-8500
Facsimile: (202) 530-9575
Email: tolson@gibsondunn.com
hwalker@gibsondunn.com
jlipshutz@gibsondunn.com
lshelfer@gibsondunn.com

Robin H. Rasmussen (MSB 104729)
Peter D. Baskind, *pro hac vice* (TN 019962)
DINKELSPIEL RASMUSSEN & MINK, PLLC
1669 Kirby Parkway, Suite 106
Memphis, TN 38120
Telephone: (901) 754-7770
Facsimile: (901) 756-7772
Email: rrasmussen@drmlawmemphis.com

Dale Danks, Jr. (MS 5789)
DANKS, MILLER & CORY
213 S. Lamar Street
P.O. Box 1759
Jackson, MS 39215-1759
Telephone: (601) 957-3101
Facsimile: (601) 957-3160
Email: ddanks@dmc-law.net

Bentley E. Conner (MS 6465)
164 E. Center Street
P.O. Box 563
Canton, MS 39046
Telephone: (601) 859-6306
Facsimile: (601) 589-6307
Email: bentleyeconner@gmail.com

## TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................ 1

ARGUMENT ............................................................................................................. 1

I. This Court Should Rule On All American's Motion Now. ......................................... 1

II. The CFPB's Unprecedented Structure Is Unconstitutional. ...................................... 4

III. This Enforcement Action Violates Due Process Because All American Lacked Fair Notice Of What Conduct Was Prohibited. ........................................................ 7

IV. The CFPA's Vast And Amorphous Grant Of Power To The CFPB Violates The Non-Delegation Doctrine. .............................................................................. 8

V. The CFPB's Interpretation Of Section 5536 Violates Principles Of Federalism. ............ 10

CONCLUSION ........................................................................................................ 11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.L.A. Schechter Poultry Corp. v. United States*,
295 U.S. 495 (1935).....8

*Am. Power & Light Co. v. SEC*,
329 U.S. 90 (1946).....9

*Ashwander v. TVA*,
297 U.S. 288 (1936).....2

*Ass'n of Am. R.Rs. v. U.S. Dep't of Transp.*,
721 F.3d 666 (D.C. Cir. 2013).....7

*Austin v. Ala. Check Cashers Ass'n*,
936 So. 2d 1014 (Ala. 2005).....10

*Beler v. Blatt*,
480 F.3d 470 (7th Cir. 2007).....10

*Bentrud v. Bowman, Heintz, Boscia & Vician, P.C.*,
794 F.3d 871 (7th Cir. 2015).....10

*Bond v. United States*,
134 S. Ct. 2077 (2014).....10

*Castro v. Collecto, Inc.*,
634 F.3d 779 (5th Cir. 2011).....10

*Christopher v. SmithKline Beecham Corp.*,
567 U.S. 142 (2012).....8

*Diamond Roofing Co., Inc. v. OSHRC*,
528 F.2d 645 (5th Cir. 1979).....8

*Employer Sols. v. Office of Chief Admin.*,
833 F.3d 480 (5th Cir. 2016).....7

*FCC v. Fox Television Studios*,
567 U.S. 239 (2012).....7

*FEC v. NRA Political Victory Fund*,
6 F.3d 821 (D.C. Cir. 1993).....3

*FEC v. NRA Political Victory Fund*,
513 U.S. 88 (1994)....................................................................................................4

*Free Enter. Fund v. PCAOB*,
561 U.S. 495 (2010)...................................................................................4, 5, 6, 7

*Gregory v. Ashcroft*,
501 U.S. 452 (1991)..................................................................................................10

*Hale v. King*,
642 F.3d 492 (5th Cir. 2011) .......................................................................................2

*Humphrey's Executor v. United States*,
295 U.S. 602 (1935)....................................................................................................4

*Indus. Union Dept, AFL-CIO v. Am. Petroleum Inst.*,
448 U.S. 607 (1980)....................................................................................................9

*John Doe Co. v. CFPB*,
849 F.3d 1129 (D.C. Cir. 2017)...................................................................................3

*Marquez v. Weinstein, Pinson & Riley*,
836 F.3d 808 (7th Cir. 2016) .....................................................................................10

*McCutcheon v. FEC*,
134 S. Ct. 1434 (2014).................................................................................................2

*Morrison v. Olson*,
487 U.S. 654 (1988)...............................................................................................4, 6

*NLRB v. Noel Canning*,
134 S. Ct. 2550 (2014).................................................................................................6

*Pasiewicz v. Lake Cty. Forest Pres. Dist.*,
270 F.3d 520 (7th Cir. 2001) .....................................................................................10

*PHH Corp. v. CFPB*,
839 F.3d 1 (D.C. Cir. 2016)..................................................................1, 3, 4, 6, 8

*Porrazzo v. Bumble Bee Foods, LLC*,
822 F. Supp. 2d 406 (S.D.N.Y. 2011)..........................................................................3

*Resolution Trust Corp. v. Scott*,
887 F. Supp. 937 (S.D. Miss. 1995).............................................................................3

*Ryder v. United States*,
515 U.S. 177 (1995)....................................................................................................4

*Sheid v. U.S. Marshal Serv.*,
379 F. App'x 345 (5th Cir. 2010) ........................................................................3

*Stern v. Marshall*,
564 U.S. 462 (2011).........................................................................................5

*Touby v. United States*,
500 U.S. 160 (1991).........................................................................................9

*United States v. Petrillo*,
332 U.S. 1 (1947).............................................................................................2

*Whitman v. Am. Trucking Ass'ns*,
531 U.S. 457 (2001).........................................................................................9

*Yakus v. United States*,
321 U.S. 414 (1944).........................................................................................9

**Statutes**

12 U.S.C. § 5481(12) ...........................................................................................5

12 U.S.C. § 5531(c) .............................................................................................9

12 U.S.C. § 5531(d) .............................................................................................9

12 U.S.C. § 5565(a)(2)..........................................................................................6

12 U.S.C. § 5581...................................................................................................5

**Other Authorities**

1 Annals of Cong. (1789)......................................................................................4

*In re Wells Fargo Bank, N.A.*,
2016-CFPB-15 (Sept. 4, 2016) ............................................................................6

## INTRODUCTION

The constitutionality of the CFPB is being litigated around the nation because the CFPB's unprecedented combination of vast power and lack of democratic accountability threatens a wide swath of American businesses—including relatively small ones like All American—with arbitrary government action. "Never before has an independent agency exercising substantial executive authority been headed by just one person." *PHH Corp. v. CFPB*, 839 F.3d 1, 6 (D.C. Cir. 2016), *reh'g en banc granted*. The CFPB's "gross departure from settled historical practice," *id.* at 8, results in a single unaccountable Director—rather than a democratically elected President—pursuing whatever agenda he prefers, armed with expansive and amorphous enforcement powers under nineteen federal statutes and nearly unlimited funds to wield against regulated entities, without fear of reprisal or removal from office.

This enforcement action is a prime example of the agency's overreach: The CFPB alleges, *inter alia*, that Defendants have "*subverted* certain state law disclosure requirements" even though "the Bureau does not allege that Defendants *violated* these requirements." Opp. 29. In other words, the CFPB has decided it simply doesn't like All American's business practices, even if those practices comply with state law. And no matter how many of these standardless enforcement actions the Director brings based on his personal predilections, he answers to nobody in the Executive Branch. This is not the way our federal government was designed to work. This Court should join the D.C. Circuit panel in declaring the CFPB unconstitutional.

## ARGUMENT

### I. This Court Should Rule On All American's Motion Now.

The CFPB begins by urging this Court to avoid reaching a decision on the agency's constitutionality. But these constitutional issues are ripe for decision now. If the Court agrees

with All American that the CFPB is unconstitutionally structured, then these entire proceedings are void *ab initio* and judgment on the pleadings must be entered in All American's favor.

First, the CFPB presses a bizarre version of the constitutional avoidance doctrine, arguing that this Court should avoid deciding the CFPB's constitutionality because the agency might lose on the merits at trial. That is *not* what the constitutional avoidance doctrine is about, and the CFPB cites no authority supporting its distorted view.[1] The constitutional avoidance doctrine provides that "if a case can be decided on either of two grounds, one involving a constitutional question, the other a question of statutory construction *or general law*, the Court will decide only the latter." *Ashwander v. TVA*, 297 U.S. 288, 347 (1936) (Brandeis, J., concurring) (emphasis added). A court need not go to the time and expense of a trial just to avoid ruling on a legal question on the off-chance that the plaintiff might lose at trial. That is why pure questions of constitutional law are routinely decided pre-trial. *See, e.g.*, *United States v. Petrillo*, 332 U.S. 1, 5–6 (1947) (constitutional challenge decided pre-trial because "no refinement or clarification of issues" would bring the question "into better focus"). The CFPB's proposal wastes the parties' and the Court's resources; if the CFPB is unconstitutional, there should be no trial at all. *See* Mem. 14–15.

Moreover, All American has not yet determined whether to file a motion for summary judgment, but if it does not, then there would be no other pre-trial, merits-based grounds for disposing of this case, and therefore nothing preventing this Court from ruling now on the constitutional arguments that defendants' Rule 12(c) motion raises. All American's Rule 12(c) motion is also logically antecedent to any motion for summary judgment that the CFPB might file. Whether the CFPB wins or loses its *own* summary judgment motion, that motion could not provide

[1] *Hale v. King* (Opp. 4) held only that the district court "unnecessarily reached" constitutional issues *sua sponte*, because on remand the plaintiff might fail to "state a claim" on other grounds. 642 F.3d 492, 503 n.39 (5th Cir. 2011) (internal quotation marks omitted).

*Defendants* any relief, and judgment cannot be entered for the CFPB without a determination that these proceedings are the product of a constitutional agency. Judgment should be entered on the basis of the pending Rule 12(c) motion, which is now fully briefed.

Second, the CFPB contends that All American raised "new facts" in its motion, and thus that this Court should avoid ruling on the motion. Opp. 5. But the CFPB mischaracterizes these so-called "new facts." Both the existence of state proceedings and the absence of agency statements are judicially noticeable realities and present no obstacle to resolving the motion. *See Sheid v. U.S. Marshal Serv.*, 379 F. App'x 345, 346 (5th Cir. 2010) (state proceedings); *Porrazzo v. Bumble Bee Foods, LLC*, 822 F. Supp. 2d 406, 411 (S.D.N.Y. 2011) (agency guidance documents); *Resolution Trust Corp. v. Scott*, 887 F. Supp. 937, 940 (S.D. Miss. 1995) (Barbour, C.J.) ("the district court may also take judicial notice of matters of public record" on motion for judgment on the pleadings). And even if this Court were to decline to take judicial notice of these facts, it can grant the motion without relying on them.

Third, the CFPB argues in a footnote that these proceedings should continue even if the agency is unconstitutional. Opp. 5 n.2. That is a startling assertion. And the CFPB does not address any of All American's authorities that dictate "automatic" dismissal here. Mem. 14. The CFPB "lack[ed] authority to bring this enforcement action" in the first place, *FEC v. NRA Political Victory Fund*, 6 F.3d 821, 828 (D.C. Cir. 1993), so only judgment on the pleadings, not prospective severance of the statute's removal limitations, would remedy the constitutional wrong.[2]

[2] *John Doe Co. v. CFPB* is inapposite: It involved a pre-enforcement suit in which there were no proceedings to vacate. 849 F.3d 1129, 1131, 1134 (D.C. Cir. 2017) (holding that petitioner "can raise its constitutional claim" in an enforcement action). And in *PHH*, the court reserved the question whether the CFPB's unconstitutionality invalidates pending enforcement actions because there was no federal court enforcement action to resolve on the pleadings. 839 F.3d at 39 n.19. Nor could the CFPB's structure be remedied in this case. Because a lawfully structured CFPB did not exist when this lawsuit was filed, any "'after-the-fact' authorization does not relate back to the

## II. The CFPB's Unprecedented Structure Is Unconstitutional.

Nothing like the CFPB has ever existed in our Republic. In creating the CFPB, Congress placed vast power and broad jurisdiction over nearly all consumer-financial products or services in the hands of a single, democratically unaccountable Director. *PHH*, 839 F.3d at 17 ("In essence, the Director is the President of Consumer Finance."). Under the Constitution, the President is supposed to have "the power to oversee executive officers through removal," and "'the Legislature has no right to diminish or modify'" this "Presidential oversight." *Free Enter. Fund v. PCAOB*, 561 U.S. 477, 492, 500 (2010) (quoting 1 Annals of Cong. 463 (1789) (Madison)). The Supreme Court has allowed only "limited restrictions" on the President's removal power, and then only "under certain" mitigating "circumstances." *Id.* at 483, 495. The CFPB's structure "depart[s] from settled historical practice," *PHH*, 839 F.3d at 17, has no mitigating traits, and is unconstitutional.

The CFPB asserts that because the Supreme Court approved for-cause restrictions for certain multi-member commissions, *see Humphrey's Executor v. United States*, 295 U.S. 602 (1935), and inferior officers, *see Morrison v. Olson*, 487 U.S. 654 (1988), Congress may insulate the CFPB's Director from removal. But the CFPB fails to offer a single historical example of one "independent" officer wielding the broad regulatory, enforcement, and adjudicative authority that the CFPB Director possesses. Under *Free Enterprise Fund*, the relevant inquiry is whether the Supreme Court has already approved the particular agency's "diffusion of authority" that prevents "the President" from being "held fully accountable" to the people for the actions of the Executive Branch. 561 U.S. at 514. Here, the clear answer is no.

---

date of the [current Bureau's] unauthorized filing" of this lawsuit, so ratification is impossible. *FEC v. NRA Political Victory Fund*, 513 U.S. 88, 99 (1994). Moreover, the *de facto* officer doctrine does not apply because the Supreme Court is "not inclined to extend" those cases "beyond their facts," and there is an exception to the doctrine where, as here, the constitutional objection is brought as a "timely challenge." *Ryder v. United States*, 515 U.S. 177, 182–83, 184 (1995).

Yet the CFPB has all the authority—and more—of a cabinet department. The CFPB fails to identify any limiting principle on its view of Congress's power to structure "independent" agencies, never even attempting to show how its separation-of-powers theory would prevent Congress from making the Treasury Secretary or Attorney General removable only for cause. Indeed, under the CFPB's theory, nothing would stop Congress from creating a super-agency that consolidates powers taken from numerous agencies into a single Director over whom the President has no influence. That is not some flight of fancy; it is exactly what occurred here. The CFPB oversees nineteen different statutes, eighteen of which were transferred from seven different agencies, some of which, such as the Department of Housing and Urban Development, are directly accountable to the President. *See* 12 U.S.C. §§ 5481(12), 5581. The absence of any discernible limiting principle is a powerful indication that the CFPB's view of separation of powers is wrong. Even "[s]light encroachments" on the Constitution's guarantee of separation of powers "create new boundaries from which legions of power can seek new territory to capture." *Stern v. Marshall*, 564 U.S. 462, 503 (2011) (internal quotation marks omitted). Courts "cannot overlook th[e] intrusion." *Id.*[3]

The CFPB suggests that this Court should simply ask whether the removal restriction "impede[s]" the President's ability to execute the laws, and argues that the removal restriction here

---

[3] The CFPB misreads *Free Enterprise Fund* in arguing that, because the Court left in place a single layer of insulation, one layer of for-cause removal protection must be constitutional. Opp. 12–13. The Court took its precedents as given because the parties "d[id] not ask" the Court "to reexamine any of" them. *Free Enter. Fund*, 561 U.S. at 483. The Court therefore distinguished between the "Constitution," which "empower[s] the President to keep [executive] officers accountable" through the removal power, and the Court's "precedents," which have sustained limitations on this power "under certain circumstances." *Id.* But the Court declined to extend those precedents one inch, applying neither *Humphrey's Executor* nor *Morrison* to the PCAOB. Under *Free Enterprise Fund*, the facts of *Humphrey's Executor* and *Morrison v. Olson* thus represent the outermost bounds of permissible agency structure. This Court should follow that approach by declining to extend *Humphrey's Executor* and *Morrison* to yet another "new situation." *Id.*

is no greater intrusion than other removal restrictions that have been upheld. Opp. 10–11. *Free Enterprise Fund* considered and rejected an identical argument. The dissenters argued that, "as a practical matter," the "for cause" removal provision at issue did not "affect the President's power to get something done," because "*two* layers of 'for cause' protection" would not "impose any more serious limitation upon the *President's* powers than *one* layer," and thus severing only one level of tenure protection "accomplishes virtually nothing." 561 U.S. at 524–26 (Breyer, J., dissenting). In rejecting that argument, the majority concluded that the Framers "did not rest our liberties on such bureaucratic minutiae." *Id.* at 500. The President's constitutional power and duty "to execute the laws" is "impaired" *whenever* he desires to remove an officer "and a statute prevents him from doing so." *Id.* at 496–97 & n.4. In the wake of *Free Enterprise Fund*, the relevant question is whether the agency presents a new situation that "limit[s] the President's control and political accountability." *NLRB v. Noel Canning*, 134 S. Ct. 2550, 2569 (2014) (citing *Free Enter. Fund*, 561 U.S. at 497–98).[4]

As for the CFPB's numerous other structural defects—all of which further insulate the CFPB's policy decisions from any accountability to the democratic branches or the electorate (Mem. 11–12)——the CFPB attempts to downplay them by addressing each one individually, Opp. 16–18. But the constitutionality of agency independence must be examined in light of the extent of authority Congress has conferred. *See Morrison*, 487 U.S. at 671–73, 695–97 (finding

[4] The CFPB's contention that its "functions" are "remarkably similar" to those of the "FTC at the time of *Humphrey's Executor*" (Opp. 8) is demonstrably wrong. The CFPB never denies that the 1935 FTC could neither "promulgate rules" nor "seek civil penalties." Opp. 9; *cf.* Mem. 9–10. The 1935 FTC's "wide powers of investigation," Opp. 9, are not remotely comparable to the CFPB's power to seek crushing retrospective remedies, 12 U.S.C. § 5565(a)(2), such as disgorgement, *see, e.g.*, *PHH*, 839 F.3d at 12 (CFPB seeking $109 million in disgorgement), and civil penalties, *see, e.g.*, Consent Order, *In re Wells Fargo Bank, N.A.*, 2016-CFPB-15 (Sept. 4, 2016) (ordering $100 million civil penalty). Here, the CFPB is seeking *both* disgorgement *and* civil penalties. Compl. ¶ 90.

fewer protections necessary where scope of jurisdiction is narrow). "[J]ust because two [or more] structural features raise no constitutional concerns independently does not mean Congress may combine them in a single statute." *Ass'n of Am. R.Rs. v. U.S. Dep't of Transp.*, 721 F.3d 666, 673 (D.C. Cir. 2013), *vacated on other grounds*, 135 S. Ct. 1225 (2015). While the Supreme Court has "previously upheld limited restrictions" on particular checks and balances, their combination in the CFPB's "novel structure does not merely add to [its] independence, but transforms it." *Free Enter. Fund*, 561 U.S. at 495, 496. The CFPB's unconstitutionality lies in its unprecedented level of insulation from *all* democratic accountability. Thus, "[p]erhaps the most telling indication of the severe constitutional problem" with the CFPB's structure "is the lack of historical precedent for this entity." *Id.* at 505 (internal quotation marks omitted).

## III. This Enforcement Action Violates Due Process Because All American Lacked Fair Notice Of What Conduct Was Prohibited.

The CFPB addresses All American's fair-notice argument as if it were a void-for-vagueness challenge, Opp. 19–20, but the two types of challenges are distinct in meaningful ways. In a void-for-vagueness challenge, a defendant has the burden to show that a statute is "substantially incomprehensible" on its face. *Id.* In a fair-notice challenge, however, it is the agency that must pronounce in advance with "ascertainable certainty" which conduct a particular "statute" prohibits, and "provide a reasonably clear standard of culpability to circumscribe the discretion of the" agency. *Employer Sols. v. Office of Chief Admin.*, 833 F.3d 480, 488 (5th Cir. 2016). The CFPB never responds to All American's core point: Here, there is no agency pronouncement that would have put All American on notice that the alleged conduct was unlawful.

The CFPB strains to narrow *FCC v. Fox Television Studios* to "speech" issues, Opp. 20 n.13, but *Fox* explicitly resolved the case not on "First Amendment" but "on fair notice grounds," a doctrine that applies "[e]ven when speech is not at issue." 567 U.S. 239, 253, 258 (2012). The

"fundamental principle" that all regulatory laws "must give fair notice of conduct that is forbidden" applies far outside the speech and criminal contexts, and is an important component of administrative law: "'[S]tatutes'" that "'allow monetary penalties against those who violate them' must 'give'" the regulated party "'fair warning of the conduct they prohibit.'" *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 156 n.15 (2012) (brackets omitted) (quoting *Diamond Roofing Co., Inc. v. OSHRC*, 528 F.2d 645, 649 (5th Cir. 1979)). The CFPB also argues that the CFPA's prohibition of "abusive" practices is unambiguous, Opp. 21–22, but the CFPB Director *himself* has already admitted that the meaning of the term "abusive" is a "puzzle," and that the CFPB will not even "try to define [the] term," but will instead rely on ad hoc adjudications to define the term piecemeal against unsuspecting parties who will suffer retroactive penalties. Mem. 16 (quoting CFPB Director's testimony). This sort of "gotcha" regulation is fundamentally unfair.

**IV. The CFPA's Vast And Amorphous Grant Of Power To The CFPB Violates The Non-Delegation Doctrine.**

The CFPA violates the non-delegation doctrine, *see* Mem. 19–20, and the CFPB's responses in defense of Congress's grant of untrammeled power are meritless.

First, just because few statutes have been held to violate the non-delegation doctrine (Opp. 25) does not mean that *this* statute is permissible. As we have explained, Mem. 19–20, the CFPB is "exceptional in our constitutional structure and unprecedented in our constitutional history," *PHH*, 839 F.3d at 21, and no other agency wields such "massive, unchecked power," *id.* at 17. In terms of delegation principles, the CFPB is little more than "a roving commission to inquire into evils and upon discovery correct them." *A.L.A. Schechter Poultry Corp. v. United States*, 295 U.S. 495, 551 (1935) (Cardozo, J., concurring). Because "the degree of agency discretion" that the non-delegation doctrine allows "varies according to the scope of the power congressionally conferred,"

*Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 475 (2001), the Court should view this delegation with heightened scrutiny.

Second, the CFPB tries to assure the Court that Congress has "clearly delineated" the general policy and the limits of the CFPB's authority by citing the CFPA's "purpose" and the supposed "boundaries" to the CFPB's authority. Opp. 26. Yet the cited provisions contain little more than additional layers of indeterminacy, defining vague words like "abusive" or "unfair" with equally amorphous phrases like "substantial injury," "outweighed by countervailing benefits," and "inability of the consumer to protect [his] interests." 12 U.S.C. § 5531(c), (d). These provisions do not provide "boundaries" to the CFPB's discretion; they expand it.

The statutes that have survived non-delegation challenges, by contrast, offered real guidance to and limitations on the agencies' power. *See, e.g.*, *Touby v. United States*, 500 U.S. 160, 165–67 (1991) (noting "multiple specific restrictions on the Attorney General's discretion"); *Am. Power & Light Co. v. SEC*, 329 U.S. 90, 105 (1946) (listing the "veritable code of rules" agency had "to follow"); *Yakus v. United States*, 321 U.S. 414, 421–23 (1944) (price controls must be based on specific prevailing prices and certain "enumerated factors"). This guidance ensured that courts would "be able to test" the "exercise of delegated legislative discretion" "against ascertainable standards." *Indus. Union Dept, AFL-CIO v. Am. Petroleum Inst.*, 448 U.S. 607, 686 (1980) (Rehnquist, J., concurring). The CFPB points to no such limitations on its power to define "unfair," "abusive," and "deceptive" practices. That is because there are none. These provisions violate the non-delegation doctrine, and the CFPB thus lacks authority to enforce them.[5]

---

[5] Contrary to the CFPB's claim, "[i]n a delegation challenge, the constitutional question is whether the statute has delegated legislative power to the agency," *Whitman*, 531 U.S. at 472, not whether the agency has "exercised" some particular "type of decisionmaking" power, Opp. 26 n.19. An agency cannot cure "an unconstitutionally standardless delegation of power by declining to exercise some of that power." *Whitman*, 531 U.S. at 473.

## V. The CFPB's Interpretation Of Section 5536 Violates Principles Of Federalism.

Under *Bond v. United States*, 134 S. Ct. 2077 (2014), this Court must "be certain of Congress' intent" to permit the CFPB to bring CFPA claims predicated on state laws. This requirement provides an important protection for states' sovereignty in areas of traditional state regulation, such as "contracts and consumer protections." *See Castro v. Collecto, Inc.*, 634 F.3d 779, 784–85 (5th Cir. 2011). But instead of statutory text, all that the CFPB can cite to argue that the CFPA was intended to co-opt state consumer protection laws is legislative history. Opp. 31. But legislative history cannot bestow "absolute[] certain[ty] that Congress intended" the CFPB to define federal law by referencing state law; Congress's intent must be "plain to anyone reading the Act." *Gregory v. Ashcroft*, 501 U.S. 452, 464, 467 (1991). Absent explicit textual authority, the Constitutional default rule is that "[t]he federal government is *not* the enforcer of state law." *Pasiewicz v. Lake Cty. Forest Pres. Dist.*, 270 F.3d 520, 526 (7th Cir. 2001) (emphasis added).[6]

Yet the CFPB's Complaint is full of allegations that All American violated state law. *See, e.g.*, Compl. ¶¶ 19, 20–23, 29–31, 36–53, 67, 73(a), 74(a), 81–83. This belies the CFPB's dubious distinctions between "interfering with," "subverting," and "violating," state laws. *See* Opp. 28–30.[7] Without the CFPB's reliance on state law violations, the Complaint is little more than recitations of the CFPA's text, at least as to Counts I, III, and V. Moreover, the CFPB's argument that its Complaint rests on allegations that are *not* themselves violations of state law, Opp. 28–30, simply underscores the fair notice problem, *supra* Part II: If the CFPB is coming after All

---

[6] *Beler v. Blatt*'s "dictum" (Opp. 28 n.21) concerned "whether § 1692e of the FDCPA covers the process of litigation," *Marquez v. Weinstein, Pinson & Riley*, 836 F.3d 808, 810 (7th Cir. 2016); *Beler*'s actual *holding* was that § 1692f could not be used to bootstrap state law issues into a federal claim. *Bentrud v. Bowman, Heintz, Boscia & Vician, P.C.*, 794 F.3d 871, 875 (7th Cir. 2015).

[7] Contrary to the CFPB's contention, Opp. 28, Alabama does regulate check-cashing services. *See Austin v. Ala. Check Cashers Ass'n*, 936 So. 2d 1014, 1035 (Ala. 2005).

American for behavior that did not violate state law but was somehow independently "unfair," "abusive," or "deceptive" under the CFPA, then how was All American supposed to know to avoid such conduct ahead of time? The CFPB has no answer.

All American has resolved its differences with the relevant state regulatory agency—the proper entity for enforcing Mississippi's consumer protection laws. *See* Settlement, ECF Dkt. 169-2 (June 14, 2017). Under our federal system, the CFPB has no business bringing a duplicative action against All American for allegedly "subverting" the same state laws.

**CONCLUSION**

All American respectfully requests judgment on the pleadings in All American's favor.

Dated: June 30, 2017

Respectfully submitted,

/s/ Helgi C. Walker
Theodore B. Olson, *pro hac vice* (DC 367456)
Helgi C. Walker, *pro hac vice* (DC 454300)
Joshua S. Lipshutz, *pro hac vice* (DC 1033391)
Lochlan F. Shelfer, *pro hac vice* (DC 1029799)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
Telephone: (202) 955-8500
Facsimile: (202) 530-9575
Email: tolson@gibsondunn.com
hwalker@gibsondunn.com
jlipshutz@gibsondunn.com
lshelfer@gibsondunn.com

/s/ Robin H. Rasmussen
Robin H. Rasmussen (MS 104729)
Peter D. Baskind, *pro hac vice* (TN 019962)
DINKELSPIEL RASMUSSEN & MINK, PLLC
1669 Kirby Parkway, Suite 106
Memphis, TN 38120
Telephone: (901) 754-7770
Facsimile: (901) 756-7772
Email: rrasmussen@drmlawmemphis.com

Dale Danks, Jr. (MS 5789)
DANKS, MILLER & CORY
213 S. Lamar Street, P.O. Box 1759
Jackson, MS 39215-1759
Telephone: (601) 957-3101
Facsimile: (601) 957-3160
Email: ddanks@dmc-law.net

Bentley E. Conner (MS 6465)
164 E. Center Street, P.O. Box 563
Canton, MS 39046
Telephone: (601) 859-6306
Facsimile: (601) 589-6307
Email: bentleyeconner@gmail.com

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was served via the Court's ECF system on the following counsel of record on June 30, 2017:

Christopher Deal
Lawrence DeMille-Wagman
*Senior Litigation Counsel*
Emily Mintz
Michael Favretto
Stephanie Brenowitz
Daniel Abraham
*Enforcement Attorneys*
Consumer Financial Protection Bureau
1700 G St. NW
Washington, D.C. 20522
christopher.deal@cfpb.gov
lawrence.wagman@cfpb.gov
emily.mintz@cfpb.gov
michael.favretto@cfpb.gov
stephanie.brenowitch@cfpb.gov
daniel.abraham@cfpb.gov

/s/ Robin H. Rasmussen