**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

**CONSUMER FINANCIAL PROTECTION BUREAU** **PLAINTIFF**

**VS.** **CIVIL ACTION NO. 3:16-cv-00356-WHB-JCG**

**ALL AMERICAN CHECK CASHING, INC.;**
**MID-STATE FINANCE, INC.; and**
**MICHAEL E. GRAY, individually** **DEFENDANTS**

---

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

---

In their Memorandum in Response, ECF No. 222 ("Opposition" or "Opp."), Defendants do not establish a genuine dispute as to any material fact on which the Consumer Financial Protection Bureau's ("Bureau" or "Plaintiff") Motion for Summary Judgment ("Motion"), ECF No. 201, rests. Instead, Defendants mischaracterize the factual record, provide self-serving and unsubstantiated statements, and offer non-material facts. Defendants' superficial attempts to distinguish case law and rewrite legal standards are equally unpersuasive. The Court should grant summary judgment against Defendants on all counts and order the requested relief.[1]

## I. The Bureau Is Entitled to Summary Judgment on Check Cashing Claims (Counts I-IV)

### A. <u>The Bureau Is Entitled to Summary Judgment on its Abusiveness Claims</u>

Defendants do not dispute the material facts underlying the Bureau's check cashing claims, including that (i) their longstanding policy and practice was to "never tell the customer the fee," (ii) they interfered with consumers' ability to learn the fee by training employees to avoid responding to consumer inquiries and obscure fee disclosures, and (iii) they locked consumers into check cashing transactions, including by stamping checks "For Deposit Only" prior to providing a receipt. *See* Mem. in Supp. of Mot. for Summ. J. ("SJ Mem."), ECF No. 213,

---

[1] In their Opposition, Defendants repeat the fair notice and due process challenges made in their Motion for Judgment on the Pleadings. *See* ECF No. 145, 15-19. For the reasons discussed in the Bureau's opposition to that motion, these arguments are meritless. *See* Bureau's Response, ECF No. 178, 18-24.

4-14. Defendants offer no evidence to rebut the materials cited by the Bureau confirming this conduct, which include Defendants' own documents and discovery responses, consumer complaints, and testimony from former employees and consumers.[2] Instead, Defendants argue that the state-mandated sign and receipt presented to the consumer after the transaction was finalized are sufficient to defeat summary judgment. This argument fails. Courts have made clear that compliance with statutory requirements and state law does not absolve a party from liability for unfair, deceptive, and abusive practices.[3] Furthermore, as the Bureau explained in its opening brief, and Defendants have not disputed, Defendants regularly interfered with consumers' ability to read and understand these disclosures. *See* SJ Mem., 8-9.

Though they attempt to identify a genuine issue of material fact, none of the evidence to which Defendants cite places any material fact in dispute. For example, Defendants cite to testimony from a state examiner concerning the in-store sign and AACC employee Laura Faulkner concerning the presentation of the receipt. *See* Opp., 6-7.[4] There is no dispute, however, that these signs and receipts were present, and there is also no dispute that Defendants distracted

---

[2] Defendants do not even mention the 18 declarations (10 former employees, 8 consumers) or numerous consumer complaints supporting the Bureau's Motion. *See, e.g.*, SJ Mem., 3 & n. 12; Exs. 2-19 (declarations), 54-58 & 142 (transcribed consumer complaints from Defendants' complaint hotline), 87-93 (emails concerning consumer complaints), 141 (same), 178 (same), 180 (same).

[3] *See, e.g.*, *Simeon Mgmt. Corp. v. FTC*, 579 F.2d 1137, 1144 (9th Cir. 1978) (fact that state attorney general approved advertisements was irrelevant to FTC claim that advertisements were deceptive, unfair, and false); *Peerless Prods., Inc. v. FTC*, 284 F.2d 825, 827 (7th Cir. 1960) (FTC can restrain unfair business practices "even if the activities or industries have been the subject of legislation by a state or even if the intrastate conduct is authorized by state law"); *Royal Oil Corp. v. FTC*, 262 F.2d 741, 743 (4th Cir. 1959) (same); *People by Madigan v. CMK Inves., Inc.*, No. 14 C 2783, 2015 WL 4038896, at *2 (N.D. Ill. June 30, 2015) (compliance with statutory disclosure requirements does not absolve defendant from liability under Dodd-Frank Act if act or practice is unfair, deceptive, or abusive).

[4] Defendants mischaracterize the examiner's testimony, representing that he testified that "there was nothing dishonest, deceptive or illegal about the Defendants' signs." Opp., 6. In fact, his testimony was: "Q. So, there's nothing dishonest, deceptive or illegal about the signs that are in the stores, is there? And when you said they were underneath the counter -- I actually have a picture. This one I'm told is Olive Branch. Is that pretty much what they look like in all the stores? A. Probably." Opp., Ex. F., 123:8-14.

consumers from and concealed them. *See* SJ Mem., 8-9.[5] Defendants' unsubstantiated assertion that they did not verbally state the fee to ensure accuracy through the use of eCash is a post-hoc rationalization belied by the undisputed facts, including that (i) Defendants did not permit employees to state the applicable fee percentage (*e.g.* 3% or 5%), which employees determined *before* processing the check in eCash, SJ Mem., 6-7;[6] (ii) employees were able to view the exact fee in eCash before printing the receipt, but were not permitted to tell it to consumers, *id.*, 7; (iii) after printing the receipt from eCash, employees continued to conceal the fee by covering it on the receipt, *id.*, 8-9; and (iv) even when employees knew the exact fee as soon as the consumer presented the check—such as with "Black Farmer Litigation" checks—they were not permitted to tell consumers, *id.*, 13-14.[7] The remaining portions of Defendants' "factual" opposition consist of unsupported statements,[8] which are not sufficient to create a genuine dispute.[9]

Defendants also do not effectively distinguish the case law cited by the Bureau. In discussing *FTC v. Direct Marketing Concepts,* Opp., 8, Defendants reject, without support, the bedrock legal principle that information concerning the cost of a product or service is material.[10] If Defendants seek to reframe their behavior as merely failing to verbally disclose the fee, a lapse

---

[5] In fact, Faulkner authored documents and trained employees on Defendants' policy and practice of concealing the fee. *See, e.g.*, SJ Mem., 12-13, n. 83; Ex. 76, at AACC00034499-501; Ex. 122, at AACC00277205-206; Exs. 93 & 96; Ex. 6, ¶ 12; Ex 7, ¶ 13; *Vinewood Capital, LLC v. Dar Al-Maal Al-Islami Tr.*, 541 F. App'x 443, 447 (5th Cir. 2013) ("uncorroborated self-serving testimony cannot prevent summary judgment, particularly if the overwhelming documentary evidence supports the opposite....").

[6] Defendants state in their Opposition that employees used eCash "to confirm the type of fee…" but cite to testimony that employees chose the type of fee (*e.g.* 2%, 3%, or 5%) from a drop down menu when entering information in eCash. *See* Opp., 7; Ex. G, 77:12-78:14.

[7] *See* Ex. 95, at AACC00022211-213 (email correspondence about Black Farmer settlement checks).

[8] *See, e.g.*, Opp., 7, 9. For example, Defendants state that consumers could walk away from the transaction, but do not respond to the widespread evidence of Defendants' stamping of checks and withholding tax verification numbers to prevent consumers from going elsewhere. *See* SJ Mem., 10-12.

[9] *See* Fed.R.Civ.P. 56(c) (party must cite to parts of the record, e.g. depositions, documents, or affidavits, to create genuine dispute); *McCarty v. Hillstone Rest. Grp., Inc.*, 864 F.3d 354, 357-58 (5th Cir. 2017) (party cannot create genuine dispute by "metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence") (citation omitted); *Malcolm v. Vicksburg*, No. 3:14cv853-DPJ-FKB, 2016 WL 9631308, at *3 (S.D. Miss. Aug. 8, 2016) (same).

[10] *See* SJ Mem., n. 101; *see also FTC v. Johnson*, 96 F. Supp. 3d 1110, 1121 (D. Nev. 2015).

they seem to contend may not be material, the undisputed evidence shows that Defendants not only failed to verbally disclose the fee, but systematically interfered with consumers' ability to learn the fees by distracting them, overwhelming them with information, rushing them through transactions, covering the fee on the receipt, and making false statements. *See* SJ Mem., 5-9.[11]

B. The Bureau Is Entitled to Summary Judgment on its Deception Claims

Defendants do not dispute that, when consumers asked about the fee, employees stated that they did not know it and needed to take additional steps to determine it, such as verifying the check, sending the check to the home office, or putting the check in the computer, and that the fee depended on the "company/maker." *See* SJ Mem., 5-7. Defendants do not provide evidence that these statements were true, but rather argue that there are issues of fact regarding whether these statements were likely to mislead consumers in light of the disclosures on the signs and receipts. *See* Opp., 10.[12] As already discussed, the existence of the signs and receipts is not in dispute and does not shield Defendants from liability. *See* p. 2, *supra*. Defendants' bald assertion that consumers could calculate the fee at any time by looking at the sign is not supported by any fact in the record and ignores the undisputed facts that (i) consumers standing at the counter could not see the sign; (ii) consumers, in fact, did not see the sign; and (iii) employees were not permitted to direct consumers to the sign if consumers asked about the fee. *See* SJ Mem., 9.

Despite Defendants' suggestion to the contrary, summary judgment is routinely granted

[11] Defendants' criticism of *CFPB v. NDG Financial Corp.* is also off the mark. *See* Opp., 9. In that case, the court found it "patently obvious" that information asymmetry can enable a financial institution to mislead consumers concerning their options. 2016 WL 7188792, at *15. Here, Defendants unfairly exploited the information asymmetry to lock consumers into transactions. *See* SJ Mem., 9-12, 16-17.

[12] Defendants mention two other potential "issues of fact": that consumers could back out of transactions, and that Defendants' policies prevented human error. *See* Opp., 10. Neither creates a genuine dispute of fact regarding deceptive statements about the fee, and Defendants offer no further elaboration. *Id.* Defendants never provide a reason why their employees were not permitted to state the applicable fee percentage (which the employees determined), the exact fee visible in eCash prior to printing the receipt, or the fee on the receipt after it was printed. *See also*, p. 3, *supra* (discussing contention that policies ensure accuracy), pp. 6-7, *infra* (discussing contention that consumers could back out of transaction).

where, as here, the undisputed facts demonstrate deceptive statements were made to consumers.[13] The cases Defendants rely on address a completely unrelated question: the standard of review for findings in FTC administrative decisions.[14] Defendants' contention that consumers could not have been deceived because there is a presumption that they read the receipt also fails. This presumption does not apply where, as here, "there is evidence of fraud, misrepresentation, or deceit."[15] Defendants also mischaracterize *FTC v. Financial Freedom Processing*, claiming incorrectly that the Fifth Circuit rejected the well-settled principle that accurate disclosures do not cure deception. *See* Opp., 11. In fact, the court avoided opining directly on the issue because the FTC did not raise it on appeal, but it did note that other circuits have adopted this principle and that there was a strong argument that the district court erred in not applying it.[16]

Defendants also do not dispute that employees told consumers that it was difficult or time-consuming to cancel or reverse a transaction and that consumers could not cash their checks elsewhere because they had been verified. *See* SJ Mem., 11-12. Rather, Defendants contend—without citing any evidence—that these statements are true. *See* Opp., 13-14. Bald assertions do not create a genuine issue of material fact. *See* n. 9, *supra*. Moreover, Defendants' unsupported claim that it was time-consuming to void a transaction is flatly contradicted by their interrogatory response, in which they state that it generally took 5-10 minutes.[17] In addition, Defendants contend that, in certain circumstances, consumers could not cash checks elsewhere, but do not

---

[13] *See*, *e.g.*, *CFPB v. Gordon*, 819 F.3d 1179, 1193 (9th Cir. 2016) (affirming summary judgment that net impression was deceptive); *FTC v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 631-32 (6th Cir. 2014) ("Although defendants claim that the net impression of their representations is a question of fact to be determined by a jury, courts may decide this issue on summary judgment."); *FTC v. USA Fin., LLC*, 415 F. App'x 970, 973-74 (11th Cir. 2011) (affirming summary judgment of deception); *FTC v. World Media Brokers*, 415 F.3d 758, 763 (7th Cir. 2005) (same).

[14] *See Am. Home Prod. Corp. v. FTC*, 695 F.2d 681, 686 (3d Cir. 1982); *Beneficial Corp. v. FTC*, 542 F.2d 611, 617 (3d Cir. 1976); *Giant Food Inc. v. FTC*, 322 F.2d 977, 982 n. 12 (D.C. Cir. 1963).

[15] *In re Cajun Elec. Power Co-op., Inc.*, 791 F.2d 353, 359 (5th Cir. 1986).

[16] *FTC v. Fin. Freedom Processing, Inc.*, 538 F. App'x 488, 489-90 (5th Cir. 2013).

[17] *See* SJ Mem., 12, n. 79, *citing* Ex. 31, Interrog. 10.

dispute that their employees told consumers this even when it was not true. *See* SJ Mem., 12. Finally, Defendants' assertion that there was a process for consumers to cancel transactions is irrelevant to whether employees impeded consumers from using this process by making the deceptive statements at issue. *See* Opp., 14.

C. The Bureau Is Entitled to Summary Judgment on its Unfairness Claim

Defendants' rebuttal to the Bureau's unfairness claim contains no citations to the record and instead proffers a series of self-serving, unsupported assertions. *See* Opp., 15-18. Defendants do not dispute that they directed employees through policies and procedures, training presentations, and other company documents, to never tell consumers the fee, including when presenting the receipt. *See* SJ Mem., 4-9. But they claim that the purpose of their policy was to ensure accurate fee disclosures through use of eCash. For the reasons discussed above, *see* p. 3, *supra*, the Court need not credit this unsubstantiated claim. Defendants devote the remainder of their unfairness argument addressing cases that stand for the well-established principle that it is unfair to charge consumers unauthorized fees. *See* Opp., 16-18. In attempting to distinguish the case law, Defendants claim, with no factual support, that consumers should have known the fee. In doing so, they ignore their deceptive statements and fee-obscuring practices that are at the center of this litigation. *See* SJ Mem. 5-9.[18] Defendants also argue that consumers could have walked away from a check cashing transaction at any point, but the undisputed evidence shows that Defendants misrepresented the repercussions of doing so and made it difficult or impossible for consumers to cash their checks elsewhere; Defendants do not dispute that they hid the fee

[18] For example, Defendants question the Bureau's citation of *CFPB v. D&D Mktg.*, Opp., 18, even though they concede that the case recognizes that "[a]lthough the law generally requires consumers to understand their legal obligations, the Dodd-Frank Act recognized that even diligent consumers could be misled by bad actors." *CFPB v. D & D Mktg.*, No. CV 15-9692 PSG (EX), 2016 WL 8849698, at *10 (C.D. Cal. Nov. 17, 2016). Despite Defendants' conclusory statement that "customers were not misled," that is exactly what the Bureau shows with former employee testimony and consumer complaints.

until they locked consumers into transactions by stamping the check, withholding the tax verification number, or—as discussed above—making deceptive statements about the consumer's ability to cancel the transaction or cash the check elsewhere. *See* SJ Mem., 4-14.

**II. The Bureau Is Entitled to Summary Judgment on 1st and 3rd Lending Claim (Count V)**

Defendants do not dispute that they provided the sequence of 14-day loans to monthly customers described in the Bureau's Memorandum ("1st and 3rd lending program"). *See* SJ Mem., 23-26; Ex. 158, at AACC00896712-14 ("1st and 3rd training document"). Instead, they suggest that summary judgment should be denied because of the sign and loan agreements disclosing fees. *See* Opp., 19-20. The Bureau's claim, however, relates to Defendants' deceptive comparisons of their 1st and 3rd lending program to 30-day loans, not representations concerning the signs or agreements. *See* SJ Mem., 26-27.[19] Defendants also argue that whether a statement is deceptive is a question for the jury, but, as discussed, courts routinely grant summary judgment on deception. *See* pp. 4-5, *supra*.

As to the first deceptive representation at issue, Defendants do not dispute that they told monthly customers that the fees for 30-day loans were higher than for the 1st and 3rd lending program. Rather, they argue that the Court should reject the Bureau's claim because "fees for 30-day loans were higher than a 14-day loan." Opp., 20.[20] This fact is immaterial to the Bureau's claim, however, which centers on Defendants' false representation that the fee for a competitor's 30-day loan was higher than for the *1st and 3rd lending program*, which consisted of *multiple* 14-

---

[19] Moreover, the mere existence of the signs and agreements does not immunize Defendants from liability for deceptive statements, *see* p. 2, *supra*, and there is no presumption that consumers have read agreements when there is evidence of deceit, *see* p. 5, *supra*.

[20] This is not entirely true. The maximum fee for a 30-day loan of more than $250 in Mississippi was slightly higher than for a 14-day loan, but <u>it is not true</u> that the maximum fee was higher for a 30-day loan in Alabama or Louisiana or for a 30-day loan of $250 or less in Mississippi. *See* SJ Mem., n. 146, n. 205; Miss. Code Ann. § 75-67-519(1), (4); La. Rev. Stat. §§ 9:3578.4(A)(1); Ala. Code § 5-18A-12(a).

day loans in a single month, not a single 14-day loan. *See* SJ Mem., 26-30, 32 n. 205.[21]

As to the second deceptive representation at issue, Defendants do not dispute that they told monthly customers that they could get money twice a month with AACC.[22] Instead, Defendants contend that they did not tell consumers that the 1st and 3rd lending program was better than a 30-day loan, citing only to Gray's self-serving, unsubstantiated statement as evidence. *See* Opp., 21. Courts have made clear that "a party's uncorroborated self-serving testimony cannot prevent summary judgment, particularly if the overwhelming documentary evidence supports the opposite scenario."[23] The Bureau has presented declarations and testimony from numerous former employees and consumers, and most significantly, Defendants' own admissions, to support its claim that Defendants falsely told monthly customers that borrowing pursuant to the 1st and 3rd lending program was better than borrowing a 30-day loan because they received money twice a month.[24] Based on this record, summary judgment is warranted.

## III. The Bureau Is Entitled to Summary Judgment on Overpayments Claim (Count VI)

Defendants have not established a genuine dispute of fact. The Bureau never claimed that Defendants failed to refund every single overpayment, and it need not do so to establish that Defendants are liable for their overpayment practices. Defendants contend that they "generally called customers to inform them that a refund was available," citing the testimony of Dianne

---

[21] Defendants also cursorily state that the statements at issue are subjective opinions. *See* Opp., 20. This is false: the statements at issue concern objective facts, including the amount of the fee charged and the cash and liquidity received. *See* SJ Mem., 26-30.

[22] *See* Opp., 22 (Defendants told customers "they could get money twice a month").

[23] *Vinewood Capital*, 541 F. App'x 443, 447-48. *See also Patton v. Nissan N. Am., Inc.*, 143 F. Supp. 3d 468, 470 (S.D. Miss. 2015) ("unsubstantiated assertions" are not sufficient to show genuine dispute).

[24] SJ Mem., 27; *see, e.g., Former Employee Declarations*: Ex. 3 ¶ 19; Ex. 4 ¶ 12; Ex. 6 ¶ 24; Ex. 10 ¶ 10; Ex. 11 ¶ 26. *Consumer Declarations*: Ex. 16 ¶ 6; Ex. 18 ¶ 6; Ex. 19 ¶ 7. *Former Employee Depositions*: Ex. 39, 115:9-117:25; Ex. 40, 47:13-50:4; Ex. 41, 64:15-25, 69:5-18. *Admission:* Ex. 26, No. 39 (Defendants admitted that they marketed 14-day loans by telling monthly customers that they could help them by providing them money twice a month, unlike a 30-day loan); *see also* Ex. 158, at AACC00896713 (1st and 3rd training document included the same statement).

Valladares. Opp., 23. Read in full, her testimony actually explains *how* Defendants provided refunds, not *how often* they refunded overpayments. *See* Opp., Ex. L, 57:7-58:7. The full text of Valladeres' testimony makes clear that whatever refunds Defendants provided were *ad hoc* and deficient: Valladares testified that *some* managers called *some* consumers to inform them of an overpayment.[25] This is consistent with the Bureau's evidence establishing that, in many cases, Defendants failed to notify and refund consumers after an overpayment. *See* SJ Mem., 34-35. Defendants do not dispute that there was no company process to notify or refund consumers or that employees believed that they would get in trouble if they notified consumers of unpaid refunds. *Id*. Tellingly, although Defendants claim that they have now provided all refunds owed for overpayments, *see* Opp., 24, they do not dispute that they withheld these refunds for years.[26] It is undisputed that Defendants withheld at least $194,000 in refunds, more than $130,000 of which were outstanding when the Bureau filed its Complaint. *See* SJ Mem., 36-38. As a result, there is no dispute of material fact, and summary judgment is appropriate.

## IV. Michael Gray Is Individually Liable[27]

Defendants misread the CFPA and argue that, although Gray was an officer charged with managerial responsibility and a controlling shareholder, there is a dispute as to whether Gray "materially participate[d] in the conduct of [AACC's] affairs." Opp., 25. In fact, the factors listed

---

[25] *See* Opp., Ex. L, 59:1-5 ("If a manager realized that it was an overpayment, some managers did just pick up the phone and call -- you know, especially if they're good customers...").

[26] *See* SJ Mem., 37-38 (these refunds were, on average, 9 years old).

[27] The Bureau has properly sought summary judgment against Gray in his individual capacity and properly requested appropriate relief. *See* Opp., 2-3. Each count is asserted in both the Bureau's Complaint and Motion against "Defendants," which includes individual Defendant Gray. There can be no serious suggestion that more is required before the Court can determine Gray's liability on summary judgment. Moreover, the relief sought by the Bureau—including restitution, disgorgement, injunctive relief, and civil money penalties—is not a "claim or defense." Fed.R.Civ.P. 56(a). Defendants do not and cannot assert that they lacked notice that the Bureau sought summary judgment against Gray or the requested relief; they had full notice and an opportunity to respond, which they did. *See* Opp., 24-30. As a result, these issues are properly before the Court. *See Atkins v. Salazar*, 677 F.3d 667, 678-81 (5th Cir. 2011) (affirming *sua sponte* summary judgment when party aware of issue and had opportunity to respond).

in 12 U.S.C. § 5481(25)(C) are independently sufficient conditions: because Gray was an officer with managerial responsibility, he is a "related person" and "covered person." *See* SJ Mem., 43. And even if Defendants' interpretation were correct, they fail to raise a genuine dispute of fact. In their Answer, Defendants admitted that Gray "materially participated in the conduct of All American's affairs." Ans., ECF No. 26, ¶ 8. Moreover, Defendants do not dispute that Gray had ultimate authority over the policies and procedures at issue, monitored store performance, and communicated directly with employees about day-to-day store operations. *See* SJ Mem., 41.[28] Defendants also fabricate an "actual knowledge" standard for individual liability with no support in the law or relevant cases, instead citing inapposite cases about securities fraud. *See* Opp., 26.[29] Notwithstanding this perversion of the law, there can be no dispute, based on the record before the Court, that Gray had actual knowledge of the illegal conduct. *See* SJ Mem., 40-45. Defendants do not dispute any facts concerning Gray's involvement in the check cashing and overpayment acts and practices at issue. *See id.*, 41-42. Concerning 1st and 3rd lending, Defendants only address Gray's involvement with rollovers,[30] and do not dispute that he sent and received emails instructing employees to make deceptive statements. *See* SJ Mem., 42.[31]

**V. The Bureau Is Entitled to the Requested Relief**

The undisputed evidence shows that Defendants obtained revenue through their illegal conduct. Defendants cite no authority to support their contention that the burden of proof when

---

[28] That individuals worked under Gray or that he was away at times do not put these facts in dispute.

[29] There is no basis in the CFPA or related FTC case law for such a requirement. *See FTC v. Ross*, 743 F.3d 886, 892-93 (4th Cir. 2014) (individual liability appropriate if actual knowledge, reckless indifference, or "awareness of a high probability of deceptiveness and intentionally avoided learning the truth"); *CFPB v. CashCall, Inc.*, No. CV157522JFWRAOX, 2016 WL 4820635, at *11 (C.D. Cal. Aug. 31, 2016) (applying same standard for individual liability under the CFPA).

[30] *See* Opp. 27. Notably, statements by employees to consumers concerning the 1st and 3rd lending program were deceptive whether or not there was a mid-month rollover. *See* SJ Mem., 30 ("monthly customers received less (and paid more for it) than from a comparable 30-day loan, in all three states, and whether the customer paid back nothing at all, only the fee, or the entire amount mid-month").

[31] Defendants also do not address Gray's liability due to substantial assistance. *See* SJ Mem., 43 n. 283.

seeking penalties, disgorgement, or restitution is clear and convincing evidence. *See* Opp., 30. The correct standard is preponderance of the evidence.[32] Defendants also claim, without support, that any damages should account for fees that consumers would have paid elsewhere. *See* Opp., 28. Not so; there is no offset for a product's value. *See* SJ Mem., 45-46. Nor is the Bureau required to prove damages "on an individual customer by customer basis." Opp., 29. Courts employ a burden shifting approach where the Bureau must show that its damages calculation reasonably approximates the amount of consumers' net losses and then Defendants must present evidence that those figures are inaccurate. *See* SJ Mem., 45-46. Defendants present no such evidence.[33] Defendants claim to have already paid some refunds, but only to consumers who made overpayments, which is a fraction of the redress sought.[34] Finally, Defendants note that that the CFPA lists mitigating factors for courts to take into account when determining a penalty, but present no evidence of mitigating factors. *See* Opp., 29-30.[35] As a result, there is no genuine dispute as to Defendants' knowledge or the appropriate measure of penalties.[36]

---

[32] *See Ross*, 743 F.3d at 890-95 (affirming ruling for individual liability and redress for deception where standard was preponderance); *FTC v. Kennedy*, 574 F. Supp. 2d 714, 720-24 (S.D. Tex. 2008) (applying preponderance standard for redress for violations of FTC Act); *cf. St. Louis Sw. Ry. Co. v. U.S.*, 183 F. 770, 771 (5th Cir. 1910) (preponderance standard applies to statutory penalty); *SEC v. Gann*, No. CIV.A. 3:05-CV-0063-L, 2008 WL 857633, at *12 (N.D. Tex. Mar. 31, 2008) (disgorgement, civil penalty, and injunctive relief supported by preponderance of evidence), *aff'd*, 565 F.3d 932 (5th Cir. 2009).

[33] *See FTC v. Bay Area Bus. Council, Inc.*, No. 02 C 5762, 2004 WL 769388, at *15 (N.D. Ill. Apr. 9, 2004) (granting summary judgment as to restitution amount where defendants presented no evidence that it was inaccurate), *aff'd*, 423 F.3d 627 (7th Cir. 2005); *FTC v. Alcoholism Cure Corp.*, No. 3:10-CV-266-J-34JBT, 2012 WL 12903173, at *7 (M.D. Fla. July 3, 2012) (same). Notably, disgorgement is an equitable remedy commonly ordered at summary judgment. *See, e.g. Gordon*, 819 F.3d at 1195.

[34] Defendants claim they made $134,609 in refunds for overpayments, *see* Opp., 24, but provide no evidence, other than Gray's unsupported assertion, that refunds were issued. *See Gordon*, 819 F.3d at 1196 (restitution not offset by refunds where only unsubstantiated statements as proof that refunds made).

[35] Despite Defendants unsupported demand for a hearing, *see* Opp., 29, courts routinely impose penalties on summary judgment. *See, e.g. SEC v. Helms*, No. A-13-CV-01036 ML, 2015 WL 5010298, at *21 (W.D. Tex. Aug. 21, 2015); *SEC v. World Info. Tech., Inc.*, 590 F. Supp. 2d 574, 578 (S.D.N.Y. 2008); *FTC v. Plaza Motors, Inc.*, CIV. A. No. 88-0588-R, 1989 WL 21796, at *3 (E.D. Va. Jan. 11, 1989).

[36] Nor is the requested injunction moot: it would prevent Defendants from operating new check cashing or payday lending businesses and further harming consumers. *See Gordon*, 819 F.3d at 1197 (affirming injunction where individual no longer engaging in business at issue).

Dated: September 27, 2017

Respectfully submitted,

CONSUMER FINANCIAL PROTECTION BUREAU

ANTHONY ALEXIS
Enforcement Director

R. GABRIEL D. O'MALLEY
Acting Deputy Enforcement Director for Litigation

RICHA DASGUPTA
Acting Assistant Litigation Deputy

s/Emily Mintz
EMILY MINTZ (VA Bar No. 82437)
(202) 435-9424; emily.mintz@cfpb.gov
MICHAEL FAVRETTO (NY Bar No. 4508727)
(202) 435-7785; michael.favretto@cfpb.gov
STEPHANIE BRENOWITZ (NY Bar No. 4317418)
(202) 435-9005; stephanie.brenowitz@cfpb.gov
DANIEL ABRAHAM (CA Bar No. 299193)
(202) 435-7039; daniel.abraham@cfpb.gov
Enforcement Attorneys
1700 G Street NW, Washington, DC 20552
Facsimile: (202) 435-7722

**CERTIFICATE OF SERVICE**

I hereby certify that on September 27, 2017, I electronically filed the foregoing with the Clerk of the Court using the ECF system, which sent notification of such filing to all counsel of record.

s/Emily Mintz
EMILY MINTZ (VA Bar No. 82437)
Phone: (202) 435-9424
Email: emily.mintz@cfpb.gov
Enforcement Attorney
Consumer Financial Protection Bureau
1700 G Street NW
Washington, DC 20552
Facsimile: (202) 435-7722