**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

**CONSUMER FINANCIAL PROTECTION BUREAU**                                         **PLAINTIFF**

**VS.**                                                    **CIVIL ACTION NO. 3:16-cv-356-WHB-JCG**

**ALL AMERICAN CHECK CASHING, INC.;**
**MID-STATE FINANCE, INC.; and**
**MICHAEL E. GRAY, Individually**                                                **DEFENDANTS**

<u>**OPINION AND ORDER**</u>

This cause is before the Court on the Motion of Defendants for Judgement on the Pleadings. Having considered the pleadings, as well as supporting and opposing authorities, the Court finds the Motion is not well taken and should be denied.

**I. Factual Background and Procedural History**

The Consumer Financial Protection Bureau ("Bureau") filed a lawsuit against All American Check Cashing, Inc. ("All American"); Mid-State Finance, Inc.; and Michael E. Gray,[1] alleging that they violated Sections 1031(a), 1036(a), and 1054(a) of the Consumer Finance Protection Act of 2010 ("CFPA"), codified at 12 U.S.C. §§ 5531(a), 5536(a), and 5564(a), respectively.[2] The alleged

---

[1] All American Check Cashing, Inc.; Mid-State Finance, Inc.; and Michael E. Gray will be collectively referred to as "Defendants".

[2] As the Complaint alleges claims arising under federal law, and is brought by an agency of the United States Government, the Court may exercise federal subject matter jurisdiction in this case under 28 U.S.C. §§ 1331 and 1345.

violations are connected with check cashing services and payday loans that had been offered by Defendants.

In its Complaint, the Bureau alleges that Defendants violated the CFPA by engaging in "abusive acts and practices" and/or "deceptive acts or practices" with respect to the check cashing services they provided. The alleged abusive and/or deceptive acts and practices included, but were not limited to, that Defendants: (1) failed to inform customers of the fees they would be charged for check cashing services; (2) intentionally blocked or otherwise interfered with a customer's ability to see the fee they were being charged on the receipt they were required to sign to have their check cashed; (3) provided false and/or misleading information to customers regarding the fees they would be charged and their ability to cancel check-cashing transactions; and (4) pressured or coerced customers into cashing their checks by, *inter alia*, processing checks without the customer's consent or prematurely endorsing the check thereby impeding the ability of the customer to have the check cashed elsewhere.

The Bureau also alleges that Defendants violated the CFPA by engaging in "deceptive acts or practices" with respect to the payday loans they offered. Specifically, the Bureau alleges that Defendants misrepresented to customers that the two-week payday loans they offered provided greater financial benefit than the thirty-day payday loans offered by their competitors when in

2

reality the customer was charged higher fees for the two-week payday loans. Finally, the Bureau alleges that Defendants violated the CFPA by failing to notify customers when they had overpaid their loan amounts and/or by failing to refund the overpayments.

Defendants have now moved for judgment on the pleadings arguing that this action in void *ab initio* because, *inter alia*, the CFPA is unconstitutional.

## II.  Discussion

Defendants have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  This rule provides, in relevant part:  "[a]fter the pleadings are closed ... a party may move for judgment on the pleadings."  According to the United States Court of Appeals for the Fifth Circuit, "'[a] motion brought pursuant to [Rule] 12(c) is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts.'"  Machete Prods., L.L.C. v. Page, 809 F.3d 281, 287 (5th Cir. 2015)(quoting Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co., 313 F.3d 305, 312 (5th Cir. 2002)).  When considering a Rule 12(c) motion, the Court applies the same standard as is used when considering a motion for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Great Plains, 313 F.3d at 313.  As with Rule

12(b)(6), the "central issue" when deciding a Rule 12(c) motion "is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief." Hughes v. Tobacco Inst., Inc., 278 F.3d 417, 420 (5th Cir. 2001)(alteration in original)(internal quotations omitted).

In their Motion for Judgment on the Pleadings, Defendants first argue that the structure of the Bureau is unconstitutional and, therefore, the agency lacks authority to bring this action. The claim underlying this argument is that the structure of the Bureau is "antithetical to the separation of powers" doctrine in so far as the Bureau is headed by a single director who allegedly "wields unchecked legislative, executive, and judicial powers", and who is not accountable to either Congress or the President. See Mem. in Supp. of Mot. [Docket No. 145], 5-15. The argument that the Bureau is unconstitutional based on its single-director status, however, was recently rejected by the United States Court of Appeals for the District of Columbia. See PHH Corp. v. CFPB, 881 F.3d 75 (D.C. Cir. 2018). As summarized by that Court:

> The Supreme Court's removal-power decisions have, for more than eighty years, upheld ordinary for-cause protections of the heads of independent agencies, including financial regulators. That precedent leaves to the legislative process, not the courts, the choice whether to subject the Bureaus's leadership to at-will presidential removal. Congress's decision to provide the CFPB Director a degree of insulation reflects its permissible judgment that civil regulation of consumer financial protection should be kept one step removed from political winds and presidential will. We have no warrant here to invalidate such a time-tested course. No relevant

4

> consideration gives us reason to doubt the constitutionality of the independent CFPB's single-member structure. Congress made constitutionally permissible institutional design choices for the CFPB with which courts should hesitate to interfere. "While the Constitution diffuses power the better to secure liberty, it also contemplates that practice will integrate the dispersed powers into a workable government." Youngstown Sheet & Tube Co. v. Sawyer, 343 U.S. 579, 635 (1952).

Id. at 110. For the same reasons stated in PHH Corp., this Court rejects the arguments raised by Defendants, and likewise finds that the Bureau is not unconstitutional based on its single-director structure.

Next, Defendants argue that the claims alleged under the CFPA violate due process because the Act fails to give fair notice of the conduct proscribed by that statute. The issue of due process/fair notice was considered by the United States District Court for the Southern District of Indiana in the case of CFPB v. ITT Educational Services, Inc., 219 F. Supp. 3d 878 (S.D. Ind. 2015). In ITT, the defendant argued that the CFPA claims alleged against it were subject to dismissal because the Act did not provide fair notice as to what constituted "unfair" and "abusive" conduct thereunder. The defendant further argued that because the terms "unfair" and "abusive" were vague, any attempt to enforce the CFPA against it would violate the Due Process clause of the Fifth Amendment.

In considering the vagueness/due process challenge, the court in ITT began with this summary of applicable case law on the issue.

5

> "A fundamental principle in our legal system is that laws which regulate persons or entities must give fair notice of conduct that is forbidden or required." F.C.C. v. Fox Television Stations, Inc., 567 U.S. 239, 253 (2012); Papachristou v. City of Jacksonville, 405 U.S. 156, 162 (1972)("Living under a rule of law entails various suppositions, one of which is that all persons are entitled to be informed as to what the State commands or forbids.")(citations omitted). A statute is void for vagueness if it "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." United States v. Williams, 553 U.S. 285, 304 (2008); Hill v. Colorado, 530 U.S. 703, 732 (2000). This doctrine is not implicated merely because "it may at times be difficult to prove an incriminating fact but rather because it is unclear as to what fact must be proved." Fox Television, 567 U.S. at 253. Nor can a court declare a law unconstitutionally vague based on "the mere fact that close cases can be envisioned" under its provisions. Williams, 553 U.S. at 305-306. Rather, we refuse to apply a statutory standard only where it is so amorphous that reasonable observers have no choice but to "guess at its meaning[,] and differ as to its application." Connally v. General Constr. Co., 269 U.S. 385, 391 (1926)(explaining that "[a] statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law".).

ITT, 219 F.Supp.3d at 899 (alterations in original). The ITT court then considered the challenged provision of the CFPA, which provides, in relevant part: "It shall be unlawful for ... any covered person or service provider ... to engage in any unfair, deceptive, or abusive act or practice." 12 U.S.C. § 5536(a)(1)(B). On review the court in ITT rejected the defendant's argument that the terms "unfair" and "deceptive" were impermissibly vague on the grounds that these same terms are contained in the Fair Trade

Commission Act, codified at 15 U.S.C. § 45(a)(1), and Congress was well aware of the meaning given to those terms when it enacted the CFPA. As further explained:

> The CFPA, like the FTCA before it, has empowered the agency itself to fill in the broad outlines of its authority with specific regulations and interpretations. The agency and the courts have done so in fleshing out the term "unfair ... act or practice," and Congress has tapped into that existing body of law in framing the CFPA with identical terminology. We thus have no difficulty in rejecting [defendant's] suggestion that a reasonable business entity would be forced to guess at the term's meaning, or would be subject to agency's standardless discretion in its enforcement.

ITT, 219 F.Supp.3d at 904.

The court in ITT likewise rejected the argument that the phrase "abusive act or practice" was unconstitutionally vague, first, on the grounds that the CFPA expressly describes the type of conduct/practice that can be declared "abusive". See 12 U.S.C. § 5531(d).[3] Second, the court in ITT found that the term "abusive"

---

[3] The relevant subsection of the CFPA provides:

(d) The Bureau shall have no authority under this section to declare an act or practice abusive in connection with the provision of a consumer financial product or service, unless the act or practice –

(1) materially interferes with the ability of a consumer to understand a term or condition of a consumer financial product or service; or

(2) takes unreasonable advantage of –

(A) a lack of understanding on the part of the consumer of the material risks, costs, or conditions of the product or service;

(B) the inability of the consumer to protect the

7

was not novel in that the same term was used by Congress when enacting the Fair Debt Collection Practices Act ("FDCPA"), see 15 U.S.C. § 1692(e)(explaining that one of the purposes of the FDCPA is to "eliminate abusive debt collection practices by debt collectors"), and that that Act expressly describes conduct and/or practices considered abusive.  See 15 U.S.C. § 1692d.  As summarized by the court in ITT:

> Because the CFPA itself elaborates the conditions under which a business's conduct may be found abusive — and because agencies and courts have successfully applied the term as used in closely related consumer protection statutes and regulations — we conclude that the language in question provides at least the minimal level of clarity that the due process clause demands of non-criminal economic regulation.

ITT, 219 F.Supp.3d at 906.  For the same reasons stated by the court in ITT, this Court rejects the fair notice/due process challenge made by Defendants, which is premised on arguments that the terms "unfair", "deceptive" and "abusive acts and practices" in the CFPA are unconstitutionally vague.

Third, Defendants argue that the CFPA violates the non-delegation doctrine because Congress did not clearly delineate the general policy for, or the boundaries of delegated authority to, the Bureau.  Contrary to this argument, the CFPA does provide general policy/boundaries of authority for the Bureau.  See 12

---

interests of the consumer in selecting or using a consumer financial product or service; or

(C) the reasonable reliance by the consumer on a covered person to act in the interests of the consumer.

U.S.C. § 5511 (providing that the purposes of the Bureau include implementing and enforcing federal consumer financial law; investigating consumer complaints; identifying risks to consumers in the marketplace; taking appropriate enforcement action against violators of federal consumer financial law; and issuing rules, orders, and guidance for implementing federal consumer financial law). The CFPA likewise provides limits on the types of conduct that can be declared "unfair" or "abusive" under the Act. See 12 U.S.C. § 5532(c) and (d). Because Congress, when enacting the CFPA, delineated a general policy for the Bureau to follow, and provided limits on its authority, the Court finds Defendants have failed to show that the CFPA violates the non-delegation doctrine. See e.g. United States v. Whaley, 577 F.3d 254, 263-64 (5th Cir. 2009)(explaining that the "modern test" for assessing alleged violations of the non-delegation doctrine is "whether Congress has provided an 'intelligible principle' to guide the agency's regulations", and that delegation is "'constitutionally sufficient if Congress clearly delineates the general policy, the public agency which is to apply it, and the boundaries of this delegated authority'")(quoting Mistretta v. United States, 488 U.S. 361, 372 (1989) and American Power & Light Co. v. SEC, 329 U.S. 90, 105 (1946), respectively).

Finally, Defendants argue that they are entitled to a judgment on the pleadings because the CFPA violates the principles of

9

federalism. The federalism challenge stems from the fact that the Bureau allegedly bases several of its FCPA claims on allegations including that All American violated state law. According to Defendants, if their conduct violated state law, then the state, as opposed to the federal government, should be responsible for bringing an enforcement action. See Mem. in Supp. of Mot. [Docket No. 145], 21 (arguing that the Bureau, by basing its claims on alleged violations of state law, has intruded on the rights of the states "to determine how far their laws should reach and how they should be enforced."). A review of the Complaint makes clear, however, that while there are allegations that state law was violated, the Bureau also alleges conduct on the part of All American that has not been shown subsumed by state law. For example, the Complaint alleges that Mississippi and Louisiana law require the display of fees for check cashing services. See Compl. ¶ 21. According to the Complaint, All American did display the required fee information, but it was displayed in such a manner as to make it unlikely that customers would actually see it. Id. (alleging that the fee sign was placed "under the counter" in All American offices). The Complaint further alleges that All American employees were specifically instructed to take action so as to either minimize or negate the likelihood that the fee display would be seen by customers. Id. (alleging that All American employees were told to limit the time customers were at the counter, and have

10

them wait in the lobby while their checks were processed so as to minimize the likelihood that they would see the posted fee signs); Id., ¶ 22 (alleging that All American employees were trained to use distraction techniques including providing consumers with non-relevant information and small gifts to keep them from having an opportunity to ask about fees).  Because there has been no showing that all of the conduct on which the Bureau bases this enforcement action would be solely in the providence of state law, the Court finds Defendants have failed to show that they are entitled to judgment on the pleadings based on federalism concerns.

### III.  Conclusion

For the foregoing reasons:

IT IS THEREFORE ORDERED that the Motion of Defendants for Judgment on the Pleadings [Docket No. 144] is hereby denied.

IT IS FURTHER ORDERED that the Motion of Defendants for Hearing on their Motion for Judgment on the Pleadings [Docket No. 235] is hereby denied as unnecessary.

SO ORDERED this the 21st day of March, 2018.


                                        s/ William H. Barbour, Jr.
                                        UNITED STATES DISTRICT JUDGE